Jacob Loup (Cal. Bar No. 331695)
jl@louplaw.com
Law Office of Jacob Loup
400 Corporate Pointe Ste 300
Culver City CA 90230
347-391-5009

Akeeb Dami Animashaun
dami@animashaun.me
(Cal Bar. No. 339294)
355 S. Grand Ave., Suite 2450
Los Angeles, California 90071
929-266-3971

*Attorneys for Defendant Jason Reedy*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WILSHIRE BOULEVARD TEMPLE et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TURTLE ISLAND LIBERATION FRONT LA et al.,<br><br>Defendants. | No. 2:26-cv-07560-MCS-AJR<br><br>Hon. Mark C. Scarsi<br><br>**DEFENDANT JASON REEDY'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**<br><br>Hearing date and time:<br>Monday, January 25, 2027, 9:00 a.m.<br><br>ORAL ARGUMENT REQUESTED |

Please take notice that on Monday, January 25, 2027, at 9:00 a.m., or as soon thereafter as counsel may be heard in the courtroom of the Honorable Mark C. Scarsi, located in Courtroom 7C of the Felicitas and Gonzalo Mendez United States Courthouse, 350 West 1st Street, 6th Floor, Defendant Jason Reedy will move to dismiss Plaintiffs' First Amended Complaint, ECF 51, with prejudice, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

This motion is made upon the following grounds:

1. Plaintiffs' claims must be dismissed under Rule 12(b)(1) because:
    a. Plaintiff Louis D. Brandeis Center Coalition to Combat Anti-Semitism, Inc., as an associational plaintiff, lacks standing to seek monetary relief; and
    b. neither Plaintiff has standing to pursue injunctive or declaratory relief for alleged future harm, because they have not plausibly alleged that a future injury is certainly impending or that there is a substantial risk that the harm will occur.
2. Plaintiffs' claims must be dismissed under Rule 12(b)(6) because:
    a. The Freedom of Access to Clinic Entrances Act ("FACE"), 18 U.S.C. § 248(a)(2), exceeds Congress's authority to regulate commerce and is therefore unconstitutional;
    b. Plaintiffs fail to state a claim against Reedy under FACE;
    c. Plaintiffs fail to state a claim against Reedy under 42 U.S.C. § 1985;
    d. Plaintiffs fail to state a claim against Reedy under 42 U.S.C. § 1981; and
    e. Plaintiffs fail to state state-law claims against Reedy under the California Freedom of Access to Clinic and Church Entrances Act, Cal. Penal Code § 423.2; the Ralph Act, Cal. Civ. Code

§§ 51.7, 52; the Bane Act, *id.* § 52.1; or principles of common-law trespass.

Reedy makes this motion after conducting two conferences with Plaintiffs' counsel pursuant to Local Rule 7-3, as detailed in the concurrently filed Declaration of Jacob Loup.

This motion is based on this Notice of Motion and Motion to Dismiss Complaint Under Fed. R. Civ. P. 12(b)(1) and 12(b)(6); the First Amended Complaint, ECF 51; the memorandum of points and authorities filed herewith; the Declaration of Jacob Loup; and the pleadings and papers filed herein.

Dated: October 9, 2026

Respectfully submitted,

*/s/ Jacob Loup*

Jacob Loup
Law Office of Jacob Loup

Akeeb Dami Animashaun, Esq.

*Attorneys for Defendant Jason Reedy*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

FACTUAL ALLEGATIONS ........ 2

1. The defendant organizations call for demonstrations against a symposium featuring an Israeli defense contractor. ........ 2

2. Various demonstrations occur outside the Pavilion, but Plaintiffs attribute no involvement to Reedy. ........ 5

3. Demonstrators allegedly disrupt the symposium. ........ 5

STANDARD OF REVIEW ........ 7

ARGUMENT ........ 7

1. Preliminarily, Plaintiff Coalition lacks standing to seek monetary relief, and both Plaintiffs lack standing to sue for equitable relief. ........ 7

2. The Court should dismiss Plaintiffs' FACE claims for multiple reasons. ........ 8

2.1. FACE's religious freedom provision exceeds Congress's authority to regulate commerce. ........ 8

2.2. Plaintiffs do not adequately plead either that the symposium was held at a place of religious worship or that symposium-goers were exercising their right of religious freedom. ........ 9

2.3. Plaintiffs do not plausibly allege that Reedy used force, true threats, or physical obstruction. ........ 10

2.4. Plaintiffs do not plausibly allege that Reedy acted with the requisite intent. ........ 13

2.5. FACE does not impose conspiracy liability, and, in any event, Plaintiffs do not plausibly allege Reedy's involvement in a conspiracy. .... 14

3. The Court should dismiss Plaintiffs' claim under 42 U.S.C. § 1985(3). .... 16

4. The Court should dismiss Plaintiffs' claim under 42 U.S.C. § 1981. .... 18

5. The Court should dismiss Plaintiffs' state-law claims. .... 20

5.1. The Temple cannot sue under the Ralph Act. .... 20

5.2. Plaintiffs fail to state claims under California's FACCE statute. .... 20

5.3. Plaintiffs fail to state claims under the Ralph and Bane Acts. .... 20

5.4. The Temple fails to state a trespass claim. .... 21

CONCLUSION .... 22

CERTIFICATE OF COMPLIANCE .... 24

# TABLE OF AUTHORITIES

**Cases**

*Al -Ahmed v. Twitter Inc.*,
603 F.Supp.3d 857 (N.D. Cal. 2022) .......... 4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 7

*Bank of Am., N.A. v. Knight*,
725 F.3d 815 (7th Cir. 2013) .......... 7

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 15

*Boos v. Barry*,
485 U.S. 312 (1988) .......... 22

*Bray v. Alexandria Women's Health Clinic*,
506 U.S. 263 (1993) .......... 16, 17

*Brown v. Philip Morris Inc.*,
250 F.3d 789 (3d Cir. 2001) .......... 19

*Carpenters v. Scott*,
463 U.S. 825 (1983) .......... 17

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
511 U.S. 164 (1994) .......... 15

*Chapman v. Higbee Co.*,
319 F.3d 825 (6th Cir. 2003) (en banc) .......... 19

*Cheffer v. Reno*,
55 F.3d 1517 (11th Cir. 1995) .......... 10

*Civic W. Corp. v. Zila Indus., Inc.*,
66 Cal.App.3d 1 (1977) .......... 21

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......... 8

*Doe v. GTE Corp.*,
347 F.3d 655 (7th Cir. 2003) .......... 14

*Donahue Schriber Realty Grp., Inc. v. Nu Creation Outreach*,
232 Cal.App.4th 1171 (2014) .......... 21

*Elend v. Basham*,
471 F.3d 1199 (11th Cir. 2006) .......... 8

*Elmore v. Harbor Freight Tools USA, Inc.*,
844 F.3d 764 (8th Cir. 2016) .......... 19

*Freeman v. DirecTV, Inc.*,
457 F.3d 1001 (9th Cir. 2006) .......... 14

*Gartenberg v. Cooper Union for the Advancement of Science & Art*,
765 F.Supp.3d 245 (S.D.N.Y. 2025) .......... 18

*Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*,
458 U.S. 375 (1982) .......... 18

*Gibson v. City of Portland*,
165 F.4th 1265 (9th Cir. 2026) .......... 7

*Grant v. City of Long Beach*,
No. CV2106666JVSJEMX, 2022 WL 17403068 (C.D. Cal. Nov. 28, 2022) .......... 21

*Green v. Miss United States of Am., LLC*,
52 F.4th 773 (9th Cir. 2022) .......... 1

*Griffin v. Breckenridge*,
403 U.S. 88 (1971) .......... 16

*Hay v. Univ. of S. Cal.*,
No. CV 22-5199 DSF (GJSX), 2022 WL 23031480 (C.D. Cal. Oct. 17, 2022) .......... 21

*Helmann v. Palestinian Youth Movement*,
No. 26-5083 (9th Cir.) .......... 13

*Helmann v. CodePink Women for Peace*,
No. 2:24-CV-05704-SVW-PVC,
2025 WL 2673633 (C.D. Cal. Aug. 13, 2025) .......... 13

*Helmann v. Codepink Women for Peace*,
No. 2:24-CV-05704-SVW-PVC,
2025 WL 3030582 (C.D. Cal. June 13, 2025) .... 13, 16

*Hicks v. PGA Tour, Inc.*,
897 F.3d 1109 (9th Cir. 2018) .... 7

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977) .... 7

*Hustler Mag., Inc. v. Falwell*,
485 U.S. 46 (1988) .... 22

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) .... 7

*In re Musical Instruments & Equip. Antitrust Litig.*,
798 F.3d 1186 (9th Cir. 2015) .... 15

*Index Newspapers LLC v. U.S. Marshals Serv.*,
977 F.3d 817 (9th Cir. 2020) .... 8

*Intel Corp. v. Hamidi*,
30 Cal.4th 1342 (2003) .... 22

*Jingrong v. Chinese Anti-Cult World All. Inc.*,
16 F.4th 47 (2d Cir. 2021) .... 9, 10

*Jones v. Kmart Corp.*,
17 Cal.4th 329 (1998) .... 21

*Jones v. Poindexter*,
903 F.2d 1006 (4th Cir. 1990) .... 19

*Kendall v. Visa U.S.A., Inc.*,
518 F.3d 1042 (9th Cir. 2008) .... 15

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .... 7

*Landau v. Corp. of Haverford Coll.*,
789 F.Supp.3d 401 (E.D. Pa. 2025) .... 12

*Landau v. Corp. of Haverford Coll.*,
780 F.Supp.3d 548 (E.D. Pa. 2025) ........ 17

*Marcavage v. City of New York*,
689 F.3d 98 (2d Cir. 2012) ........ 8

*Midpeninsula Citizens for Fair Hous. v. Westwood Invs.*,
221 Cal.App.3d 1377 (1990) ........ 20

*Murthy v. Missouri*,
603 U.S. 43 (2024) ........ 8

*N.Y. Times Co. v. Sullivan*,
376 U.S. 254 (1964) ........ 1

*NAACP v. Claiborne Hardware Co.*,
458 U.S. 886 (1982) ........ 1, 11, 13, 15

*Phillip v. Univ. of Rochester*,
316 F.3d 291 (2d Cir. 2003) ........ 19

*Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*,
290 F.3d 1058 (9th Cir. 2002) (en banc) ........ 10, 11, 12, 15

*Stand With US Ctr. for Legal Just. v. MIT*,
158 F.4th 1 (1st Cir. 2025) ........ 17, 18

*Theofel v. Farey-Jones*,
359 F.3d 1066 (9th Cir. 2004) ........ 22

*United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*,
770 F.3d 834 (9th Cir. 2014) ........ 15

*United States v. Lopez*,
514 U.S. 549 (1995) ........ 9

*United States v. Morrison*,
529 U.S. 598 (2000) ........ 9

*United States v. Party for Socialism and Liberation N.J.*,
No. 25-CV-16049, 2026 WL 2938869 (D.N.J. Sept. 30, 2026) ........ 2, 11, 14

*United Union of Roofers, Waterproofers, & Allied Trades No. 40 v. Ins. Corp. of Am.*, 919 F.2d 1398 (9th Cir. 1990) .......... 7

*Weinberg v. Nat'l Students for Just. in Palestine*, No. 2:25-CV-03714-MCS-JC, 2026 WL 184302 (C.D. Cal. Jan. 20, 2026) .......... 18

*White v. The New Sch.*, No. 25-CV-2910 (ALC), 2026 WL 2032050 (S.D.N.Y. July 14, 2026) .......... 18

*White Hat v. Murrill*, 141 F.4th 590 (5th Cir. 2025) .......... 8

*Wright v. Serv. Emps. Int'l Union Loc. 503*, 48 F.4th 1112 (9th Cir. 2022) .......... 8

*Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851 (8th Cir. 2001) .......... 19

**Constitutional Provisions**

U.S. Const., amend. I .......... *passim*

U.S. Const., amend. XIII .......... 16

**Statutes**

18 U.S.C. § 248(a)(2) .......... 9, 13

18 U.S.C. § 248(a)(3) .......... 9

18 U.S.C. § 248(e)(2) .......... 11

18 U.S.C. § 248(e)(3) .......... 11

18 U.S.C. § 248(e)(4) .......... 10, 11

42 U.S.C. § 1981 .......... 18, 19

42 U.S.C. § 1985 .......... 16

Cal. Civ. Code § 51 .......... 20

Cal. Civ. Code § 51.7 .......... 20

Cal. Civ. Code § 52 ....................................................................................... 20

Cal. Civ. Code § 52.1 ....................................................................................... 20, 21

Cal. Penal Code § 423.2 ....................................................................................... 20

**Other Authorities**

*About Us*, Wilshire Boulevard Temple, https://www.wbtla.org/about-us/audrey-irmas-pavilion [https://perma.cc/SN9B-7DRC] ....................................................................................... 3

*Film & Photography*, Audrey Irmas Pavilion, https://audreyirmaspavilion.org/film-and-photography/ [https://perma.cc/5MXD-YEH8] ....................................................................................... 3

Hillel Aron, *LA dodges activist lawsuit over scuffle with City Council member*, Courthouse News Service, Feb. 28, 2024, https://www.courthousenews.com/la-dodges-activist-lawsuit-over-scuffle-with-city-council-member/ ....................................................................................... 5

Jamie Paige, *'F- ICE, F– LAPD!': LA's radical protestors behind synagogue firestorm*, N.Y. Post, Dec. 5, 2025, https://nypost.com/2025/12/05/us-news/the-radical-la-activists-who-targeted-a-synagogue-event/ ....................................................................................... 2, 6

*Jerusalem Declaration on Antisemitism* (https://jerusalemdeclaration.org [https://perma.cc/5TXP-JTAS]) ................. 17

*Mayor Bass Launches New 'Business Navigator' to Support Small Businesses Ahead of Major World Events*, May 29, 2025, https://mayor.lacity.gov/news/mayor-bass-launches-new-business-navigator-support-small-businesses-ahead-major-world-events ....................................................................................... 4

*Poll: Nearly four in 10 US Jews say Israel has committed genocide in Gaza*, Times of Israel, Oct. 5, 2025, https://www.timesofisrael.com/poll-nearly-four-in-10-us-jews-say-israel-has-committed-genocide-in-gaza/ ....................................................................................... 1

*Rental Spaces*, Audrey Irmas Pavilion, https://audreyirmaspavilion.org/rental-spaces/ [https://perma.cc/U5V7-Q9FM] ....................................................................................... 3

Restatement (Second) of Torts § 176 .......... 21, 22

Sweenie Saint-Vil, *Chaka Khan, Kelly Rowland to be honored at Black Women in Music Dinner*, Y!entertainment, May 22, 2026, https://www.yahoo.com/entertainment/music/articles/chaka-khan-kelly-rowland-honored-174500810.html .......... 4

*Symposium,* Merriam-Webster, https://www.merriam-webster.com/dictionary/symposium .......... 22

Theodore Sasson, *JFNA Survey Finds Just 37% of Jewish Americans Identify as Zionists*, Inst. Nat'l Security Studs., Feb. 17, 2026, https://www.inss.org.il/social_media/jfna-survey-finds-just-37-of-jewish-americans-identify-as-zionists/ .......... 1

## INTRODUCTION

The *U.S. Reports* swell with proud, cautionary statements about our "'profound national commitment' to the principle that 'debate on public issues should be uninhibited, robust, and wide-open.'" *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 913 (1982) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)). Even "provocative and challenging" words are protected, for speech "may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger." *Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949).

To guarantee this national commitment to free speech, the First Amendment protects speakers not just from liability but from "protracted speech-chilling litigation" itself. *Green v. Miss United States of Am., LLC*, 52 F.4th 773, 793 (9th Cir. 2022). In "the pall of fear and timidity" that lawsuits like this one create, "First Amendment freedoms cannot survive." *Sullivan*, 376 U.S. at 278.

The criticisms of Israel and Zionism attributed to Defendants concern some of the most contentious public issues of our day. And they are far from outlying views, even among Jewish Americans. Almost 40% of Jewish Americans believe Israel has committed genocide in Gaza, and just 37% identify as "Zionist," while 15% claim to be "Non-Zionists" or "Anti-Zionists."[1] A lawsuit that seeks speech-chilling damages from ordinary people who have passionately voiced such views must be approached "with extreme care." *Claiborne Hardware*, 458 U.S. at 927.

---

[1] *Poll: Nearly four in 10 US Jews say Israel has committed genocide in Gaza*, Times of Israel, Oct. 5, 2025, https://www.timesofisrael.com/poll-nearly-four-in-10-us-jews-say-israel-has-committed-genocide-in-gaza/; Theodore Sasson, *JFNA Survey Finds Just 37% of Jewish Americans Identify as Zionists*, Inst. Nat'l Security Studs., Feb. 17, 2026, https://www.inss.org.il/social_media/jfna-survey-finds-just-37-of-jewish-americans-identify-as-zionists/.

As shown below, this entire lawsuit should be dismissed, at least as to Defendant Jason Reedy, on whose behalf this motion is filed. Plaintiffs' principal claim is that Reedy and others, by protesting a symposium featuring an Israeli weapons manufacturer, violated a seldom-invoked provision of the Freedom of Access to Clinic Entrances Act ("FACE"). But that provision exceeds Congress's power to regulate commerce, and even if it were constitutional, Plaintiffs have failed to plausibly allege every showing it requires: that the symposium was held at a "place of worship"; that the attendees were exercising "religious freedom"; that Reedy used force, true threats, or physical obstruction; or that Reedy intended to injure or intimidate attendees rather than speak out on a public issue of exceptional political and moral salience. Symposium-goers may have found Reedy offensive and disruptive, but "[t]he FACE Act does not impose liability for disruptive, offensive, or hostile advocacy as such." *United States v. Party for Socialism and Liberation N.J.*, No. 25-CV-16049, 2026 WL 2938869, at *1 (D.N.J. Sept. 30, 2026) (dismissing FACE claims arising from pro-Palestine protest of event at synagogue). Plaintiffs' other claims fail for similar reasons. This Court should dismiss this lawsuit.

## FACTUAL ALLEGATIONS

### 1. The defendant organizations call for demonstrations against a symposium featuring an Israeli defense contractor.

The December 2025 "Symposium on AI and Public Safety" was sponsored by, among others, "the Consulate General of Israel" and the "Korean American Federation of Los Angeles." First Amended Complaint, ECF 51 ("FAC"), ¶ 2-3. It featured local and Israeli police officers and a representative of "Elbit Systems, an Israeli tech company specializing in defense [and] homeland security." *Id.* ¶ 3.

According to news coverage cited at FAC ¶ 49 n.20, "[p]rotesters accused Elbit of aiding Israeli military operations and providing surveillance tools to ICE."[2]

Although the FAC's first paragraph provocatively claims that Defendants "attack[ed]" "Jewish Angelenos and other[s] … at the Wilshire Boulevard Temple," the allegations do not describe an "attack," let alone one on a temple or targeted at Jewish people.

The event was held not in a synagogue but at "the Temple's event space, the Audrey Irmas Pavilion" ("Pavilion"). FAC ¶ 8. As a photo in the FAC shows, the Pavilion is a standalone building, separate from the "sanctuary," or synagogue, though both are on a "campus" surrounded by a "security perimeter." *Id.* ¶¶ 8, 39. While the FAC claims the Pavilion "has served as a place of Jewish worship" by sometimes hosting Jewish observances, it describes the Pavilion primarily as an "event space," that Plaintiff Wilshire Boulevard Temple ("Temple") "rents … for events and affairs" hosted by third parties. *Id.* ¶¶ 8, 37. Indeed, the Temple's website, cited at FAC ¶ 41 n.16, describes the Pavilion in largely secular terms: it is a "home to a wide range of flexible, multi-use spaces" and "beckons Angelenos to come together."[3] The Pavilion's own website, separate from the Temple's website, promotes the building for secular uses such as "intimate gatherings or large scale productions" and "Commercial Filming and Photography."[4] The Pavilion has

---

[2] Jamie Paige, *'F- ICE, F– LAPD!': LA's radical protestors behind synagogue firestorm*, N.Y. Post, Dec. 5, 2025, https://nypost.com/2025/12/05/us-news/the-radical-la-activists-who-targeted-a-synagogue-event/.

[3] *See About Us*, Wilshire Boulevard Temple, https://www.wbtla.org/about-us/audrey-irmas-pavilion [https://perma.cc/SN9B-7DRC].

[4] *Rental Spaces*, Audrey Irmas Pavilion, https://audreyirmaspavilion.org/rental-spaces/ [https://perma.cc/U5V7-Q9FM]; *Film & Photography*, Audrey Irmas Pavilion, https://audreyirmaspavilion.org/film-and-photography/ [https://perma.cc/5MXD-YEH8]. The Court may take judicial notice of such

hosted nonreligious events as varied as the "Black Women in Music Dinner" and the City of Los Angeles's "2025 ProcureLA Summit" to support small businesses.[5]

Plaintiffs allege that the defendant organizations, including People's City Council ("PCC"), issued calls on social media to protest the symposium. FAC ¶¶ 63-69. PCC called for "supporters to mass in front of the Temple," urging them "to shut down 'THIS Z1ONIST [sic] CONSULATE EVENT. BRING YOUR NOISEMAKERS. LET'S SHUT THIS DOWN!!!'" *Id.* ¶ 68. PCC's post highlighted that the event "FEATUR[ED] WEAPONS MANUFACTURER ELBIT SYSTEMS." *Id.* (alleging that PCC reposted first screenshot shown on FAC p. 27).

Plaintiffs allege that Reedy is "a leader of PCC" and "endorses violence to achieve his ideological goals." *Id.* ¶ 51. They cite Reedy's use on his X account of "an inverted red triangle," which they claim "Hamas and its supporters have used … to promote and celebrate violence against Jews and Israelis," and his "repost[ing]" of a "tribute to deceased Hamas leader Yahya Sinwar." *Id.* ¶¶ 51-52. While Plaintiffs thus allege that Reedy has signaled support for one side of an extraordinarily violent, decades-long geopolitical conflict, they do not allege that he endorses violence at protests in California. Plaintiffs' only non-conclusory allegation of Reedy's "history of engaging in violent demonstrations"—that Reedy allegedly "assault[ed] a Los Angeles City Council member," *id.* ¶ 24—is

---

"publicly accessible webpages." *Al -Ahmed v. Twitter, Inc.*, 603 F.Supp.3d 857, 869 (N.D. Cal. 2022) (internal quotation marks omitted).

[5] Sweenie Saint-Vil, *Chaka Khan, Kelly Rowland to be honored at Black Women in Music Dinner*, Y!entertainment, May 22, 2026, https://www.yahoo.com/entertainment/music/articles/chaka-khan-kelly-rowland-honored-174500810.html; *Mayor Bass Launches New 'Business Navigator' to Support Small Businesses Ahead of Major World Events*, May 29, 2025, https://mayor.lacity.gov/news/mayor-bass-launches-new-business-navigator-support-small-businesses-ahead-major-world-events.

contradicted by widespread media coverage indicating that the disgraced councilmember in question, Kevin De León, appeared to be the aggressor.[6]

In any event, Plaintiffs do not allege that any symposium-goers were familiar with Reedy or had previously seen his X account and that such familiarity could therefore have influenced their perception of his speech at the symposium.

The FAC also contains almost entirely conclusory allegations of conspiracy. Plaintiffs allege, "[o]n information and belief," that "Defendants agreed, conspired, and coordinated on their plan to disrupt the Symposium." *Id.* ¶ 70. The only non-conclusory allegations are that some of the defendant organizations made similar social media posts encouraging others to protest the event. *See* FAC ¶¶ 5, 63, 68-69.

**2. Various demonstrations occur outside the Pavilion, but Plaintiffs attribute no involvement to Reedy.**

Plaintiffs' allegations about what occurred outside the Pavilion are mostly blanket assertions about what unnamed "Individual Defendants" did; Plaintiffs do not allege that Reedy, specifically, did anything. They allege that "Individual Defendants" "mass[ed] in front of the Temple's security gate" and "formed a human barricade obstructing the entrance." *Id.* ¶ 72. (The included photograph does not show this. It shows a few people holding a banner where the sidewalk meets the street, leaving open both the sidewalk and, it appears, the gated entrance. *Id.* ¶ 39.) Plaintiffs also allege that "approximately 30 Individual Defendants" "obstruct[ed]" the campus's parking garage. *Id.* ¶ 73.

**3. Demonstrators allegedly disrupt the symposium.**

Plaintiffs allege that symposium-goers were "required to register in advance" and were told "that security officers would check identification at the door to

---

[6] *See, e.g.*, Hillel Aron, *LA dodges activist lawsuit over scuffle with City Council member*, Courthouse News Service, Feb. 28, 2024, https://www.courthousenews.com/la-dodges-activist-lawsuit-over-scuffle-with-city-council-member/.

confirm advance registration." *Id.* ¶ 40. They claim that Reedy "did not register for the Symposium." *Id.* ¶ 61. But if Reedy got into the event, as Plaintiffs claim, then either he must have registered or it must be that entry was allowed without registration.

Plaintiffs allege that some Defendants carried out "staggered disruptions." *Id.* ¶ 70. Two "unfurled a Palestinian flag and began screaming, among other things, 'genocide' and 'baby killer.'" *Id.* ¶ 81. Defendant Corpus allegedly broke a glass vase, kicked over a speaker, and "charged the Consulate General." *Id.* ¶ 83.

The only specific allegations about Reedy are that he stood outside the glass-walled room where the symposium was held, *id.* ¶ 10, "screamed and shouted at attendees, pounded on the glass, and used his cellphone to record the program and the attendees," with a crying infant "strapped to his chest and another child in a stroller," *id.* ¶ 86. The news article cited by Plaintiffs, *see* p. 3 n.2, *supra*, reproduces an Instagram video that appears to show Reedy speaking, barely audibly, and not pounding on any glass. Plaintiffs also allege that Reedy had earlier had his toddler placed inside the symposium to cry and "create a disturbance." *Id.* ¶ 82. Plaintiffs allege that, partly due to Reedy's "menacing conduct," an unnamed Coalition member subjectively felt "too frightened to leave" the symposium. *Id.* ¶ 90.

The FAC contains the new, conclusory allegation that "Reedy refused instructions to leave the premises," *id.* ¶ 87, but provides no details about this alleged refusal, such as who ordered him out, the manner of his refusal, or how long it took him to leave.

Plaintiffs allege that in response to the above disruptions, the Temple closed its food pantry, which distributes groceries donated by farmers markets. *Id.* ¶ 92. (Reedy knows the food pantry well, having arranged for it to receive fresh produce when he worked at the nonprofit organization Food Forward.)

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1117 (9th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[T]he court [is not] required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (alterations in *Khoja*) (quoting *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)).

A complaint that "merely allege[s] the 'defendants'" committed certain wrongful acts, "without identifying who did what," is an inadequate "shotgun pleading." *Gibson v. City of Portland*, 165 F.4th 1265, 1271, 1291 (9th Cir. 2026); *accord Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) (explaining that "[e]ach defendant is entitled to know what he or she did that is asserted to be wrongful," and a complaint that "lumps all of the defendants together" is inadequate (internal quotation marks omitted)).

## ARGUMENT

### 1. Preliminarily, Plaintiff Coalition lacks standing to seek monetary relief, and both Plaintiffs lack standing to sue for equitable relief.

Plaintiff Louis D. Brandeis Center Coalition to Combat Anti-Semitism, Inc. ("Coalition") can seek only injunctive relief. "[A]n association has standing to bring suit on behalf of its members" only if, *inter alia*, "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *United Union of Roofers, Waterproofers, & Allied Trades No. 40 v. Ins. Corp. of Am.*, 919 F.2d 1398, 1400 (9th Cir. 1990) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). Because "claims for monetary relief necessarily involve individualized proof," an association like the Coalition "lack[s] standing" to "seek monetary relief." *Id.*

Neither Plaintiff has standing to pursue the equitable relief they seek. FAC ¶ 217(a)-(b). Plaintiffs can seek "declaratory and injunctive relief … based on the threat of future injury … only if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Wright v. Serv. Emps. Int'l Union Loc. 503*, 48 F.4th 1112, 1118 (9th Cir. 2022) (internal quotation marks omitted); *accord Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). They "cannot rely 'on mere conjecture' about Defendants' possible actions" but rather "must present 'concrete evidence to substantiate [their] fears.'" *Wright*, 48 F.4th at 1118 (quoting *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 825 (9th Cir. 2020)). And they "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Murthy v. Missouri*, 603 U.S. 43, 46 (2024) (quoting *Clapper*, 568 U.S. at 416).

Here, to show a certainly impending future injury, Plaintiffs would have to plausibly allege that they will hold another objectionable event, it will draw demonstrators, Defendants will be among them, and Defendants will commit actionable conduct. But Plaintiffs make *no* allegations about likely future injuries, and they could not plausibly allege the above chain of causation. Courts frequently find no standing in similar cases where there is no guarantee that political demonstrations will recur. *See, e.g.*, *Elend v. Basham*, 471 F.3d 1199, 1206-09 (11th Cir. 2006); *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012); *White Hat v. Murrill*, 141 F.4th 590, 602 (5th Cir. 2025).

**2. The Court should dismiss Plaintiffs' FACE claims for multiple reasons.**

**2.1. FACE's religious freedom provision exceeds Congress's authority to regulate commerce.**

FACE's "religious freedom" provision authorizes suit against anyone who

> [1] by force or threat of force or by physical obstruction,
> [2] intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with [3] any person lawfully exercising or

> seeking to exercise the First Amendment right of religious freedom
> [4] at a place of religious worship.

18 U.S.C. § 248(a)(2).

"Each of th[e four] factors" relevant to whether the Commerce Clause authorizes a federal statute "counsels against upholding § 248(a)(2)." *Jingrong v. Chinese Anti-Cult World All. Inc.*, 16 F.4th 47, 63 (2d Cir. 2021) (Walker, J., concurring).[7] The statute "regulates local, non-economic conduct" (factor one) that "has at best a tenuous connection to interstate commerce" (factor four). *Id.* (citing *United States v. Lopez*, 514 U.S. 549 (1995); and *United States v. Morrison*, 529 U.S. 598 (2000)). Section 248(a)(2) "contains no congressional pronouncement that would tie the proscribed conduct to activity affecting interstate commerce" (factor two), "[n]or does the legislative history contain any findings that connects acts of worship or violence against worshippers at places of religious worship to interstate commerce" (factor three). *Id.* at 66. Plaintiffs' FACE claims therefore must be dismissed with prejudice. In the alternative, as shown below, Plaintiffs' factual allegations are inadequate to state a claim.

### 2.2. Plaintiffs do not adequately plead either that the symposium was held at a place of religious worship or that symposium-goers were exercising their right of religious freedom.

A "place of religious worship" under FACE is "anywhere that religious adherents collectively recognize or religious leadership designates as a space *primarily to gather for or hold religious worship activities*." *Jingrong*, 16 F.4th at 49 (majority opinion) (emphasis added). Even if adherents consider a space "an extension" of their principal place of worship and "pray[]" there sometimes, *id.* at 52, that doesn't make "worship" its "primary purpose" under FACE, *id.* at 61.

---

[7] Plaintiffs' property-damage claim under § 248(a)(3) is not asserted against Reedy, *see* FAC at p. 42, but the same analysis would seem to apply to that section.

Here, the FAC makes clear that the Pavilion's primary purpose is not religious worship. Even if it "*has served* as a place of Jewish worship" by sometimes hosting Jewish religious observances, FAC ¶ 37 (emphasis added), its stated primary purpose is as an event space that the Temple rents to third parties for non-worship events, *see* pp. 3-4, *supra*. Plaintiffs' allegation that the event "furthered" the "Temple's religious mission" and that a rabbi "offered a prayer during his opening remarks" does not change the analysis. FAC ¶¶ 41, 45. "[T]hat … social action may be rooted in religious belief does not transform the public spaces where the action occurs into 'places of religious worship.'" *Jingrong*, 16 F.4th at 62.

Similarly, attending a "symposium" like this one is not plausibly an exercise of religious freedom. The event's very title—"Innovating Safety, Empowering Communities: A Symposium on AI and Public Safety," FAC ¶ 2—speaks to its essentially non-religious character. The event's co-sponsor, the Korean American Federation of Los Angeles, is not a religious entity at all.

### 2.3. Plaintiffs do not plausibly allege that Reedy used force, true threats, or physical obstruction.

Under FACE, "force" means "physical force." *Cheffer v. Reno*, 55 F.3d 1517, 1521 (11th Cir. 1995). "[P]hysical obstruction" means "rendering impassable ingress [] or egress … , or rendering passage … unreasonably difficult or hazardous." 18 U.S.C. § 248(e)(4).

The statute does not define "threats of force," but the Ninth Circuit has drawn the outlines when interpreting FACE's parallel provision concerning reproductive-health clinics. To "comport[] with the First Amendment," any actionable threat must be a "'true threat.'" *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1071 (9th Cir. 2002) (en banc) ("*PPCW*"). This test has both objective and subjective elements. Objectively, a true threat is "a statement which, in the entire context and under all the circumstances, a reasonable person would foresee would be interpreted by those

to whom the statement is communicated as a serious expression of intent to inflict bodily harm upon that person." *Id.* at 1077. The subjective component, "subsumed" in the text of FACE, requires "intent to intimidate," injure, or interfere. *Id.* at 1076. "[I]ntimidate" means "to place a person in reasonable apprehension of bodily harm to him- or herself or to another," and "interfere with" means "to restrict a person's freedom of movement." 18 U.S.C. § 248(e)(2), (3).

In line with well-established First Amendment principles, a person cannot be liable for "being offensive and provocative," *PPCW*, 290 F.3d at 1080, or for "embarrass[ing] others" or even "coerc[ing] them into action," *Claiborne Hardware*, 458 U.S. at 910; *see also Party for Socialism and Liberation N.J.*, 2026 WL 2938869, at *1 (noting, in dismissing FACE claims against pro-Palestine protestors, that "[t]he FACE Act does not impose liability for disruptive, offensive, or hostile advocacy as such").

Here, there is no allegation that Reedy used "force." Nor is there a plausible allegation of "physical obstruction." Plaintiffs' shotgun allegations do not implicate Reedy in the events outside the Pavilion. Plaintiffs allege that inside the Pavilion, Reedy's expressive conduct "precluded" some symposium-goers from leaving the event. FAC ¶ 87. But there is no allegation that Reedy made any exit route actually impassable. And Reedy's mere shouting—the content and duration of which Plaintiffs do not describe—could not plausibly make passage "unreasonably difficult or hazardous." 18 U.S.C. § 248(e)(4). The allegations that he was "threatening" and "menacing," FAC ¶¶ 89-90, are totally conclusory. In short, nothing in the FAC indicates that Reedy did anything to cause a reasonable person to perceive that Reedy would prevent them from leaving the room.

Nor does the vague conduct attributed to Reedy remotely make out "true threats." There is no allegation that he made any actual threat. Assuming that he was shouting criticisms of Israel, that describes the kind of speech that the First

Amendment classically protects. It could not reasonably be interpreted as a serious expression of intent to inflict bodily harm upon the listener.

Recognizing the danger of subjecting non-private political speech to liability, the Ninth Circuit appears never to have held such speech to constitute true threats, except in *PPCW*. *See PPCW*, 290 F.3d at 1100 n.15 (Kozinski, J., dissenting). But *PPCW* is worlds away from this case. There, several doctors had been murdered after anti-abortion activists identified them on "WANTED" posters. *PPCW*, 290 F.3d at 1062-64, 1085 (majority opinion). The defendants then displayed posters, "in essentially the same format," naming additional doctors. *Id.* at 1085; *see id.* at 1065. The Court deemed these posters true threats, because they were so "precise in their meaning": given the one-to-one correlation between the original posters and the murders, defendants' posters "personally target[ing]" new doctors obviously would cause those doctors to "worr[y] about being next in line to be shot and killed." *Id.* at 1085-86. Nothing here remotely approximates such a direct, "precise" correlation between past acts of violence and Reedy's speech. Varied instances of threats and violence at synagogues around the country, FAC ¶¶ 32-34, none of which Reedy is alleged to have invoked like the *PPCW* defendants invoked a precise past pattern of violence, do not come close.

The same is true of Reedy's and PCC's alleged support for disruptive political demonstrations and endorsement of Hamas. First, it is not alleged that symposium-goers were familiar with Reedy or PCC, so Plaintiffs do not plausibly allege that such familiarity could have reasonably affected their perception of Reedy at the symposium. Second, just because a person signals support on social media for Hamas, one of the principal Palestinian actors confronting what much of the world reasonably sees as decades of unjust Israeli conduct, it does not follow that this person has manifested "a serious expression of intent to inflict bodily harm" on ordinary people whenever he attends a protest critical of Israel. *PPCW*, 290 F.3d at 1077; *see Landau v. Corp. of Haverford Coll.*, 789 F.Supp.3d 401, 414 (E.D. Pa. 2025)

(holding that asserting support for "the liberation of Palestine … by all means necessary," which plaintiffs perceived as "an implicit threat of violence and an endorsement of Hamas' October 7th terror tactics," "cannot, without more, be construed as a genuine threat targeting Jewish people"); *Helmann v. CodePink Women for Peace*, No. 2:24-CV-05704-SVW-PVC, 2025 WL 2673633, at *6 (C.D. Cal. Aug. 13, 2025) (reasoning that, where speaker's "plain language … contains no threat, [the speakers's] potential history of violence is irrelevant—that a person has committed violence once does not necessarily mean that everything they say in the future will be violent or threatening"); *see generally Claiborne Hardware*, 458 U.S. at 927 ("mere *advocacy* of the use of force or violence does not remove speech from the protection of the First Amendment" (emphasis in original)).

It is true that another district court, in an unpublished, non-controlling decision, has cited CODEPINK's use of the "inverted triangle" as plausible evidence of a true threat, but the facts in that case were much different. CODEPINK posted an image in which the details of the very event to be protested were framed inside the triangle, and the court reasoned that this could plausibly imply encouragement to violence *at that event*. *Helmann v. Codepink Women for Peace*, No. 2:24-CV-05704-SVW-PVC, 2025 WL 3030582, at *12 (C.D. Cal. June 13, 2025).[8] Here, by contrast, there is no allegation that Reedy used the symbol in connection with the symposium.

### 2.4. Plaintiffs do not plausibly allege that Reedy acted with the requisite intent.

Reedy can be held liable under § 248(a)(2) only if his speech was "intentionally directed at injuring, intimidating, or interfering with [another's]

[8] The lawsuit in the above-cited *Helmann* decisions has been dismissed and an appeal is pending. *See Helmann v. Palestinian Youth Movement*, No. 26-5083 (9th Cir.).

exercise or attempted exercise of religion" at a place of worship. *Party for Socialism and Liberation N.J.*, 2026 WL 2938869, at *7. The FAC nowhere plausibly alleges such intent. The FAC makes clear—and three years of highly publicized, worldwide protests have made clear—that the target of the demonstration was the nation-state of Israel. Reedy's intentions were political. It is not plausible that he attended the demonstration for the purpose of interfering with people's exercise of religious freedom. For reasons discussed above, it is also not plausible that he intended to interfere with anyone "at a place of religious worship," because the Pavilion was clearly not such a place.

**2.5. FACE does not impose conspiracy liability, and, in any event, Plaintiffs do not plausibly allege Reedy's involvement in a conspiracy.**

Generally, federal statutes impose secondary civil liability only if their text explicitly says so, and FACE does not. In *Freeman v. DirecTV, Inc.*, the Ninth Circuit held that there is no liability under the Electronic Communications Privacy Act for those "who aid and abet, or conspire with" violators. 457 F.3d 1001, 1002 (9th Cir. 2006). Because the statute "does not use the terms 'conspiracy' or 'aiding and abetting,'" "[t]here can be no question upon whom Congress intended to impose liability—it is spelled out in plain and unambiguous language." *Id.* at 1005-06. "When 'a statute is precise about who … can be liable' *courts should not implicitly read secondary liability into the statute*." *Id.* (emphasis added) (quoting *Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir. 2003)); *accord Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 182 (1994) (refusing to read aiding-and-abetting liability into § 10(b) of the Securities Exchange Act, because "Congress has not enacted a general civil aiding and abetting statute," and when Congress authorizes "a person [to] sue and recover damages from a private defendant for the defendant's violation of some statutory norm, *there is no general presumption that the plaintiff may also sue aiders and abettors*" (emphasis added)).

FACE says nothing about secondary liability, so this Court should not implicitly read it into the statute. And there is especially good reason not to here: a decision that held out the prospect of FACE liability based on conspiracy would gravely increase the danger of chilling First Amendment–protected speech.[9]

Should this Court disagree, the following limitations would apply, at a minimum. "[A] person does not become a conspirator merely by associating with one or more persons who are conspirators"; rather, one must have "willfully participat[ed] in an unlawful plan with the intent to advance or further some object or purpose of it." *PPCW*, 290 F.3d at 1081. The conspiracy must have had "unlawful goals," and an individual, to be held liable, must have had "a specific intent to further those illegal aims." *Claiborne Hardware*, 458 U.S. at 920.

Moreover, to adequately plead conspiracy, "formulaic recitations and 'conclusory statement[s]' will not suffice." *United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 842 (9th Cir. 2014) (quoting *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008)). The "complaint must 'answer the basic questions: who, did what, to whom (or with whom), where, and when?'" *Id.* (quoting *Kendall*, 518 F.3d at 1047). "[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Similarly, "mere allegations of parallel conduct—even consciously parallel conduct—are insufficient" to show a "'meeting of the minds.'" *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1193 (9th Cir. 2015) (quoting *Twombly*, 550 U.S. at 557).

[9] The Ninth Circuit in *PPCW* did not hold that conspiracy liability is proper under FACE; rather, it "declin[ed] to consider the issue because it [wa]s raised for the first time on appeal." *PPCW*, 290 F.3d at 1081 n.16.

Here, Plaintiffs do not come close to answering the basic questions about the alleged conspiracy but rather, for the most part, simply assert it in conclusory fashion. *E.g.*, FAC ¶¶ 5, 70, 104. The only concrete allegations apparently meant to support the conspiracy claim are that the defendant organizations "coordinated their social media calls to action." *Id.* ¶ 139. But such allegations of mere parallel conduct are insufficient.

**3. The Court should dismiss Plaintiffs' claim under 42 U.S.C. § 1985(3).**

Under 42 U.S.C. § 1985(3), private parties may be held liable for "conspir[ing] … *for the purpose of depriving* … any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws" (emphasis added). The "plaintiff must show, *inter alia*, (1) that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action,'" *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68 (1993) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)), "and (2) that the conspiracy 'aimed at interfering with rights' that are 'protected against private, as well as official, encroachment,'" *id.* at 268 (quoting *Carpenters v. Scott*, 463 U.S. 825, 833 (1983)).

In addition to failing to adequately plead a conspiracy at all, as shown above, Plaintiffs fail to meet each of *Bray*'s requirements. First, they do not allege violation of a right protected against private encroachment. "There are few such rights." *Id.* at 278. The Supreme Court recognizes "only the Thirteenth Amendment right to be free from involuntary servitude" and, as it derives from that same right, "the right of interstate travel." *Id.* Section 1985 does not cover private conspiracies to violate "First Amendment" or "Fourteenth Amendment" rights, which regulate only *government* conduct. *Id.*; *see Helmann*, 2025 WL 3030582, at *9-10. Moreover, there can be no liability if a protected right was only "incidentally affected"; "[t]he right must be '*aimed at*.'" *Bray*, 506 U.S. at 275 (emphasis in *Bray*) (quoting *Carpenters*, 463 U.S. at 833). Here, Plaintiffs do not explicitly allege what rights

were violated, but the claim sounds in religious freedom and equal protection, which fall under the non-actionable First and Fourteenth Amendments. They certainly have not alleged violations of the Thirteenth Amendment.

Plaintiffs also have not plausibly alleged discriminatory animus. In *Bray*, the defendants could not be held liable for opposing abortion, because there was no indication of discrimination against women "*because they are women*." *Id.* at 270 (emphasis in original). In the same way, Plaintiffs' conclusory allegation that Reedy protested Israel because of "anti-Semitic animus," FAC ¶ 140, is insufficient.

To the extent Plaintiffs allege that criticism of Israel and Zionism equates to antisemitism, *see, e.g.*, FAC ¶¶ 26-27 & n.5, that position is insupportable. The "more than 400" scholars who have signed the *Jerusalem Declaration on Antisemitism,* https://jerusalemdeclaration.org (https://perma.cc/5TXP-JTAS), many of them Jewish and Israeli, rightly maintain that "[e]vidence-based criticism of Israel as a state" or "[c]ritici[sm] or oppos[ition to] Zionism as a form of nationalism" are not antisemitic.

Multiple federal courts agree. In a case involving "stridently pro-Palestinian and anti-Zionist" speech, including statements "accusing Israel of committing and genocide" and "justify[ing] the October 7 massacre," the First Circuit expressly rejected the argument that, "because 'most Jews' see Zionism as 'a key component of their Jewish ethnic and ancestral identity,' 'anti-Zionism is … antisemitism.'" *Stand With US Ctr. for Legal Just. v. MIT*, 158 F.4th 1, 16, 19 (1st Cir. 2025) (quoting the plaintiffs). To the contrary, such an "equation finds no consensus support in dictionary definitions" or in "the academic literature." *Id.* at 16. The Court maintained that the "ongoing debate as to the relationship between anti-Zionism and antisemitism" is one "that our constitutional scheme resolves through discourse, not judicial fiat." *Id.* at 17.

The First Circuit is not alone. *See, e.g.*, *Landau v. Corp. of Haverford Coll.*, 780 F.Supp.3d 548 (E.D. Pa. 2025) (refusing to "to blur the line between Zionism

as a political philosophy and Zionism as a component of Jewish identity, and in the process implicitly sweep any and all criticism of Israel into the basket of antisemitism," *id.* at 555, and noting "the broad diversity of opinion within the Jewish population itself" about Zionism, *id.* at 557); *White v. The New Sch.*, No. 25-CV-2910 (ALC), 2026 WL 2032050 (S.D.N.Y. July 14, 2026) (holding that, in context of "pro-Palestine protest," *id.* at *1, protestors' use of terms and phrases such as "Zio," "Zionists go to hell," and "Intifada until victory" were motivated by First Amendment–protected "political ideology," not "antisemitic intent or animus," *id.* at *7).

Where Courts *have* found antisemitic intent adequately pleaded, the plaintiffs alleged conduct unambiguously targeting Jewish people *as Jewish people*. *See, e.g.*, *Stand With Us*, 158 F.4th at 17 (noting allegations in *Gartenberg v. Cooper Union for the Advancement of Science & Art*, 765 F.Supp.3d 245, 269 (S.D.N.Y. 2025), of pro-Palestine graffiti written in "the stylized font commonly associated with Hitler's Mein Kampf"); *Weinberg v. Nat'l Students for Just. in Palestine*, No. 2:25-CV-03714-MCS-JC, 2026 WL 184302, at *9 (C.D. Cal. Jan. 20, 2026) (citing "sheer volume of alleged incidents of exclusion and violence against Jews" and "van festooned with Swastikas"). No such speech or conduct is alleged here.

**4. The Court should dismiss Plaintiffs' claim under 42 U.S.C. § 1981.**

The clause of 42 U.S.C. § 1981(a) that Plaintiffs invoke, *see* FAC at p. 46, provides that "[a]ll persons … shall have the same right … to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." This claim fails for several reasons.

First, "§ 1981 reaches only purposeful discrimination." *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 389 (1982). As shown above, Plaintiffs have not plausibly alleged that Reedy acted with antisemitic intent.

Second, Reedy, as a private actor, cannot be held liable under the "full and equal benefit" clause. "Because the state is the sole source of the law, it is only the

state that can deny the full and equal benefit of the law." *Elmore v. Harbor Freight Tools USA, Inc.*, 844 F.3d 764, 766 (8th Cir. 2016) (quoting *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001)); *accord Brown v. Philip Morris Inc.*, 250 F.3d 789, 799 (3d Cir. 2001); *Jones v. Poindexter*, 903 F.2d 1006, 1010 (4th Cir. 1990). *But see Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003) (en banc); *Phillip v. Univ. of Rochester*, 316 F.3d 291, 292 (2d Cir. 2003). (The Ninth Circuit has not ruled on this question.)

Third, even if this clause did cover private conduct, Plaintiffs would have to allege more than simply that Reedy violated the California Penal Code, which is the basis of their claim. FAC ¶¶ 156, 159. "An act by a private individual which violates the legal rights of another is not the equivalent of a deprivation of the full and equal benefit of the law violated." *Chapman*, 319 F.3d at 838 (Suhrheinrich, J., dissenting). Rather, the plaintiff must have been "impaired or prevented from enforcing through legal process his or her established rights. To read the statute any differently is simply illogical." *Id.* Imposing § 1981 liability whenever someone violates state law also would have the "absurd" effect of constitutionalizing state law. *Id.* at 842. Here, Plaintiffs do not allege that Reedy did something beyond violating the Penal Code that somehow deprived them of "the full and equal benefit of all laws and proceedings" for enforcing those laws.

Finally, of the numerous criminal laws that form the predicate for Plaintiffs' § 1981 claim, *see* FAC ¶¶ 156, 159, the FAC doesn't plausibly allege that Reedy violated them. Plaintiffs don't accuse Reedy of property destruction or assault or battery, and, as shown in this memorandum, they do not adequately allege that he is civilly liable for trespassing or using force or threats of force, let alone criminally liable.

**5. The Court should dismiss Plaintiffs' state-law claims.**

**5.1. The Temple cannot sue under the Ralph Act.**

The rights protected by the Ralph Act are set forth at California Civil Code § 51.7. In turn, § 52(b) imposes liability on violators of "right[s] provided by Section 51.7," and § 52(c) authorizes suit by "any *person aggrieved*" by the violation of "rights described in this section" (emphasis added). "[P]erson aggrieved" means "individuals," not nonprofit corporations like the Temple. *Midpeninsula Citizens for Fair Hous. v. Westwood Invs.*, 221 Cal.App.3d 1377, 1383 (1990).

**5.2. Plaintiffs fail to state claims under California's FACCE statute.**

California Penal Code § 423.2, or "FACCE," is essentially identical to the federal FACE statute, except it demands more by requiring that any actionable "force, threat of force, or physical obstruction" also be "a crime of violence." Cal. Penal Code § 423.2(b). There is little caselaw interpreting FACCE. Because its text is functionally identical to the federal FACE statute's text, Plaintiffs' state-law FACCE claims fail for the same reason their federal FACE claims do.[10]

**5.3. Plaintiffs fail to state claims under the Ralph and Bane Acts.**

The Ralph Act prohibits "violence, or intimidation by threat of violence" against "persons or property because of political affiliation" or other protected characteristic. Cal. Civ. Code § 51.7(b)(1); *see id.* § 51(b). As under FACE, "[s]peech alone" is not actionable unless, *inter alia*, it "threatens violence" and the hearer "reasonably fears that … violence will be committed against them or their property." *Id.* § 51.7(e)(1), (e)(1)(A)-(B).

The Bane Act covers anyone who "interferes by threat, intimidation, or coercion … with the exercise or enjoyment by any individual" of their constitutional rights. *Id.* § 52.1(b). "Speech alone" is not actionable unless "the

[10] Plaintiffs' state-law FACCE claim based on property damage is not asserted against Reedy. FAC at p. 50.

speech itself threatens violence against a specific person or group of persons" who "reasonably fears that, because of the speech, violence will be committed against them or their property." *Id.* § 52.1(k).

Of course, any actionable speech under the Ralph or Bane Act must be a "true threat" unprotected by the First Amendment.

For the reasons discussed in Section 2.3, above, Plaintiffs have not adequately alleged that Reedy committed violence or made any First Amendment–exempted true threats, or that he caused a reasonable fear that he would commit violence. Nor have Plaintiffs adequately alleged that Reedy interfered with any rights they cite as Bane Act predicates: their rights "to practice their faith, to move about free of intimidation or restraint, [or] to assemble and to speak." FAC ¶ 204. Moreover, these constitutional rights are protected against government abridgement only, and "a plaintiff cannot sue under the Bane Act when a private party directly violates a constitutional provision that applies only to state actors." *Hay v. Univ. of S. Cal.*, No. CV 22-5199 DSF (GJSX), 2022 WL 23031480, at *3 (C.D. Cal. Oct. 17, 2022) (citing *Jones v. Kmart Corp.*, 17 Cal.4th 329, 334 (1998)).

**5.4. The Temple fails to state a trespass claim.**

"The essence of the cause of action for trespass is an unauthorized entry onto the land of another." *Donahue Schriber Realty Grp., Inc. v. Nu Creation Outreach*, 232 Cal.App.4th 1171, 1177-78 (2014) (internal quotation marks omitted). "Where there is a consensual entry, there is no tort, because lack of consent is an element of the wrong." *Grant v. City of Long Beach*, No. CV2106666JVSJEMX, 2022 WL 17403068, at *9 (C.D. Cal. Nov. 28, 2022) (quoting *Civic W. Corp. v. Zila Indus., Inc.*, 66 Cal.App.3d 1, 16-17 (1977)). Additionally, "[i]f the consent of a possessor of land to the actor's presence on the land is terminated or suspended, the actor's presence on the land while leaving it with reasonable promptness and in a reasonable manner is privileged …." Restatement (Second) of Torts § 176; *see*

*Theofel v. Farey-Jones*, 359 F.3d 1066, 1073 (9th Cir. 2004) (relying on Restatement for trespass principles); *Intel Corp. v. Hamidi*, 30 Cal.4th 1342, 1351 (2003) (same).

Here, there is no plausible allegation that Reedy lacked consent to enter the Pavilion. While Plaintiffs claim the symposium was "invitation only," FAC ¶ 40, the FAC shows that this did not mean one had to receive an actual invitation to attend. If that were true, then it would not be the case that some individual defendants—who surely were not sent invitations—could have registered for the event, as Plaintiffs allege happened. FAC ¶ 60. Further, while Plaintiffs claim Reedy didn't register, *id.* ¶ 61, the FAC makes clear that either he did register, since security officers "check[ed] identification at the door to confirm advance registration," and he was let in, *id.* ¶ 40, or people in fact were allowed to attend without registering. Either way, Reedy did not enter without consent.

Nor do Plaintiffs make any non-conclusory allegation that Reedy's alleged shouting during the symposium was "in excess of the permission granted." *Id.* ¶ 211. The FAC nowhere alleges the scope of the consent they granted Reedy. Moreover, the nature of the event implies consent to speak candidly and dissent: a "symposium" connotes a "discussion" or "free interchange of ideas." *Symposium,* Merriam-Webster, https://www.merriam-webster.com/dictionary/symposium.

To the extent Plaintiffs allege the Temple revoked Reedy's consent after his demonstration, his presence was privileged while he acted with reasonable promptness and in a reasonable manner to leave. Because the FAC makes only a conclusory allegation that Reedy "refused instructions to leave," FAC ¶ 87, without saying who asked him to leave or the manner of his alleged refusal, this allegation is insufficient to plead trespass.

## CONCLUSION

"[I]n public debate [we] must tolerate insulting, and even outrageous, speech in order to provide 'adequate breathing space to the freedoms protected by the First Amendment.'" *Boos v. Barry*, 485 U.S. 312, 322 (1988) (quoting *Hustler Mag., Inc.*

*v. Falwell*, 485 U.S. 46, 56 (1988)). While Plaintiffs clearly felt offended by Jason Reedy's speech, the First Amendment does not allow them to penalize him for it. For the reasons set forth above, the Court should dismiss the FAC in its entirety, with prejudice.

Dated: October 9, 2026

*/s/ Jacob Loup*
Jacob Loup
Law Office of Jacob Loup

Akeeb Dami Animashaun, Esq.

*Attorneys for Defendant Jason Reedy*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Jason Reedy, certifies that this brief contains 6,955 words, which complies with the word limit of Local Rule 11-6.1.

Dated: October 9, 2026

*/s/ Jacob Loup*
Jacob Loup