Daniel N. Shallman (Bar No. 180782)
Paulina Rafizadeh (Bar No. 348706)
Mathew A. Sperling (Bar No. 360266)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067-4643
Telephone: + 1 (424) 332-4800
dshallman@cov.com; prafizadeh@cov.com
msperling@cov.com

Marci L. Miller (Bar No. 162790)
Richard Rosen (*Pro Hac Vice*)
Jeffrey I. Lang (*Pro Hac Vice*)
Mollie Galchus (*Pro Hac Vice*)
THE LOUIS D. BRANDEIS CENTER FOR
HUMAN RIGHTS UNDER LAW
1776 I Street, NW
Washington, DC 20006
Telephone: + 1 (714) 299-7157
mmiller@brandeiscenter.com; rrosen@brandeiscenter.com;
jlang@brandeiscenter.com; mgalchus@brandeiscenter.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

WILSHIRE BOULEVARD TEMPLE, et al.,

Plaintiffs

v.

TURTLE ISLAND LIBERATION FRONT LA, et al.,

Defendants.

Case No. 2:26-cv-07560-MCS-AJR

Assigned to the Honorable Mark C. Scarsi – Courtroom 7C

**PLAINTIFFS' OPPOSITION TO DEFENDANT PEOPLE'S CITY COUNCIL'S ANTI-SLAPP MOTION**

Hearing: January 25, 2027

## TABLE OF CONTENTS


I. INTRODUCTION ........ 6

II. STATEMENT OF FACTS ........ 7

A. The Symposium Took Place at an Invitation-Only Event on the Temple's Secured Campus. ........ 7

B. PCC Summoned a Masked Crowd to "Shut Down" the Wilshire Boulevard Temple. ........ 8

C. PCC Blockades the Temple, Leads Staggered Disruptions, and Threatens and Traps Congregants and Guests. ........ 8

III. PROCEDURAL HISTORY ........ 11

IV. LEGAL STANDARD ........ 11

V. ARGUMENT ........ 12

A. PCC Fails to Meet Its Burden that Plaintiffs' Claims Arise from Protected Activity. ........ 12

1. PCC Fails to Show that the Claims Arise Out of Speech. ........ 13

2. PCC Fails to Establish its Posts were an Exercise of Protected Speech. ........ 14

3. PCC Fails to Establish that Its Posts Involved an Issue of Public Interest. ........ 17

B. The Amended Complaint States Claims for Relief Against PCC. ........ 18

1. The Amended Complaint Plausibly Alleges Claims under the FACCE Act. ........ 18

2. The Amended Complaint Plausibly Alleges Claims under the Bane and Ralph Acts and for Trespass. ........ 19

C. PCC's Motion is Frivolous. ........ 20

VI. CONCLUSION........................................................................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brandenburg v. Ohio*,
395 U.S. 444 (1969)....16

*Capelouto v. Almanza*,
2025 WL 3692008 (C.D. Cal. Nov. 3, 2025)....11

*Counterman v. Colorado*,
600 U.S. 66 (2023)....14

*Flatley v. Mauro*,
39 Cal. 4th 299 (2006)....15

*Park v. Bd. of Trs. of Cal. State Univ.*,
2 Cal. 5th 1057 (2017)....13, 17

*Planned Parenthood of Columbia/Willamette v. Am. Coal. of Life Activists*,
290 F.3d 1058 (9th Cir. 2002) (en banc)....14, 16

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
890 F.3d 828 (9th Cir. 2018)....12, 16, 17

*Ralphs Grocery Co. v. Victory Consultants, Inc.*,
17 Cal. App. 5th 245 (2017)....20

*Robles v. Contreras*,
796 F. Supp. 3d 626 (C.D. Cal. 2025)....12

*Spencer v. Mowat*,
46 Cal. App. 5th 1024 (2020)....17

*New York ex rel. Spitzer v. Cain*,
418 F. Supp. 2d 457 (S. D. N. Y. 2006)....19

*United States v. Dugan*,
450 F. App'x 20 (2d Cir. 2011)....19

*United States v. Stewart*,
420 F.3d 1007 (9th Cir. 2005)....15

*Weinberg v. Nat'l Students for Just. in Palestine*, 2026 WL 184302 (C.D. Cal. Jan. 20, 2026) .......... 20

**Statutes**

18 U.S.C. § 248(e)(4) .......... 19

Cal. Penal Code § 423.2 .......... 11

Cal. Code Civ. Proc. § 52.1 .......... 11

Cal. Code Civ. Proc. § 425.16 .......... *passim*

**Other Authorities**

U.S. Const., 1st Amend. .......... 16, 17

U.S. Const., 13th Amend. .......... 20

Fed. R. Civ. P. 12 .......... 12

C.D. Cal. L.R. 11-6.1 .......... 22

## I. INTRODUCTION

California's anti-SLAPP statute is narrowly targeted to curb "Strategic Lawsuits Against Public Participation." The statute allows a defendant to file a special motion to strike an action intended to chill the valid exercise of constitutional rights.

This is not a lawsuit that seeks to chill any protected rights of public participation. Defendant People's City Council's ("PCC") argument that the claims against it are based solely on social media posts criticizing Israel profoundly mischaracterizes the Amended Complaint. The claims against PCC have nothing to do with its protected right of speech. The claims against PCC are based on its unlawful *conduct*, including the orchestration of, and participation in, a blockade of Plaintiff Wilshire Boulevard Temple, and the intimidation and trapping of its congregants and guests as they tried to access the house of worship to exercise their right of religious freedom.

PCC called on its followers to "shut down" an event at the Temple while endorsing a notorious symbol for targeting Jews for violence. PCC told its followers when to arrive and what to do when they got there. PCC's leader, Defendant Jason Reedy, was at the Temple to lead the charge. He and other coconspirators sealed both entrances to the Temple's campus, encircled cars with children inside, forced two Jewish day schools into lockdown, and infiltrated a gathering inside the Temple, smashing glass and screaming slurs. Reedy trespassed onto the Temple's grounds, stationed himself at a patio door to a room where the gathering was being held, pounded on the glass and menaced those inside, while his compatriots executed PCC's well-honed playbook of "staggered disruptions."

Of the claims that PCC seeks to strike with this motion, only one—for violation of California's Freedom of Access to Clinic and Church Entrances Act (the "FACCE Act")—arises even in part from PCC's social media posts. But PCC's posts constitute a threat of force, which is not constitutionally protected speech. And regardless, the Amended Complaint alleges PCC engaged in other misconduct—including through the actions of its leader—that state a claim under the FACCE Act.

PCC's motion to strike should be denied. Those responsible for the attack must be held accountable and prevented from endangering the Temple and its congregants again.

## II. STATEMENT OF FACTS

### A. The Symposium Took Place at an Invitation-Only Event on the Temple's Secured Campus.

Wilshire Boulevard Temple is the oldest synagogue in Los Angeles and a home for an engaged congregation of Jewish congregants, guests, and visitors to practice the Jewish faith. First Am. Compl. ¶¶ 14, 100 (ECF 51) (hereinafter, the "FAC"). Its campus is protected by a common security barrier with a single gated entrance on Wilshire Boulevard and a private gated parking garage on Hobart Boulevard. *Id.* ¶ 39. The campus is also home to the Irmas Pavilion, an essential and sacred religious space within the Temple used for events and affairs that are consistent with the Temple's religious mission and values. *Id.* ¶ 37.

The Temple scheduled a December 3, 2025 event in Irmas Pavilion for the local Jewish- and Korean-American communities called "Innovating Safety, Empowering Communities: A Symposium on AI and Public Safety." *Id.* ¶ 2. The Symposium was, at least in part, an exercise of Jewish religious practice. *Id.* ¶¶ 44–45. Due to the dramatic increase in violent attacks on Jewish houses of worship, attendance at the Symposium was by invitation only. *Id.* ¶¶ 30, 40. Each guest was required to register in advance and was advised that security officers would check identification at the door to confirm advance registration. *Id.* ¶ 40.

### B. PCC Summoned a Masked Crowd to "Shut Down" the Wilshire Boulevard Temple.

PCC describes itself as a collective of self-styled "disruptors," that pursues its goals through violent protest, agitation, and property destruction. *Id.* ¶¶ 18, 47–50. It instructs its members to wear "bloc"—meaning dark clothing, masks, helmets, and goggles—to avoid identification and prosecution. *Id.* ¶ 47. And PCC has a playbook for shutting down events: "staggered disruptions" in which members "pop off in different parts of the room" at different times in order to "extend the disruption" by ensuring they don't all "get kicked out at the same time." *Id.*¶ 80.

The day before the Symposium, PCC and its coconspirators issued calls for their members to "wear bloc" and meet at the Temple at 8:00 a.m. the next day to "shut it down"—an unmistakable call to physically shut down the event. *Id.* ¶ 6. PCC "liked" Defendant Koreatown 4 Palestine's post of the Symposium flyer overlaid with an inverted red triangle, a targeting symbol used by Hamas to reflect support for violence against Jews. *Id.* ¶ 67. PCC reposted the first screen on its own Instagram account. Id. ¶ 68. It then reposted the call to action to its 91,000 followers on X, saying exactly what it intended to do: "LET'S SHUT THIS DOWN!!!" *Id.*

### C. PCC Blockades the Temple, Leads Staggered Disruptions, and Threatens and Traps Congregants and Guests.

As directed by PCC, masked Defendants massed at the Temple's Wilshire Boulevard pedestrian security gate. They formed "a human barricade obstructing the entrance to the Temple." *Id.* ¶¶ 68, 71–72. At about 9:15 a.m., some thirty Defendants moved to the entrance to the Temple's private gated garage, the only other access point to the Temple campus. *Id.* ¶¶ 39, 73. They refused police orders to disperse and blocked as many as forty cars for about forty-five minutes, trapping parents and children arriving for school. *Id.* ¶ 75. Some never reached the Temple at all. *Id.* ¶ 78. The school locked

down for the rest of the day, and the Temple's social service center was also forced to close. *Id.* ¶¶ 78, 92.

Defendant Reedy—a PCC leader, organizer, and spokesperson who runs the organization's "propaganda arm"—participated in the demonstration. *Id.* ¶¶ 51, 80. Once the Symposium finally started, he helped execute PCC's "staggered disruption" tactic for shutting down events. *Id.* ¶¶ 49, 80. At least three individual Defendants infiltrated the program to obstruct, disrupt, and intimidate those in attendance. *Id.* ¶ 80. They jumped to their feet in seriatim, all the while shouting threats and obscenities. *Id.* One of them, Defendant Ray Corpus, smashed a large glass vase, sending shards hurtling past Brandeis Center Coalition Member No. 2's leg, before charging the Israeli Consul General and kicking over the sound system. *Id.* ¶ 83. Another committed a battery on a Temple security guard. *Id.* ¶ 84.

Meanwhile, Reedy trespassed onto the Temple's property, took up a position on a patio just outside the room in which the Symposium was held (separated from the attendees only by a glass wall), disrupted the program, and intimidated attendees. *Id.* ¶ 86. He stalked along the glass doors and surrounding glass walls, screamed and shouted at attendees, pounded on the glass, and used his cellphone to record the program and the attendees. *Id.* Reedy refused instructions to leave. *Id.* ¶ 87. His unlawful presence precluded attendees from exiting the room in which the Symposium was held and seeking refuge on the patio. *Id.* Reedy's conduct was coordinated with the other Defendants and achieved its goal of causing intimidation, fear, and anxiety among Temple members, guests, and employees. *Id.* ¶¶ 88–89.

The Temple scheduled a December 3, 2025 event in the Irmas Pavilion for the local Jewish and Korean-American communities called "Innovating Safety, Empowering Communities: A Symposium on AI and Public Safety." *Id.* ¶ 3. The Symposium was an exercise of Jewish religious practice. *Id.* ¶¶ 44–45. Due to the dramatic increase in violent attacks on Jewish houses of worship, attendance at the Symposium was by invitation only. *Id.* ¶¶ 30, 40. Each guest was required to register in advance and was advised that security officers would check identification at the door to confirm advance registration. *Id.* ¶ 40.

Defendant Reedy is a leader, organizer, and spokesperson for Defendant People's City Council ("PCC") and runs the organization's "propaganda arm." *Id.* ¶¶ 24, 51. The day before the Symposium, PCC and its coconspirators issued calls for their members to "wear bloc" and meet at the Temple at 8:00 a.m. the next day to "SHUT THIS DOWN"—an unmistakable call to confrontation at the Temple on the day of the Symposium. *Id.* ¶¶ 51, 63, 67–68. Their followers heeded the calls to action, as masked Defendants barricaded the gated entrance to the Temple, accosting congregants and guests trying to enter. *Id.* ¶¶ 72, 76–77. Other masked Defendants blocked as many as forty cars for about forty-five minutes, trapping parents and children arriving for school. Id. ¶¶ 73–75.

The claims against Reedy are based on his conduct at the Temple. Once the Symposium finally started, Reedy helped execute PCC's "staggered disruption" playbook for shutting down events. *Id.* ¶¶ 49, 80. At least three Defendants infiltrated the program to obstruct, disrupt, and intimidate those in attendance. *Id.* ¶ 80. Individual Defendants jumped to their feet in seriatim, all the while shouting threats and obscenities. *Id.* Defendant Corpus smashed a large glass vase, sending shards past Coalition Member No. 2's leg, before charging the Israeli Consul General and kicking over the sound system. *Id.* ¶ 83. Another defendant committed a battery on a Temple security guard. *Id.* ¶ 84.

Meanwhile, Reedy trespassed onto the Temple's property, took up a position on a patio just outside the room in which the Symposium was held (separated from the attendees only by a glass wall), disrupted the program, and intimidated attendees. *Id.* ¶ 86. He

stalked along the glass doors and surrounding glass walls, screamed and shouted at attendees, pounded on the glass, and used his cellphone to record the program and the attendees. *Id.* Reedy refused instructions to leave. *Id.* ¶ 87. His unlawful presence precluded attendees from exiting the room in which the Symposium was held and seeking refuge on the patio. *Id.* Reedy's conduct achieved its goal of causing intimidation, fear, and anxiety among Temple members, guests, and employees. *Id.* ¶¶ 88–89.

## III. PROCEDURAL HISTORY

On July 10, 2026, Plaintiffs commenced this action against Defendants Turtle Island Liberation Front LA, Koreatown 4 Palestine, PCC, Quyen Ballagh, Audrey Illeene Carroll, Corpus, Reedy, and John Does 1–40. Compl. (ECF 1). On September 25, 2026, Plaintiffs filed the operative Amended Complaint. FAC (ECF 51).

On October 9, 2026, PCC filed a Special Motion to Strike Pursuant to California Civil Procedure Code § 425.16. Mot. to Strike, ECF 66. PCC's motion to strike challenges the following state claims asserted against it:

- <u>Count VI–VIII:</u> California Freedom of Access to Clinic and Church Entrances Act (the "CA FACCE Act"), Cal. Penal Code § 423.2
- <u>Count IX:</u> Ralph Civil Rights Act, Cal. Civil Code § 51.7
- <u>Count X:</u> Bane Civil Rights Act, Cal. Civil Code § 52.1
- <u>Count XI:</u> Trespass

Plaintiffs file this opposition in response to PCC's motion to strike.

## IV. LEGAL STANDARD

Under California Civil Procedure Code Section 425.16(b), California's anti-SLAPP law, a motion to strike is subject to a two-step analysis.

At the first step, PCC bears the burden of making a "threshold showing" that the challenged claim arises from an act that falls within one of the protected activities enumerated in Section 425.16. *Capelouto v. Almanza*, 2025 WL 3692008, at *2 (C.D.

Cal. Nov. 3, 2025). If the moving party meets its threshold showing, the court moves on to the second step of the analysis.

The second step incorporates the standard from Federal Rule of Civil Procedure 12(b)(6) and requires plaintiffs to state a claim to relief that is plausible on its face, accepting all material facts as true and construing the facts in the light most favorable to plaintiffs. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018).

PCC erroneously argues that in the second step of the analysis, a plaintiff is required to "demonstrate—*through competent and admissible evidence*—a probability that they will prevail on each cause of action." Mot. at 4 (citing Cal. Civ. Proc. § 425.16(b)(3)). But that standard comes from state rules, not federal rules. If a defendant moves to strike on "purely legal arguments," as PCC has here, courts must analyze the motion under the federal rule which does not require plaintiffs "to present prima facie evidence" supporting their claims.[1] *Planned Parenthood*, 890 F.3d at 833–34.

## V. ARGUMENT

### A. PCC Fails to Meet Its Burden that Plaintiffs' Claims Arise from Protected Activity.

PCC mistakenly argues that the claims against it arise solely out of its social media posts, which it maintains constitute "conduct in furtherance of the exercise of the

[1] Should the Court determine that PCC has challenged the factual (not legal) sufficiency of the Amended Complaint, the Court should stay the motion or deny it without prejudice and permit Plaintiffs the opportunity to take discovery necessary to challenge it. *See Robles v. Contreras,* 796 F. Supp. 3d 626, 632 (C.D. Cal. 2025).

constitutional right of free speech in connection with a public issue or an issue of public interest." Mot. at 5–8 (quoting Cal. Civ. Pro. § 425.16(e)(4)). Not so.

1. PCC Fails to Show that the Claims Arise Out of Speech.

PCC wrongly characterizes all of the state law claims as arising solely out of its social media posts. Mot. at 5 ("Plaintiffs have brought PCC into this lawsuit because PCC frequently posts on social media."). But, in addition to PCC's social media posts, the claims against PCC arise from the unlawful *conduct* of agents acting on its behalf and the acts of its coconspirators. The Amended Complaint alleges, for example, that Reedy (a PCC leader, organizer, spokesperson, and architect of its strategies for disruption) trespassed onto private property, threatened Symposium attendees, and obstructed egress from the Symposium. FAC ¶¶ 51, 86–87. This intimidating, and violent *conduct* trapped Symposium attendees—Coalition members among them. *Id.* ¶¶ 89–90. Defendant Corpus similarly trespassed before smashing the Temple's glass vase, causing a Coalition member to fear an explosion. *Id.* ¶ 83. Masked Defendants, meanwhile, surrounded the cars of Symposium attendees and parents trying to drop off children at school. *Id.* ¶¶ 73–74. This is conduct—not speech—by PCC's agents and coconspirators, and certainly not social media posts.

Other than the FACCE Act claim based on threat of force (Count VI), PCC fails to show that the wrong complained of under any of the state claims is based—even in part—on activity protected by Section 425.16. "[A] claim may be struck only if the speech or petitioning activity itself is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." *Park v. Bd. of Trs. of Cal. State Univ.*, 2 Cal. 5th 1057, 1060 (2017).

The claim against PCC for nonviolent obstruction of a place of worship in violation of the FACCE Act (Count VII) is based on PCC's vicarious liability for the actions of Reedy and its other agents and coconspirators who physically obstructed entry and exit from the Temple. FAC ¶¶ 176–182. The claim against PCC for intentional damage or

destruction of property of a place of religious worship in violation of the FACCE Act (Count VIII) is based on PCC's vicarious liability for the actions of Defendant Corpus. *Id.* ¶¶ 183–188. The claims under the Ralph Act and Bane Act (Counts IX and X) are based on the conduct of PCC's agents and co-conspirators who engaged in violence and interfered with the Defendants' exercise and enjoyment of their rights. *Id.* ¶¶ 189–207. Likewise, the claim of trespass against PCC (Count XI) asserts that PCC is vicariously liable for Reedy's trespass and its other agents and coconspirators who trespassed onto the Temple's private property. *Id.* ¶¶ 208–215.

PCC therefore has failed to show that any claims—other than the claim that PCC used threat of force in violation of the FACCE Act (Count VI)—arose even in part out of speech, and its motion to strike Counts VII–XI must be denied for that reason.

2. <u>PCC Fails to Establish its Posts were an Exercise of Protected Speech.</u>

The claim that PCC violated the FACCE Act through threat of force arises from far more than just PCC's social media posts, *see, e.g.*, FAC ¶¶ 172–173, but PCC's protected speech argument fails even if the Court were to consider that claim based on PCC's social media posts alone.

Threats of force are not protected speech. *Planned Parenthood of Columbia/Willamette v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1077 (9th Cir. 2002) (en banc). A "threat of force" is a statement reasonably understood to communicate "a serious expression of intent to inflict bodily harm." *Id.* A court must consider the "whole factual context and all the circumstance" to determine whether a statement is a true threat, including a defendant's history of violent and disruptive protests. *Id.* at 1078–80. A defendant is liable when it consciously disregards a substantial risk that its "communications would be viewed as threatening violence." *Counterman v. Colorado*, 600 U.S. 66, 69 (2023). That standard "involves insufficient concern with risk, rather than awareness of impending harm." *Id* at 79. A true threat need not be directly communicated

to or received by the victim. *United States v. Stewart*, 420 F.3d 1007, 1012, 1018 (9th Cir. 2005).

PCC's December 2, 2025 social media posts, independent of other acts that comprise Plaintiffs' claim, themselves constitute a true threat and so are not subject to constitutional protection. PCC's social media posts endorsed Koreatown 4 Palestine's call to action that included an image of the Symposium program with a large red X scrawled across it and embossed with an inverted red triangle, a notorious symbol for targeting Jews for violence.[2] FAC ¶¶ 67–68. It posted a separate call for its followers to mass in front of the Temple and "SHUT THIS DOWN!!!" *Id.* ¶ 68. Those posts—against the backdrop of increased violent actions against Jewish institutions, including violence in which PCC has participated—would reasonably be understood to be an expression of intent to inflict harm in violation of the FACCE Act. *Id.* ¶¶ 30–34, 50.

PCC argues that "the anti-SLAPP statute protects all forms of speech" unless the defendant concedes the criminality of its conduct or the criminality is shown. Mot. at 5 (citing *Flatley v. Mauro*, 39 Cal. 4th 299, 316 (2006)). In *Flatley v. Mauro*, the Supreme Court of California affirmed denial of an anti-SLAPP motion filed by a defendant who argued that the communications at the heart of the plaintiff's claims were constitutionally protected. 39 Cal. 4th at 305. The Supreme Court disagreed and held that the defendant's communications amounted to criminal extortion, and he therefore failed to meet his burden at the first step of the Section 425.16 analysis. *Id.* at 333.

Like *Flatley*, Plaintiffs' threat-of-force claim under the FACCE Act, Cal. Penal Code. § 423, concerns criminal conduct. A violation of the FACCE Act constitutes criminal conduct, and a first-time violation is a "misdemeanor, punishable by imprisonment in a county jail" for up to one year. *Id.* § 423.3(a). PCC cannot avail itself

---

[2] The use of red triangles "originates from Hamas's propaganda videos," where it is used to mark Israeli "targets before an attack." FAC ¶ 67.

of protection under Section 425.16 because the Amended Complaint makes a showing of criminal conduct.

PCC next contends that its posts are entitled to "maximum" First Amendment protections even if they were threatening. Mot. at 6. It argues that "[s]peech made 'through the normal channels of group communication, and concerning matters of public policy' is entitled to 'the maximum level of protection by the Free Speech Clause' even if the target of the speech experiences fear or intimidation." *Id.* (quoting *Planned Parenthood of Columbia/Willamette, Inc. v.Am. Coalition of Life Activists*, 244 F.3d 1007, 1018–19 (9th Cir. 2001), *rev'd en banc* 290 F.3d 1058). But the entire opinion on which PCC relies was reversed on rehearing en banc when the Ninth Circuit expressly rejected PCC's argument. The en banc Court held: "Neither do we agree that threatening speech made in public is entitled to heightened constitutional protection just because it is communicated publicly rather than privately." *Planned Parenthood,* 290 F.3d at 1076.

PCC further misunderstands the applicable legal standard when it asserts that its posts are protected unless they were capable of "producing *imminent* lawless action." Mot. at 6 (quoting *Brandenburg v. Ohio,* 395 U.S. 444, 447 (1969)). Again, the en banc *Planned Parenthood* decision clears up any confusion, explaining that the *Brandenburg* standard applies only to a claim of advocacy of violence—not a *threat* of violence as alleged in the Amended Complaint. *See Planned Parenthood*, 290 F.3d at 1072 ("[W]hile advocating violence is protected, threatening a person with violence is not."). Here, of course, we have a direct threat of force—followed by actual violent conduct—against those attending the Symposium.

PCC attempts another mischaracterization by contending that Plaintiffs' claims merely target protected "offensive speech." Mot. at 6. But the Amended Complaint plainly alleges that PCC's posts constitute an unprotected threat of force. And in its final attempt to avail itself of constitutional protection, PCC argues that the Amended Complaint challenges prior protected speech unrelated to the December 3 attack. *Id.* at 6–

7. But "a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." *Park*, 2 Cal. 5th at 1060 (emphasis added); *accord Spencer v. Mowat,* 46 Cal. App. 5th 1024, 1037 (2020). Here, PCC's pre-December 2, 2025 speech recited in the Amended Complaint are not the activity that constitutes the threat of force against Plaintiffs—but rather evidence of PCC's past record of violence, such as statements:

- encouraging its supporters to wear "bloc" in anticipation of violent confrontation and to conceal identity to avoid criminal prosecution;
- approving of trespass and property destruction as protest tactics; and
- explaining that successful disruptions can "shut down" events.

FAC ¶¶ 47–49. None of these are subject to protection under Section 425.16. Nor should PCC be entitled to use the First Amendment as a weapon against evidence—admissible as party admissions against PCC—that helps prove Plaintiffs' case. Because PCC has failed to establish that its posts were an exercise of protected speech, its motion to strike should be denied.

3. <u>PCC Fails to Establish that Its Posts Involved an Issue of Public Interest.</u>

Additionally, PCC's motion should be denied because it has failed to show that its December 2, 2025 social media posts involved a matter of public interest. PCC argues that it is immunized from liability for its posts because they addressed policing, artificial intelligence, weapons manufacturing, and the Israeli-Palestinian conflict. Mot. at 7–8. Even if that were true (and it is not), a true threat cannot be transformed merely through references to issues of public interest. In *Planned Parenthood*, for example, the Ninth Circuit held that "wanted" posters featuring physicians who performed abortions constituted true threats, notwithstanding the public debate on abortion. 290 F.3d 1063.

The same is true here. Even if PCC's posts referenced issues of public interest, the posts are not protected when they also constitute true threats—such as through the use of an inverted red triangle targeting the Temple's Symposium. FAC ¶ 68.

**B. The Amended Complaint States Claims for Relief Against PCC.**

PCC's motion to strike should also be denied at the second step of the Section 425.16 analysis because, as briefly explained here and more fully in Plaintiffs' separate motion to dismiss oppositions, the Amended Complaint plainly alleges plausible claims for relief.

1. The Amended Complaint Plausibly Alleges Claims under the FACCE Act.

As explained above, the Amended Complaint alleges that PCC's social media posts—and the actions of Reedy, other agents, and coconspirators—constitute threats of force in violation of the FACCE Act.

The Temple's campus is a place of worship within the meaning of the FACCE Act, and the Irmas Pavilion is an integral part of the Temple's mission. FAC ¶¶ 37–39. Moreover, the Irmas Pavilion itself is a place of worship, an essential religious space on the Temple's Koreatown campus. *Id.* It hosts Shabbat services and High Holy Day services—the holiest days of the Jewish year—as well as bar and bat mitzvah and wedding celebrations. *Id.* The Temple agreed to host the Symposium at the Irmas Pavilion because, among other things, it furthered a core component of the Temple's religious mission, that of *tikkun olam*. *Id.* ¶ 41. At the Temple, *tikkun olam* is a foundational religious practice. *Id.*

The Amended Complaint more than plausibly alleges that PCC's December 2, 2025 social media posts constituted threats of force. Similar cases demonstrate as much. In *Helmann v. CodePink Women for Peace*, for example, Judge Wilson denied a motion to dismiss a FACE Act claim based on social media posts announcing a protest at a synagogue. 2025 WL 3030582 (C.D. Cal. June 13, 2025). The posts included the event

date and the synagogue address inside an inverted red triangle, a symbol associated with Hamas that is used to target Jews for violence. *Id.* at *2. Judge Wilson held that "[t]his use of the inverted red triangle, as alleged, plausibly constitutes a true threat." *Id.* at *12–14.

The FACCE Act claim, however, is not based exclusively on PCC's posts. The Amended Complaint also states a claim that PCC conveyed a true threat through Reedy's actions and the actions of other agents and coconspirators. Reedy, for example, trespassed onto private property and stationed himself at the patio door, with only glass separating him from the Symposium attendees. FAC ¶¶ 86–87. He pounded on that glass, screamed at the frightened attendees, and refused directions to leave—effectively trapping Symposium attendees in the room. *Id.* The Amended Complaint likewise states a claim that PCC, through these actions of Reedy and others, used physical obstruction in violation of the FACCE Act. Under the Act's federal analog, a physical obstruction includes "rendering passage to or from" a place of "religious worship unreasonably difficult or hazardous." 18 U.S.C. § 248(e)(4); *see New York ex rel. Spitzer v. Cain*, 418 F. Supp. 2d 457, 480 (S. D. N. Y. 2006) (blocking doors by standing in front of them); *United States v. Dugan*, 450 F. App'x 20, 22 (2d Cir. 2011) (blocking doors by kneeling in front of them). And finally, the Amended Complaint alleges that PCC violated the FACCE Act by intentionally damaging or destroying the property owned by place of worship through the actions of its coconspirator, Defendant Corpus, who deliberately smashed a large glass vase and damaged the Temple's sound system and floor. FAC ¶ 83.

2. <u>The Amended Complaint Plausibly Alleges Claims under the Bane and Ralph Acts and for Trespass.</u>

The Amended Complaint alleges that PCC is vicariously liable for violations of the Bane and Ralph Acts. The Ralph Act prohibits "violence" or "intimidation by threat of violence," Cal. Civ. Code § 51.7, and the Bane Act prohibits interference with a person's rights "by threat, intimidation, or coercion," *id.* § 52.1(a). The Amended Complaint

plausibly alleges that PCC's agents and coconspirators, through intimidating, threatening, and violent conduct, "trapped" Symposium attendees—Coalition members among them. FAC ¶¶ 89–90. Those actions curtailed, at a minimum, their Thirteenth Amendment right to freedom of movement and freedom from racial violence, both of which apply to private actors. *See Weinberg v. Nat'l Students for Just. in Palestine*, 2026 WL 184302, at *7 (C.D. Cal. Jan. 20, 2026).

Plaintiffs have also plausibly pleaded each element of a common law claim for trespass: (1) the Temple's ownership or control of the property; (2) PCC's agent's (including Reedy's) intentional, reckless, or negligent entry onto the property; (3) lack of permission for the entry or acts in excess of permission; (4) harm; and (5) that Reedy's conduct was a substantial factor in causing the harm. *Ralphs Grocery Co. v. Victory Consultants, Inc.*, 17 Cal. App. 5th 245, 262 (2017).

**C. PCC's Motion is Frivolous.**

Under California Civil Procedure Code Section 425.16(c)(1), if the Court finds that PCC's motion to strike is frivolous or is solely intended to cause unnecessary delay, the Court shall award costs and reasonable attorney's fees to the prevailing party. PCC's motion is frivolous and solely intended to cause unnecessary delay. That it directs an anti-SLAPP motion against a trespass claim—a claim based solely on physical location—underscores the lack of seriousness of the motion. The rest of the motion fares no better.

PCC treats every state claim as though it arose solely from its social media posts, but Counts VII through XI rest on the conduct of PCC's agents and coconspirators—Reedy's trespass and obstruction, Corpus's destruction of Temple property, and the blockade of the Temple's entrances—not on anything PCC posted. *See supra* § V.A.1. As for the posts themselves, PCC's call to "SHUT THIS DOWN," paired with a symbol used to target Jews for violence, is an unprotected true threat, and PCC's contrary argument rests on a Ninth Circuit panel opinion that was reversed en banc and on an incitement standard that does not apply to threats. *See supra* § V.A.2. Nor does a true threat become protected

merely because it references issues of public interest. *See supra* § V.A.3. Should the Court deny PCC's special motion to strike, Plaintiffs intend to move for an award of their costs and reasonable attorneys' fees.

## VI. CONCLUSION

For the foregoing reasons, the Temple and Coalition respectfully request that the Court deny PCC's special motion to strike in its entirety, and find that the motion is frivolous, solely intended to cause unnecessary delay, or both.

DATED: October 30, 2026

Respectfully submitted,

COVINGTON & BURLING LLP

By: */s/ Daniel N. Shallman*
Daniel N. Shallman (Bar No. 180782)
Paulina Rafizadeh (Bar No. 348706)
Mathew A. Sperling (Bar No. 360266)
1999 Avenue of the Stars
Los Angeles, California 90067-4643
Telephone: + 1 (424) 332-4800
dshallman@cov.com

THE LOUIS D. BRANDEIS CENTER FOR HUMAN RIGHTS UNDER LAW

By: */s/ Marci L. Miller*
Marci L. Miller (Bar No. 162790)
Richard Rosen (*Pro Hac Vice*)
Jeffrey I. Lang (*Pro Hac Vice*)
Mollie Galchus (*Pro Hac Vice*)
1776 I Street, NW
Washington, DC 20006
Telephone: + 1 (714) 299-7157
mmiller@brandeiscenter.com

*Attorneys for Plaintiffs Wilshire Boulevard Temple and The Louis D. Brandeis Center Coalition to Combat Anti-Semitism, Inc.*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs Wilshire Boulevard Temple and The Louis D. Brandeis Center Coalition To Combat Anti-Semitism, Inc., certifies that this brief contains 4,972 words, which complies with the word limit of L.R. 11-6.1.

DATE: October 30, 2026

*/s/ Daniel N. Shallman*
Daniel N. Shallman (Bar No. 180782)