Daniel N. Shallman (Bar No. 180782)
Paulina Rafizadeh (Bar No. 348706)
Mathew A. Sperling (Bar No. 360266)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067-4643
Telephone: + 1 (424) 332-4800
dshallman@cov.com; prafizadeh@cov.com
msperling@cov.com

Marci L. Miller (Bar No. 162790)
Richard Rosen (*Pro Hac Vice*)
Jeffrey I. Lang (*Pro Hac Vice*)
Mollie Galchus (*Pro Hac Vice*)
THE LOUIS D. BRANDEIS CENTER FOR
HUMAN RIGHTS UNDER LAW
1776 I Street, NW
Washington, DC 20006
Telephone: + 1 (714) 299-7157
mmiller@brandeiscenter.com; rrosen@brandeiscenter.com;
jlang@brandeiscenter.com; mgalchus@brandeiscenter.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WILSHIRE BOULEVARD TEMPLE, et al.,<br><br>Plaintiffs<br><br>v.<br><br>TURTLE ISLAND LIBERATION FRONT LA, et al.,<br><br>Defendants. | Case No. 2:26-cv-07560-MCS-AJR<br><br>Assigned to the Honorable Mark C. Scarsi – Courtroom 7C<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT JASON REEDY'S SPECIAL MOTION TO STRIKE UNDER CAL. CIV. PROC. CODE § 425.16**<br><br>Hearing: January 25, 2027 |

## TABLE OF CONTENTS


I. INTRODUCTION ........ 6

II. STATEMENT OF FACTS ........ 6

III. PROCEDURAL HISTORY ........ 8

IV. LEGAL STANDARD ........ 8

V. ARGUMENT ........ 9

A. The Claims Against Reedy Arise from His Unlawful Conduct, Not Protected Speech. ........ 10

1. The Temple's Secured Campus Is Not a Place Open to the Public or a Public Forum. ........ 11

2. Reedy's Threats, Physical Obstruction, and Trespass Are Not Protected Simply Because They Were Committed During a Protest. ........ 12

B. The Court Can Reasonably Infer, Based on Plaintiffs' Allegations, That Reedy Is Liable for the Misconduct Alleged. ........ 15

1. The Amended Complaint Plausibly Alleges that Reedy Violated the California FACCE Act. ........ 16

2. The Amended Complaint Plausibly Alleges that Reedy Violated the Ralph and Bane Acts. ........ 18

3. The Amended Complaint Plausibly Alleges that Reedy Trespassed on Temple Property. ........ 19

C. Reedy's Motion Is Frivolous. ........ 20

VI. CONCLUSION ........ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 9

*Capelouto v. Almanza*,
2025 WL 3692008 (C.D. Cal. Nov. 3, 2025) .......... 9

*Cassinos v. Union Oil Co.*,
14 Cal. App. 4th 1770 (1993) .......... 19

*Civic W. Corp. v. Zila Indus., Inc.*,
66 Cal. App. 3d 1 (Ct. App. 1977) .......... 19

*Gaynor v. Bulen*,
19 Cal. App. 5th 864 (2018) .......... 9

*Golden Gate Land Holdings LLC v. Direct Action Everywhere*,
81 Cal. App. 5th 82 .......... *passim*

*Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*,
742 F.3d 414 (9th Cir. 2014) .......... 12, 13

*Ground Game LA v. Cerise Castle*,
2026 WL 922021 (C.D. Cal. Mar. 31, 2026) .......... 9, 15

*Gunn v. Drage*,
65 F.4th 1109 (9th Cir. 2023) .......... 15

*Helmann v. CodePink Women for Peace*,
2025 WL 3030582 (C.D. Cal. June 13, 2025) .......... 16, 17

*Huntingdon Life Scis., Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*,
129 Cal. App. 4th 1228 (2005) .......... 13, 14

*Jones v. Kmart Corp.*,
17 Cal. 4th 329 (1998) .......... 19

*Langer v. Kiser*,
57 F.4th 1085 (9th Cir. 2023) ....................14

*Loretto v. Teleprompter Manhattan CATV Corp.*,
458 U.S. 419 (1982) ....................12

*Manzari v. Associated Newspapers Ltd.*,
830 F.3d 881 (9th Cir. 2016) ....................6

*Novartis Vaccines & Diagnostics, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*,
143 Cal. App. 4th 1284 (2006) ....................14

*Paul for Council v. Hanyecz*,
85 Cal. App. 4th 1356 (2001) ....................13

*Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*,
290 F.3d 1058 (9th Cir. 2002), *as amended* (July 10, 2002) ....................16

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
890 F.3d 828 (9th Cir. 2018) ....................9, 15

*Ralphs Grocery Co. v. Victory Consultants, Inc.*,
17 Cal. App. 5th 245 (2017) ....................12, 14, 15

*Simmons v. Bauer Media Group USA, LLC*,
50 Cal. App. 5th 1037 (2020) ....................11

*Spencer v. Mowat*,
46 Cal. App. 5th 1024 (2020) ....................18

*New York ex rel. Spitzer v. Cain*,
418 F. Supp. 2d 457 (S.D.N.Y. 2006) ....................17

*StandWithUs Center for Legal Justice v. CodePink*,
2:24-cv-06253-SVW-PVC (C.D. Cal. June 13, 2025) ....................17

*United States v. Dugan*,
450 F. App'x 20 (2d Cir. 2011) ....................17

*United States v. Mahoney*,
247 F.3d 279 (D.C. Cir. 2001) ....................17

*UPPI LLC v. Cardinal Health, Inc.*,
2022 WL 3594081 (9th Cir. Aug. 23, 2022) ........................................ 14

*Weinberg v. Nat'l Students for Just. in Palestine*,
2026 WL 184302 (C.D. Cal. Jan. 20, 2026) ........................................ 19

*Wilcox v. Superior Court*,
27 Cal. App. 4th 809 (1994) ........................................ 13

**Statutes**

18 U.S.C. § 248 ........................................ 16, 17

Cal. Civ. Code § 51.7 ........................................ 8, 18

Cal. Civ. Code § 52.1 ........................................ 8

Cal. Civ. Proc. Code § 425.16 ........................................ *passim*

Cal. Penal Code § 423.1 ........................................ 17

Cal. Penal Code § 423.2 ........................................ 8, 16

Cal. Penal Code § 423.2 ........................................ 8, 18

**Other Authorities**

Fed. R. Civ. P. 12 ........................................ 9, 15

## I. INTRODUCTION

California's anti-SLAPP statute is a narrow remedy to curb "Strategic Lawsuits Against Public Participation." Cal. Civ. Proc. Code § 425.16. It allows a defendant to file a special motion to strike in an action intended to "chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." *Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 886 (9th Cir. 2016).

Defendant Reedy's argument that the claims against him arise from his speech criticizing the State of Israel and Zionism is frivolous. He fails to cite a single allegation in the First Amended Complaint (the "Amended Complaint") that refers to anything he said. The claims against him are based on what he ***did***, not on anything he said. Reedy trespassed onto the Temple's private property, blocked an exit from the glass-walled room in which a program was being held, pounded on that glass, screamed at the frightened attendees, and refused directions to leave—all while his coconspirators, other Individual Defendants, staged threatening disruptions inside the room in which the program was being held. Because of Reedy's misconduct and that of the other Defendants, the Temple was forced to invoke safety protocols, confine children to their classrooms, and close its social services center. First Am. Compl. ¶¶ 78, 92 (ECF 51) (the "FAC").

Reedy's motion to strike should be denied, and he and the other Defendants must be held accountable and prevented from endangering the Temple and its congregants again.

## II. STATEMENT OF FACTS

Wilshire Boulevard Temple is the oldest synagogue in Los Angeles and a home for an engaged congregation of Jewish congregants, guests, and visitors to practice the Jewish faith. FAC ¶¶ 14, 100. Its campus is protected by a common security barrier with a single gated entrance on Wilshire Boulevard and a private gated parking garage on Hobart Boulevard. *Id.* ¶ 39. The campus is also home to the Irmas Pavilion, an essential and sacred religious space within the Temple used for events and affairs that are consistent with the Temple's religious mission and values. *Id.* ¶ 37.

The Temple scheduled a December 3, 2025 event in the Irmas Pavilion for the local Jewish and Korean-American communities called "Innovating Safety, Empowering Communities: A Symposium on AI and Public Safety." *Id.* ¶ 3. The Symposium was an exercise of Jewish religious practice. *Id.* ¶¶ 44–45. Due to the dramatic increase in violent attacks on Jewish houses of worship, attendance at the Symposium was by invitation only. *Id.* ¶¶ 30, 40. Each guest was required to register in advance and was advised that security officers would check identification at the door to confirm advance registration. *Id.* ¶ 40.

Defendant Reedy is a leader, organizer, and spokesperson for Defendant People's City Council ("PCC") and runs the organization's "propaganda arm." *Id.* ¶¶ 24, 51. The day before the Symposium, PCC and its coconspirators issued calls for their members to "wear bloc" and meet at the Temple at 8:00 a.m. the next day to "SHUT THIS DOWN"—an unmistakable call to confrontation at the Temple on the day of the Symposium. *Id.* ¶¶ 51, 63, 67–68. Their followers heeded the calls to action, as masked Defendants barricaded the gated entrance to the Temple, accosting congregants and guests trying to enter. *Id.* ¶¶ 72, 76–77. Other masked Defendants blocked as many as forty cars for about forty-five minutes, trapping parents and children arriving for school. Id. ¶¶ 73–75.

The claims against Reedy are based on his conduct at the Temple. Once the Symposium finally started, Reedy helped execute PCC's "staggered disruption" playbook for shutting down events. *Id.* ¶¶ 49, 80. At least three Defendants infiltrated the program to obstruct, disrupt, and intimidate those in attendance. *Id.* ¶ 80. Individual Defendants jumped to their feet in seriatim, all the while shouting threats and obscenities. *Id.* Defendant Corpus smashed a large glass vase, sending shards past Coalition Member No. 2's leg, before charging the Israeli Consul General and kicking over the sound system. *Id.* ¶ 83. Another defendant committed a battery on a Temple security guard. *Id.* ¶ 84.

Meanwhile, Reedy trespassed onto the Temple's property, took up a position on a patio just outside the room in which the Symposium was held (separated from the attendees only by a glass wall), disrupted the program, and intimidated attendees. *Id.* ¶ 86. He

stalked along the glass doors and surrounding glass walls, screamed and shouted at attendees, pounded on the glass, and used his cellphone to record the program and the attendees. *Id.* Reedy refused instructions to leave. *Id.* ¶ 87. His unlawful presence precluded attendees from exiting the room in which the Symposium was held and seeking refuge on the patio. *Id.* Reedy's conduct achieved its goal of causing intimidation, fear, and anxiety among Temple members, guests, and employees. *Id.* ¶¶ 88–89.

## III. PROCEDURAL HISTORY

On July 10, 2026, Plaintiffs Wilshire Boulevard Temple and The Louis D. Brandeis Center Coalition To Combat Anti-Semitism, Inc. commenced this action against Defendants Turtle Island Liberation Front LA, Koreatown 4 Palestine, PCC, Quyen Ballagh, Audrey Illeene Carroll, Ray Wue Corpus, Reedy, and John Does 1–40, asserting eleven causes of action. On September 25, 2026, Plaintiffs filed the operative First Amended Complaint.

On October 9, 2026, Reedy filed a Motion to Dismiss the First Amended Complaint (ECF 59) and Special Motion to Strike Pursuant to Cal. Civ. Proc. Code § 425.16 (ECF 61). Reedy's motion to strike challenges the following five state claims asserted against Reedy:

- <u>Count VI:</u> CA FACCE Act, Cal. Penal Code § 423.2(b)
- <u>Count VII:</u> CA FACCE Act, Cal. Penal Code § 423.2(d)
- <u>Count IX:</u> Ralph Civil Rights Act, California Civil Code § 51.7
- <u>Count X:</u> Bane Civil Rights Act, California Civil Code § 52.1
- <u>Count XI:</u> common law trespass

Plaintiffs file this opposition in response to Reedy's motion to strike.

## IV. LEGAL STANDARD

Under California Civil Procedure Code Section 425.16(b), California's anti-SLAPP law, a motion to strike is subject to a two-step analysis.

At the first step, Reedy bears the burden of making a "threshold showing" that the challenged claim arises from an act that falls within one of the protected activities

enumerated in Section 425.16. *Capelouto v. Almanza*, 2025 WL 3692008, at *2 (C.D. Cal. Nov. 3, 2025). If the moving party meets its threshold showing, the court moves on to the second step of the analysis.

The second step incorporates the standard from Federal Rule of Civil Procedure 12(b)(6) and requires plaintiffs to state a claim to relief that is plausible on its face, accepting all material facts as true and construing the facts in the light most favorable to plaintiffs. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018).

Reedy erroneously argues that in the second step of the analysis, a plaintiff is required to demonstrate "a probability that the plaintiff will prevail on the claim." Mot. at 7 (citing Cal. Civ. Proc. Code § 425.16(b)(1)). But that standard comes from state rules, not federal rules. If a defendant moves to strike on "purely legal arguments," as Reedy has here, courts must analyze the motion under the federal rule which does not require plaintiffs "to present prima facie evidence" supporting their claims. *Planned Parenthood*, 890 F.3d at 833–34. To prevail on a claim, Plaintiffs need only show that it is "plausible on its face" such that the court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ground Game LA v. Cerise Castle*, 2026 WL 922021, at *7 (C.D. Cal. Mar. 31, 2026), (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## V. ARGUMENT

Reedy's motion to strike fails at both steps of the anti-SLAPP analysis. He cannot carry his threshold burden because his "core injury-producing activities"—trespass, physical obstruction, and conspiracy—are not protected by the statute. *See Golden Gate Land Holdings LLC v. Direct Action Everywhere*, 81 Cal. App. 5th 82, 92. *See also Gaynor v. Bulen,* 19 Cal. App. 5th 864, 877 (2018) ("the defendant must show the defendant's act underlying the plaintiff's cause of action was itself a protected act" (cleaned up)). The activity that gives rise to Reedy's liability is conduct, not speech. He breached the security

perimeter of a synagogue without registration or permission, stationed himself outside the glass walls of the Symposium room, pounded on the glass, refused instructions to leave, and physically obstructed attendees from exiting. FAC ¶¶ 10, 61, 86–87, 89–90. "[C]ollateral or incidental allusions to protected activity will not trigger application of the anti-SLAPP statute." *Golden Gate*, 81 Cal. App. 5th at 92. And at the second step, the motion fails because the allegations in the Amended Complaint allow the Court to "draw the reasonable inference" that Reedy violated state law: Reedy threatened, intimidated, and obstructed people exercising their religious freedom at a house of worship, in violation of the California FACCE, Ralph, and Bane Acts, and he trespassed on the Temple's property. FAC ¶¶ 172, 179, 197, 204, 211.

### A. The Claims Against Reedy Arise from His Unlawful Conduct, Not Protected Speech.

Reedy's argument that the claims asserted against him arise from an activity protected under Section 425.16(e) finds no support in the Amended Complaint.

The Amended Complaint's claims against Reedy rest on what he did, not what he said. Reedy trespassed onto the Temple's private property, which was protected by a security barrier and security guards, stationed himself on a patio with only glass separating him from the Symposium attendees, pounded on that glass, screamed at the frightened attendees, refused directions to leave, and prevented egress from the room. FAC ¶¶ 10, 61, 86–87, 89–90, 209–10. As a result of Reedy's actions and those of the other Defendants, the Temple was forced to invoke safety protocols, confine children to their classrooms, and close its social services center. *Id.* ¶¶ 78, 92.

Reedy fails to show that any of these claims arise from protected activity. His motion to strike must be based on the actual allegations in the Amended Complaint. But he fails to cite a single allegation in the Amended Complaint that identifies or challenges his speech at the Symposium or seeks to impose liability for the content of any speech. He invokes only two categories of protected activity—statements "made in a place open to the

public or a public forum in connection with an issue of public interest," Cal. Civ. Proc. Code § 425.16(e)(3), and "other conduct in furtherance of the exercise of the . . . constitutional right of free speech in connection with a public issue," *id.* § 425.16(e)(4). Mot. at 4. He satisfies neither.

1. The Temple's Secured Campus Is Not a Place Open to the Public or a Public Forum.

Section 425.16(e) protects only a "***written or oral statement*** or writing made in a ***place open to the public*** or a ***public forum***." Cal. Civ. Proc. Code § 425.16(e)(3) (emphasis added). The Temple's campus is neither. The Amended Complaint states that the Temple's campus is private property, protected by a security perimeter and a private gated parking garage, and that the Temple restricts access to permitted guests. FAC ¶¶ 8, 39, 210. Reedy entered without registering, without seeking permission, and without receiving it. *Id.* ¶ 61. These allegations must be accepted as true for purposes of a motion to strike, and they establish that Reedy acted in a place that was ***not*** open to the public and ***not*** a public forum.

The court in *Golden Gate* rejected a substantially similar motion to strike. 81 Cal. App. 5th 82, 92. There, the court denied a motion to strike by an animal rights group, which livestreamed its members trespassing and vandalizing a horse racing track. The court explained that the defendant failed to establish that the "core injury-producing activities upon which the plaintiff's claim is premised" rested "on protected speech or petitioning activity." *Id.* The defendants' "collateral or incidental allusions to protected activity [did] not trigger application of the anti-SLAPP statute." *Id.* ("The only fair reading of the complaint is that the wrong on which the claims against Direct Action are based was the organization's alleged involvement in the illegal trespass, not its speech or petitioning activity."). *See also Simmons v. Bauer Media Group USA, LLC,* 50 Cal. App. 5th 1037, 1040–41 (2020) (newspaper's motion to strike denied because claim arose out of unlawful use of tracking device, not newspaper's protected speech). The same is true here: The

claims against Reedy rest on his unauthorized entry onto the Temple's secured campus, his refusal to leave, and his occupation of the patio that blocked attendees from exiting—not on any speech or petitioning activity. FAC ¶¶ 61, 86–87.

2. <u>Reedy's Threats, Physical Obstruction, and Trespass Are Not Protected Simply Because They Were Committed During a Protest.</u>

Section 425.16(e)(4) likewise does not reach the claims against Reedy. That provision protects "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Cal. Civ. Proc. Code § 425.16(e)(4). Reedy fails to show that his conduct furthered the exercise of any constitutional right because the Amended Complaint does not premise liability on his speech. It premises liability on his unlawful entry and his intimidating conduct on the Temple campus.

The constitutional right to free speech does not include a right to trespass on private property to broadcast a message. "Generally, landowners and tenants have a right to exclude persons from trespassing on private property; the right to exclude persons is a fundamental aspect of private property ownership." *Ralphs Grocery Co. v. Victory Consultants, Inc.*, 17 Cal. App. 5th 245, 258 (2017), (*citing Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 (1982)). Reedy had no right to engage in speech on the Temple's private property, and his activities did not constitute an exercise of the constitutional right of free speech.

Reedy misreads the authority he cites, which does ***not*** stand for the proposition that plainly illegal, non-speech conduct can receive protection under Section 425.16(e)(4). *See* Mot. at 6 (citing *Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 424 (9th Cir. 2014)). *Greater Los Angeles* concerned clear speech activity: CNN's decision not to caption the news videos posted on its website, which the court described as "part of [CNN's] editorial discretion" that "furthers CNN's free speech right to report the news." 742 F.3d at 423. The plaintiff argued that a captioning

requirement would not violate the First Amendment, and the court held that this question was "more appropriately reserved . . . for the second step." *Id.* at 424. But the claims here challenge no editorial choice or other speech; they challenge Reedy's trespass and physical obstruction, and nothing in *Greater Los Angeles* suggests that such unlawful conduct becomes protected merely because it occurs during a protest.

No precedent suggests that the statute shields unlawful, non-speech conduct merely because it accompanies a message. To the contrary, Section 425.16 protects a defendant "from retaliatory action for his or her exercise of *legitimate* . . . rights." *Paul for Council v. Hanyecz*, 85 Cal. App. 4th 1356, 1366 (2001) (emphasis in original). Reedy does not make even a prima facie showing that his trespass, physical obstruction, and intimidation are statutorily protected. He does not argue—and could not argue—that entering a secured synagogue campus without permission, refusing instructions to leave, or blocking frightened attendees from exiting is itself speech. His unlawful actions are like those of the defendants in *Hanyecz*, who laundered campaign contributions. *Id.* at 1361. The *Hanyecz* court rejected defendants' argument that their money laundering was "in furtherance" of their free-speech rights to make political donations, held "as a matter of law, that defendants cannot meet their burden on the first step," and denied the anti-SLAPP motion without reaching the second step. *Id.* at 1365 The *Hanyecz* court "reject[ed] the notion that section 425.16 exists to protect . . . illegal activity" like Reedy's activity here. *Id.* *Accord Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 820 (1994) ("[I]f the defendant's act was burning down the [plaintiff's] office as a political protest the defendant's motion to strike could be summarily denied without putting the [plaintiff] to the burden of establishing the probability of success on the merits.").

Contrary to his argument, Reedy's trespass is not protected activity. "If the defendant concedes or the evidence conclusively establishes the conduct complained of was illegal, as a matter of law the defendant cannot make a prima facie showing the action arises from protected activity." *Huntingdon Life Scis., Inc. v. Stop Huntingdon Animal*

*Cruelty USA, Inc.*, 129 Cal. App. 4th 1228, 1246 (2005). Taking Plaintiffs' allegations as true, Reedy's entry was plainly unlawful. The Temple's campus is enclosed by a security barrier with gated entrances, and security officers limit entry to permitted persons. FAC ¶¶ 39, 210. Reedy "never sought permission to enter the Temple's campus, and none was given." *Id.* ¶ 61. He then "refused instructions to leave the premises." *Id.* ¶ 87. Reedy speculates that he must have registered or been admitted without registering, Mot. at 3, but all he is doing is asking the Court to draw inferences in his favor, which is impermissible at the pleading stage. *UPPI LLC v. Cardinal Health, Inc.*, 2022 WL 3594081, at *3 (9th Cir. Aug. 23, 2022).

Neither of Reedy's cases holds that trespass in furtherance of speech is protected. At step one of the anti-SLAPP analysis, *Huntingdon* held that "defendants' speech took place in a public forum." 129 Cal. App. 4th at 1247. *See also Novartis Vaccines & Diagnostics, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 143 Cal. App. 4th 1284, 1296–97 (2006) (holding, at step one, that trespass, harassment, and conspiracy were not protected activities). *Langer v. Kiser* likewise held that the parking lot at issue "was open to the public." 57 F.4th 1085, 1104 (9th Cir. 2023). Here, however, the Temple's campus was not open to the public.

*Ralphs Grocery Co.* is instructive. 17 Cal. App. 5th 245 (2017). In *Ralphs,* the court reversed an order dismissing Ralphs' action for trespass and granting the defendants' anti-SLAPP motion. Ralphs filed suit against the defendants after they refused to stop collecting petition signatures on a private walkway adjacent to Ralphs' store. The defendants' motion to strike argued that Ralphs' claim arose out of the defendants' constitutionally protected right to petition. The appellate court, however, reversed because the walkway was private property and not open to the general public. The court thus held that the defendants had "not carried their burden of establishing that the petitioning activity engaged in at the front of the two subject stores was protected for purposes of the first

prong of our anti-SLAPP analysis." *Ralphs Grocery,* 17 Cal. App. 5th at 260.[1] *See also Golden Gate*, 81 Cal. App. 5th at 90. If the walkway outside of a publicly accessible retail store is not a public forum for petitioning, a synagogue's gated campus—behind a security barrier, with access limited to pre-registered guests—is certainly not one. *See* FAC ¶¶ 39–40, 61, 210.

### B. The Court Can Reasonably Infer, Based on Plaintiffs' Allegations, That Reedy Is Liable for the Misconduct Alleged.

Reedy misstates the standard to be applied by a federal court in the second step of the anti-SLAPP framework. Plaintiffs do not, as he suggests, bear the burden of "showing 'a probability that the plaintiff will prevail on the claim.'" Mot. 7, (*citing* Cal. Civ. Proc. Code § 425.16(b)(1)). The anti-SLAPP remedy is state substantive law; however, a federal court is obligated to apply federal rules of procedure, including the standard of review on a motion to strike. In *Gunn v. Drage*, the Ninth Circuit held that "[i]f a defendant moves to strike on 'purely legal arguments,' courts must analyze the motion under Rules 8 and 12," and that "these rules for anti-SLAPP motions to strike apply in federal court regardless of whether a plaintiff challenges the first or second step of the anti-SLAPP analysis." 65 F.4th 1109, 1119–20 (9th Cir. 2023) (*quoting Planned Parenthood*, 890 F.3d at 833). *See also Ground Game*, 2026 WL 922021, at *7 ("Castle contends that she is challenging the legal, rather than the factual, sufficiency of GGLA's claims. The Court therefore evaluates the merits of GGLA's claims under Federal Rule of Civil Procedure 12(b)(6).") (citation omitted).

Plaintiffs respectfully refer the Court to their Memorandum in Opposition to Reedy's Motion to Dismiss for a complete presentation of their arguments in support of their claims. A summary of those arguments follows.

---

[1] In its decision, the court distinguished Ralphs' walkway from other cases that have held that shopping center parking lots which were open to the public, while private property, were deemed a public forum. *Ralphs Grocery,* 17 Cal. App. 5th at 260.

1. The Amended Complaint Plausibly Alleges that Reedy Violated the California FACCE Act.

California's FACCE Act, Cal. Penal Code § 423.2(b), the California counterpart to the federal FACE Act, 18 U.S.C. § 248(a)(2), imposes liability on any person who "[b]y force, threat of force, or physical obstruction" does—or attempts to—injure, intimidate or interfere with a person exercising the right of religious freedom at a place of worship.

The Temple's campus constitutes a place of worship within the meaning of the FACCE Act. Its campus includes its Sanctuary, library, its two Jewish day schools, and the Irmas Pavilion, and "is protected by a common security barrier" and has "a single gated entrance" on Wilshire Boulevard. FAC ¶¶ 38–39. In its facilities, the Temple regularly hosts individual and congregational prayer services, pastoral services, religious lifecycle events, Jewish day schools, religious classes, and individual and group religious studies in its libraries and study halls, as well as a social services center where congregants fulfill the foundational Jewish obligation of *tikkun olam*. FAC ¶¶ 100–01. The Irmas Pavilion itself is a place of worship, an essential religious space on the Temple's Koreatown campus. FAC ¶ 37. It hosts Shabbat services and High Holy Day services—the holiest days of the Jewish year—as well as bar and bat mitzvah and wedding celebrations.

The Temple agreed to host the Symposium at the Irmas Pavilion because, among other things, it furthered a core component of the Temple's religious mission, that of *tikkun olam*. At the Temple, *tikkun olam* is a foundational religious practice. FAC ¶¶ 37, 41; *see also id.* ¶¶ 44–45.

Under the FACCE Act, a threat of force, or true threat, is reasonably understood to communicate a serious expression of intent to inflict bodily harm. *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1077 (9th Cir. 2002), *as amended* (July 10, 2002). A court must consider "the whole factual context" and "all of the circumstances" to "determine whether a statement is a true threat." *Id.* at 1078 (citation omitted). For example, in *Helmann v. CodePink Women for Peace*, 2025

WL 3030582, at *14–16 (C.D. Cal. June 13, 2025), Judge Wilson denied a motion to dismiss a FACE Act claim based on a social media post announcing a protest at a synagogue. The text of the post on its face did not contain a true threat. *Helmann,* 2025 WL 3030582, at *12. But it included the event date and the synagogue address inside an inverted red triangle, a symbol associated with Hamas that is used to target Jews for violence. Judge Wilson held that "[t]his use of the inverted red triangle, as alleged, plausibly constitutes a true threat." *Id. See also StandWithUs Center for Legal Justice v. CodePink*, 2:24-cv-06253-SVW-PVC (C.D. Cal. June 13, 2025) (same).

The Amended Complaint plausibly pleads that Reedy, through his actions, conveyed a true threat. Reedy trespassed onto private property, stationed himself at the patio door, with only glass separating him from the Symposium attendees, pounded on that glass, screamed at the frightened attendees, refused directions to leave and remained there for an extended period of time while continuing to pound on the glass and scream at attendees, and prevented egress from the room. FAC ¶¶ 86–87, 89–90.

The Amended Complaint likewise pleads a plausible claim that Reedy used physical obstruction. Under California law, a physical obstruction includes "rendering passage to or from . . . a place of religious worship unreasonably difficult or hazardous." Cal. Penal Code § 423.1(e); *accord* 18 U.S.C. § 248(e)(4). Federal courts applying the analogous FACE Act have found obstruction on comparable facts. *See United States v. Mahoney*, 247 F.3d 279, 284 (D.C. Cir. 2001) ("The Access Act does not limit physical obstruction to bodily obstruction, but rather is broadly phrased to prohibit any act rendering passage to the facility unreasonably difficult."); *see also New York ex rel. Spitzer v. Cain*, 418 F. Supp. 2d 457, 480 (S.D.N.Y. 2006) (standing in front of pedestrians as they try to enter a clinic; blocking clinic doors by standing directly in front of them); *United States v. Dugan*, 450 F. App'x 20, 22 (2d Cir. 2011) (kneeling in front of a door to block it and refusing to move when requested to do so).

The CA FACCE Act also reaches "nonviolent" physical obstruction. Cal. Penal Code § 423.2(d). Reedy engaged in such obstruction by stalking the glass doors while screaming at and recording Symposium participants, and by occupying the patio so that attendees could not exit the room. FAC ¶¶ 86–87, 179.

The Amended Complaint also alleges that Reedy is liable for the acts of his Defendant coconspirators. The Amended Complaint alleges, for example, that Defendant Corpus smashed a glass vase, sending shards flying and causing a Coalition member to fear an explosion, then screamed obscenities and slurs while charging a Symposium guest, FAC ¶ 83; that masked Defendants surrounded the cars of Symposium attendees and parents trying to drop off children at school and screamed slurs and obscenities at them, *id.* ¶¶ 73–75; and that Defendants accosted a parent trying to enter the Temple's security gate and threatened to "fuck you up," *id.* ¶¶ 76–77.[2] These allegations permit the Court to draw the reasonable inference that Reedy is liable under the CA FACCE Act.

2. <u>The Amended Complaint Plausibly Alleges that Reedy Violated the Ralph and Bane Acts.</u>

The Ralph and Bane Act claims rest on Reedy's ***conduct***, and Reedy fails to show that they target his "speech alone," Mot. at 8, because the Amended Complaint alleges violence, threats, and intimidation—not mere words.

The Ralph Act prohibits "violence or intimidation by threat of violence," Cal. Civ. Code § 51.7(b)(1), and the Bane Act prohibits interference with a person's rights "by threats, intimidation, or coercion," *id.* § 52.1(b). The Temple and Coalition have alleged that Reedy engaged in precisely that: Motivated by anti-Jewish sentiments, he screamed at

[2] The anti-SLAPP analysis focuses on the acts that constitute the underlying torts, not the acts that establish vicarious liability for those torts, including communications that are evidence of agency or conspiracy. "[I]t is the tort itself that controls, not individual acts that demonstrate the existence of a conspiracy." *Golden Gate Land Holdings LLC v. Direct Action Everywhere*, 81 Cal. App. 5th 82, 93 (2022) (agency); *Spencer v. Mowat*, 46 Cal. App. 5th 1024, 1038 (2020) (conspiracy).

Symposium attendees, stalked along the perimeter of their meeting room, and pounded on the glass. *Id.* ¶ 86. This intimidating, threatening, and violent conduct "trapped" Symposium attendees—Coalition members among them. *Id.* ¶¶ 89–90. His actions curtailed, at a minimum, their Thirteenth Amendment right to freedom of movement and freedom from racial violence, both of which apply to private actors. *See Weinberg v. Nat'l Students for Just. in Palestine*, 2026 WL 184302, at *7 (C.D. Cal. Jan. 20, 2026); *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334, 338 (1998) (Bane Act claim does not require state action; Ralph Act rights run against private actors). These allegations permit the Court to draw the reasonable inference that Reedy is liable under the Ralph and Bane Acts.

3. <u>The Amended Complaint Plausibly Alleges that Reedy Trespassed on Temple Property.</u>

The Amended Complaint pleads every element of trespass: Reedy entered the Temple's secured campus without permission, acted far outside the scope of any permission he could claim, and refused instructions to leave. Reedy fails to show otherwise, because his contrary account—that he entered with consent, that his conduct did not exceed "the permission granted," and that he left "with reasonable promptness and in a reasonable manner," Mot. at 9–10—finds no support in the Amended Complaint.

Reedy trespassed through his "unauthorized entry" onto the Temple's property. *Civic W. Corp. v. Zila Indus., Inc.*, 66 Cal. App. 3d 1, 16 (Ct. App. 1977). As the Amended Complaint plainly alleges: "Reedy did not register for the Symposium at all. He never sought permission to enter the Temple's campus, and none was given." FAC ¶ 61. Reedy still would be liable for trespass even had he been granted permission to enter the Glazer Campus because once on the property he acted "hostile to the interests" of the Temple by banging on the glass walls and screaming at Symposium attendees. *Cassinos v. Union Oil Co.*, 14 Cal. App. 4th 1770, 1780 (1993). This conduct was plainly not within the scope of any permission he received to enter. He was there for one reason: "to 'shut down' the Symposium." FAC ¶ 80. And far from leaving with "reasonable promptness" when asked,

Reedy "refused instructions to leave." FAC ¶ 87. These allegations permit the Court to draw the reasonable inference that Reedy is liable for trespass.

### C. Reedy's Motion Is Frivolous.

Under California Civil Procedure Code Section 425.16(c)(1), if the Court finds that Reedy's motion to strike is frivolous or is solely intended to cause unnecessary delay, the Court shall award costs and reasonable attorney's fees to the prevailing party. Reedy's motion is frivolous and solely intended to cause unnecessary delay. That he directs an anti-SLAPP motion against a trespass claim—a claim based solely on the physical location of a person—underscores the lack of seriousness of the motion. The rest of the motion fares no better. Reedy does not cite a single allegation in the Amended Complaint that seeks to impose liability for anything he said. *See supra* § V.A. He invokes Section 425.16(e)(3), even though he acted on a secured, private synagogue campus that was neither open to the public nor a public forum. *See supra* § V.A.1. And he invokes Section 425.16(e)(4), even though the conduct alleged—entering the Temple's campus without permission, refusing instructions to leave, and blocking attendees from exiting—is unlawful and is not speech. *See supra* § V.A.2. Should the Court deny Reedy's special motion to strike, Plaintiffs intend to move for an award of their costs and reasonable attorneys' fees.

## VI. CONCLUSION

For the foregoing reasons, the Temple and Coalition respectfully request that the Court deny Reedy's special motion to strike in its entirety, and find that the motion is frivolous, solely intended to cause unnecessary delay, or both.

DATED: October 30, 2026

Respectfully submitted,

COVINGTON & BURLING LLP

By: /s/ *Daniel N. Shallman*
Daniel N. Shallman (Bar No. 180782)
Paulina Rafizadeh (Bar No. 348706)
Mathew A. Sperling (Bar No. 360266)
1999 Avenue of the Stars
Los Angeles, California 90067-4643
Telephone: + 1 (424) 332-4800
dshallman@cov.com

THE LOUIS D. BRANDEIS CENTER FOR HUMAN RIGHTS UNDER LAW

By: /s/ *Marci L. Miller*
Marci L. Miller (Bar No. 162790)
Richard Rosen (*Pro Hac Vice*)
Jeffrey I. Lang (*Pro Hac Vice*)
Mollie Galchus (*Pro Hac Vice*)
1776 I Street, NW
Washington, DC 20006
Telephone: + 1 (714) 299-7157
mmiller@brandeiscenter.com

*Attorneys for Plaintiffs Wilshire Boulevard Temple and The Louis D. Brandeis Center Coalition to Combat Anti-Semitism, Inc.*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs Wilshire Boulevard Temple and The Louis D. Brandeis Center Coalition To Combat Anti-Semitism, Inc., certifies that this brief contains 5,210 words, which complies with the word limit of L.R. 11-6.1.

DATE: October 30, 2026

*<u>/s/ Daniel N. Shallman</u>*
Daniel N. Shallman (Bar No. 180782)