Daniel N. Shallman (Bar No. 180782)
Paulina Rafizadeh (Bar No. 348706)
Mathew A. Sperling (Bar No. 360266)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067-4643
Telephone: + 1 (424) 332-4800
dshallman@cov.com; prafizadeh@cov.com
msperling@cov.com

Marci L. Miller (Bar No. 162790)
Richard Rosen (*Pro Hac Vice*)
Jeffrey I. Lang (*Pro Hac Vice*)
Mollie Galchus (*Pro Hac Vice*)
THE LOUIS D. BRANDEIS CENTER FOR HUMAN RIGHTS UNDER LAW
1776 I Street, NW
Washington, DC 20006
Telephone: + 1 (714) 299-7157
mmiller@brandeiscenter.com; rrosen@brandeiscenter.com;
jlang@brandeiscenter.com; mgalchus@brandeiscenter.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WILSHIRE BOULEVARD TEMPLE, et al.,<br><br>Plaintiffs<br><br>v.<br><br>TURTLE ISLAND LIBERATION FRONT LA, et al.,<br><br>Defendants. | Case No. 2:26-cv-07560-MCS-AJR<br><br>Assigned to the Honorable Mark C. Scarsi – Courtroom 7C<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT RAY WUE CORPUS'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)**<br><br>Hearing date: January 25, 2027 |

# TABLE OF CONTENTS


I. INTRODUCTION ........ 8

II. STATEMENT OF FACTS ........ 8

A. The Temple's Glazer Campus Is a Secured Synagogue Campus. ........ 8

B. The Temple Hosted the Symposium as an Exercise of Its Religious Expression. ........ 9

C. Corpus Registered Under a Misleading Identity to Defeat the Temple's Security Screening. ........ 9

D. Defendants Conspired to Blockade Both Entrances to the Campus. ........ 10

E. Inside the Pavilion, Corpus Smashed a Glass Vase, Charged the Israeli Consul General, and Kicked Over the Sound System. ........ 11

F. The Claims Against Corpus. ........ 11

III. LEGAL STANDARD ........ 12

IV. ARGUMENT ........ 13

A. Corpus Does Not Challenge Counts III, IV, or VIII. ........ 13

B. The Rule 12(b)(1) Motion Fails, and There Is No Basis for an Evidentiary Hearing. ........ 14

1. Whether the Symposium Was Religious Exercise Is a Merits Question, Not a Question of Article III Standing. ........ 14

2. Corpus Has Not Created Any Factual Dispute That Could Warrant a Hearing. ........ 15

3. The Coalition's Membership and Mission Do Not Undermine Its Standing. ........ 15

C. The Amended Complaint States Claims under the FACE Act and the California FACCE Act. ........ 16

1. Corpus May Not Dispute Plaintiffs' Tenets of Jewish Faith and Sincerity of Faith on a Motion to Dismiss. ........ 16

2. Corpus Has Not Challenged Remaining Elements of Plaintiffs' FACE Act and California FACCE Act Claims. ...................... 19

D. Corpus's Asserted Political Motive Does Not Defeat Any Claim. ........................................................................ 20

1. The FACE Act and California FACCE Act Do Not Require Discriminatory Animus. ........................................................ 21

2. The Ralph Act Expressly Reaches Violence Motivated by Political Affiliation. ............................................................ 21

3. The Amended Complaint Pleads the But-For Causation Required by Section 1981. .................................................... 22

4. Corpus's Anti-Zionism Authorities Involve Speech, Not Conduct. ............................................................................ 23

E. The First Amendment Does Not Protect Destroying Property or Charging a Speaker. ................................................... 23

1. The Claims Against Corpus Rest on Conduct. ........................ 23

2. Corpus's Own Speech Rights Are No Defense to the Bane Act Claim. .................................................................................. 24

F. Purported Consent Obtained by Misrepresenting One's Identity to Defeat a Security Screen Is Not Consent. ..................................... 25

G. The Court Should Retain Supplemental Jurisdiction. ........................ 27

H. Any Dismissal Should Be With Leave to Amend. ............................. 27

V. CONCLUSION ..................................................................................... 27

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Arbaugh v. Y&H Corp.*,
546 U.S. 500 (2006) ... 14

*Ashford v. Hill*,
2023 U.S. Dist. LEXIS 131239 (C.D. Cal. June 7, 2023) ... 25

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*,
589 U.S. 327 (2020) ... 22

*Counterman v. Colorado*,
600 U.S. 66 (2023) ... 19

*Detwiler v. Mid-Columbia Med. Ctr.*,
156 F.4th 886 (9th Cir. 2025) ... 17, 18

*Detwiler v. Mid-Columbia Med. Ctr.*,
172 F.4th 1072 (9th Cir. 2026) (Forrest, J., dissenting) ... 17

*Epstein v. Wash. Energy Co.*,
83 F.3d 1136 (9th Cir. 1996) ... 13, 20, 23

*Gabrielle A. v. County of Orange*,
10 Cal. App. 5th 1268 (2017) ... 21

*Jensen v. Brown*,
131 F.4th 677 (9th Cir. 2025) ... 27

*Jones v. Kmart Corp.*,
17 Cal. 4th 329 (1998) ... 25

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ... 13

*Kobayashi v. McMullin*,
2023 WL 3493991 (C.D. Cal. Mar. 2, 2023) ... 22

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) ....................13, 17, 20, 23

*Mahmoud v. Taylor*,
606 U.S. 522 (2025).................................18

*Mangini v. Aerojet-Gen. Corp.*,
230 Cal. App. 3d 1125 (1991) ....................26

*NAACP v. Claiborne Hardware Co.*,
458 U.S. 886 (1982).................................24

*Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*,
290 F.3d 1058 (9th Cir. 2002) (en banc) ..........19

*Pryor v. City & County of San Francisco*,
672 F. App'x 751 (9th Cir. 2017) ..................25

*Rose v. Crunch Fitness-Palmdale*,
2025 U.S. Dist. LEXIS 254992 (C.D. Cal. Dec. 9, 2025)............21, 22

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ....................12

*Scovell v. City of Beverly Hills*,
2026 WL 469239 (C.D. Cal. Feb. 10, 2026) ........22

*Thomas v. Review Bd. of Ind. Emp. Sec. Div.*,
450 U.S. 707 (1981).................................17

*United States v. Dugan*,
450 F. App'x 20 (2d Cir. 2011) ....................20

*United States v. Hart*,
212 F.3d 1067 (8th Cir. 2000) ....................19

*United States v. Mahoney*,
247 F.3d 279 (D.C. Cir. 2001).....................20

*United States v. Party for Socialism & Liberation N.J.*,
2026 WL 2938869 (D.N.J. Sep. 30, 2026) .......... 21

*Virginia v. Black*,
538 U.S. 343 (2003) .......... 19

*Weinberg v. Nat'l Students for Just. in Palestine*,
2026 WL 184302 (C.D. Cal. Jan. 20, 2026) .......... 13, 15, 27

*Wisconsin v. Mitchell*,
508 U.S. 476 (1993) .......... 24

*Zamani v. Carnes*,
491 F.3d 990 (9th Cir. 2007) .......... 14

**Statutes**

18 U.S.C. § 248 .......... *passim*

28 U.S.C. § 1367(a) .......... 27

42 U.S.C. § 1981 .......... 12, 22

42 U.S.C. § 1985(3) .......... 12, 13

Cal. Civ. Code § 52.1 .......... 12, 24

Cal. Civ. Code § 51.7(b)(1) .......... 21

Cal. Penal Code § 423.1 .......... 16, 20

Cal. Penal Code § 423.2 .......... 12, 18, 21

**Other Authorities**

C.D. Cal. L.R. 11-6.1 .......... 29

C.D. Cal. L.R. 7-3 .......... 12

Fed. R. Civ. P. 12 .......... *passim*

U.S. Const., 1st Amend. .......................................................... 14, 16, 23, 24

# I. INTRODUCTION

Defendant Ray Corpus's motion makes two key concessions. Its first sentence acknowledges that this case arises from a demonstration against a program "held in a synagogue." Mot. to Dismiss, ECF 67 at 1. And midway through, Corpus acknowledges that "it is true Plaintiffs allege that Mr. Corpus smashed a vase on their premises and otherwise may have committed tortious acts." Corpus thus acknowledges the core elements of Plaintiffs' federal and state claims but suggests that Plaintiffs should have been content with "a state court tort claim or merely testifying in and monitoring the criminal proceeding." *Id.* at 7. This is not a ground for dismissal under Rule 12.

The First Amended Complaint alleges that Corpus defeated the Temple's security screening by registering for an invitation-only program under a truncated name and a false institutional affiliation. Once inside the Temple's Irmas Pavilion—a sacred space that has hosted Shabbat and High Holy Day services—he waited until the middle of a presentation, stood, and hurled a large glass vase to the floor. Shards nearly struck a Coalition member; another feared an explosion. Corpus then charged the Israeli Consul General, screaming, and when security intercepted him, he fought his way up and kicked over the sound system. Attendees looked for the exits. Police arrested him for vandalism.

Corpus's response is to ask the Court to rule, on a motion to dismiss, that the Temple's understanding of its own religious obligations is "truly ludicrous, even cheesy," Mot. at 1; to convene an evidentiary hearing on standing without submitting any evidence; and to treat a shattered vase and a charge at a diplomat as protected expression. The motion does not even address three of the counts against him—including the two that name him specifically. Those counts should proceed regardless, and the remaining arguments fail. The motion should be denied in its entirety.

# II. STATEMENT OF FACTS

## A. The Temple's Glazer Campus Is a Secured Synagogue Campus.

Wilshire Boulevard Temple is the oldest synagogue in Los Angeles. First Am. Compl. ¶ 14, ECF 51 (hereinafter, the "FAC"). Its Glazer Campus houses the sanctuary,

the synagogue's offices and library, two Jewish day schools, and a social service center. *Id.* ¶ 38. The campus is enclosed by a common security barrier with a single gated pedestrian entrance on Wilshire Boulevard—serving both the sanctuary and the Irmas Pavilion—and a private gated parking garage on Hobart Boulevard. *Id.* ¶ 39.

The Irmas Pavilion sits next to the sanctuary and is "an essential religious space" on the campus. *Id.* ¶¶ 8, 37. It has served as a place of Jewish worship, hosting Shabbat services, High Holy Day services, and bar and bat mitzvah and wedding celebrations. *Id.* ¶ 37.

**B. The Temple Hosted the Symposium as an Exercise of Its Religious Expression.**

On December 3, 2025, the Temple hosted "Innovating Safety, Empowering Communities: A Symposium on AI and Public Safety," which brought together the local Jewish and Korean-American communities to address the protection of houses of worship and the public safety of two communities that had experienced increased hate crimes. *Id.* ¶¶ 2–3, 40. The Temple agreed to host the Symposium because it furthered *tikkun olam*, which the Temple teaches is "not . . . an add-on, but a core expression of Jewish identity." *Id.* ¶ 41. At the Symposium itself, the Temple's Senior Rabbi Joel Nickerson offered a prayer, invoked *tikkun olam*, and "emphasized that the Symposium was an exercise of Jewish religious practice." *Id.* ¶ 45.

The Symposium was not the only religious activity on campus that morning. The Temple's Jewish day schools were in session, the library and study halls were open for Jewish learning, and the sanctuary was open for prayer and reflection. *Id.* ¶ 103.

**C. Corpus Registered Under a Misleading Identity to Defeat the Temple's Security Screening.**

Because of the security risks facing Jewish institutions, attendance at the Symposium was by advance registration and invitation only: Guests were told that security officers would check identification at the door. *Id.* ¶¶ 40, 59. The Temple and the Israeli Consulate vetted the registration list and removed potential security risks. *Id.* ¶ 59.

Corpus "defeated that screening" by registering without his surname and by representing that he was affiliated with the Chinatown Consolidated Benevolent Association of Los Angeles—an organization with which, on information and belief, he has no affiliation. *Id.* ¶ 60. Plaintiffs allege that these misrepresentations "were made for the purpose of evading the Temple's and the Consulate's security vetting" and "obtaining physical access to a secured house of worship that Defendants knew they would otherwise be denied." *Id.* ¶ 62.

**D. Defendants Conspired to Blockade Both Entrances to the Campus.**

Defendants agreed in advance on "a multi-stage plan" to disrupt the Symposium. *Id.* ¶ 5. They began by circulating the contact information of Temple and KAFLA personnel who received a barrage of substantially identical calls and emails demanding cancellation of the event. *Id.* ¶¶ 5, 63. On December 2, the Defendant Organizations issued coordinated calls to action. They directed their followers to the Temple's Wilshire Boulevard address and called them to "SHUT IT DOWN." *Id.* ¶ 67. Defendant Organizations told their followers to "wear bloc," a tactic of masking and protective gear worn in anticipation of violent confrontation. *Id.* ¶¶ 6, 66. The Defendant Organizations "knew, and intended, that the persons who answered their calls would arrive masked, would obstruct access to the Temple, and would not disperse." *Id.* ¶ 69.

That is what happened. At about 8:00 a.m.—the time and place the Defendant Organizations had specified—masked Defendants gathered at the Temple's Wilshire Boulevard security gate. There they formed "a human barricade obstructing the entrance to the Temple." Id. ¶¶ 68, 71–72. At about 9:15 a.m., some thirty Defendants moved to the Temple's private gated garage on South Hobart Boulevard to block the campus's only other entrance. On information and belief, they did so at the direction of agents of the Defendant Organizations. *Id.* ¶ 73. They refused police orders to disperse and blocked as many as forty cars for about forty-five minutes, trapping parents and children arriving for school. *Id.* ¶ 75. Masked Defendants surrounded Coalition Member No. 1 in her car, shouting "baby killers." *Id.* ¶ 74. A group of about fifteen masked Defendants obstructed

Coalition Member No. 2's path into the Temple while shouting "Zionist pigs" and "you're a baby killer." *Id.* ¶ 77. Some who encountered the blockade turned away. The school locked down for the rest of the day, and the Temple's social service center was forced to close. *Id.* ¶¶ 78, 92.

### E. Inside the Pavilion, Corpus Smashed a Glass Vase, Charged the Israeli Consul General, and Kicked Over the Sound System.

Once the Symposium began, Defendants carried out PCC's published playbook of "staggered disruptions," in which participants "pop off in different parts of the room" to "[m]ake it difficult to carry on." *Id.* ¶¶ 49, 80. At least three Defendants—Corpus among them—had registered "not with the intention of attending and participating in the program, but to obstruct, disrupt, and intimidate those in attendance." *Id.* ¶ 80.

Corpus's turn came later in the program. Seated along the side of the room, he stood, grabbed a large glass vase, and threw it to the ground. *Id.* ¶ 83. Coalition Member No. 1 "feared an explosion of some kind" and saw glass shards flying; shards nearly hit Coalition Member No. 2's leg. *Id.* Corpus then "immediately charged" the Consul General at the front of the room, screaming "genocide," "terrorists," "baby killers," and obscenities. *Id.* When security intercepted him, he "kept getting back up and screaming," and kicked over a sound system, damaging a speaker and the flooring. *Id.* Attendees jumped to their feet, "many frightened that others in the room may be violent," and "a number of people looked for exits." *Id.* Corpus was also photographed "stalking the hallway just outside the glass-walled meeting room." *Id.* ¶ 85. The LAPD later arrested him and charged him with vandalism. *Id.* ¶¶ 10, 22.

### F. The Claims Against Corpus.

The Temple and the Coalition brought this action against Corpus, PCC, and other organizations and individuals to hold them responsible for the coordinated attack culminating on December 3, 2025. Plaintiffs allege eleven counts:

- <u>Counts I–III</u>: Freedom of Access to Clinic Entrances Act (the "FACE Act"), 18 U.S.C. § 248(a)

- Count IV: Conspiracy to Deprive Civil Rights, 42 U.S.C. § 1985(3)
- Count V: Denial of Benefits of Law on Account of Race, 42 U.S.C. § 1981
- Counts VI–VIII: California Freedom of Access to Clinic and Church Entrances Act (the "CA FACCE Act"), Cal. Penal Code § 423.2
- Count IX: Ralph Civil Rights Act, Cal. Civil Code § 51.7
- Count X: Bane Civil Rights Act, Cal. Civil Code § 52.1
- Count XI: Trespass

FAC ¶¶ 93–215. Corpus is named in every count. He is the only individual defendant named in Counts III and VIII, which allege intentional damage to the property of a place of religious worship. *Id.* ¶¶ 129–34, 183–88.

Corpus moved to dismiss the Amended Complaint under Rules 12(b)(1) and 12(b)(6). He argues that the Temple and Coalition lack standing and have failed to state plausible claims. Mot. at 2, 5.[1]

## III. LEGAL STANDARD

A Rule 12(b)(1) challenge "may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* A challenge becomes factual only when the movant presents "affidavits or other evidence properly brought before the court." *Id.* Corpus has submitted no such evidence. His challenge is facial, and "the court assumes the factual allegations in the

[1] Corpus did not comply with Local Rule 7-3, which requires the parties to confer at least seven days before a motion is filed. *See* C.D. Cal. L.R. 7-3. Corpus filed his original motion on October 8, 2026, and first requested a conference only the next day—the day he filed his amended motion. Plaintiffs conferred as a courtesy while reserving their objection. Wallace Decl. ¶¶ 3–4, 6, ECF 67-1. That noncompliance is independently sufficient to warrant denial: The Court's Standing Order expressly provides that "[a]ny motion that fails to comply with Local Rule 7-3 will be denied." Standing Order § 9(c). Plaintiffs nonetheless respond on the merits, without waiving that objection.

complaint are true and draws all reasonable inferences in the plaintiff's favor." *Weinberg v. Nat'l Students for Just. in Palestine*, 2026 WL 184302, at *3 (C.D. Cal. Jan. 20, 2026).

The same is true under Rule 12(b)(6): all factual allegations "are taken as true and construed in the light most favorable to Plaintiffs." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). "Factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).[2]

## IV. ARGUMENT

Corpus does not challenge three of the counts against him, and his remaining arguments fail. His jurisdictional challenge is a merits argument relabeled, and his merits arguments depend on second-guessing the Temple's understanding of its own faith, substituting his own account of his motive for the one the Amended Complaint alleges, and recasting the destruction of property inside a synagogue as protected speech.

### A. Corpus Does Not Challenge Counts III, IV, or VIII.

Corpus asks the Court to dismiss the Amended Complaint "in its entirety," Mot. at 12, but offers no argument as to three of the counts against him: Count III, which alleges that he intentionally damaged the property of a place of religious worship in violation of 18 U.S.C. § 248(a)(3), FAC ¶¶ 129–34; Count IV, which alleges a conspiracy in violation of 42 U.S.C. § 1985(3), *id.* ¶¶ 135–51; and Count VIII, which alleges that he intentionally damaged the property of a place of worship in violation of the CA FACCE Act, *id.* ¶¶ 183–88.

Corpus's principal theory—that the Symposium was not religious exercise—has no bearing on Counts III and VIII, which turn on intentional damage to "the property of a place of religious worship," not on the religious character of any particular event.

[2] The Court should disregard the websites and articles that fill Corpus's brief. *See* Mot. at 1–2, 6 n.3, 10–11. None is properly before the Court, and Corpus has not requested judicial notice of any of them. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998–99 (9th Cir. 2018).

FAC ¶¶ 130, 184. Corpus concedes that the Symposium was "held in a synagogue," Mot. at 1, and that the Amended Complaint alleges he "smashed a vase on [the Temple's] premises," *id.* at 7.

Corpus has offered no basis to dismiss these counts, and Plaintiffs should not be required to respond to arguments he has not made. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). And because Counts III and IV arise under federal law and are unchallenged, Corpus's request that the Court decline supplemental jurisdiction over the state-law claims fails on its own terms. *See infra* Section IV.G.

### B. The Rule 12(b)(1) Motion Fails, and There Is No Basis for an Evidentiary Hearing.

Corpus does not identify any defect in Plaintiffs' Article III standing. He instead relabels his religious-exercise argument as a jurisdictional one, and asks for a hearing so he can investigate the Coalition. This request is without merit.

#### 1. Whether the Symposium Was Religious Exercise Is a Merits Question, Not a Question of Article III Standing.

Corpus's jurisdictional argument is that Plaintiffs "lack standing to sue under FACE" because "the event they allege was not a religious exercise." Notice of Mot. at 3. That is not an argument about Article III standing. Whether the persons obstructed were "lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship," 18 U.S.C. § 248(a)(2), is an element of the FACE Act claim—a question of whether Plaintiffs have stated a claim, not whether the Court can hear it, *see Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006) (a statutory limit on a claim's coverage is an element of the claim, not a jurisdictional requirement, unless Congress clearly says otherwise). Corpus's Rule 12(b)(1) argument is simply his Rule 12(b)(6) argument relabeled, and it fails for the reasons stated in Section IV.C, *infra*.

Plaintiffs' Article III standing is plain. Corpus damaged the Temple's property—a glass vase, a speaker, and flooring. FAC ¶¶ 83, 131. That injury is concrete, traceable to

Corpus, and redressable by damages. Coalition members were in the room; one feared an explosion, and shards nearly struck the other. *Id.* ¶ 83. Coalition Member No. 2 "has not returned to the Temple because of her experience that day." *Id.* ¶ 91. As this Court has explained, "[c]hoosing to avoid an area one previously frequented based on a fear of experiencing violence is a personal, actual injury sufficient to support Article III standing." *Weinberg*, 2026 WL 184302, at *5.

2. <u>Corpus Has Not Created Any Factual Dispute That Could Warrant a Hearing.</u>

In the alternative, Corpus asks for a "live evidentiary hearing" on standing. Mot. at 5. His own authorities make clear that such a hearing is a tool for resolving genuine factual disputes created by evidence. In *Bazile v. Finance System of Green Bay*, the hearing was required because "the truthfulness of the facts necessary for standing ha[d] been called into doubt." 983 F.3d 274, 277 (7th Cir. 2020). *Hohlbein v. Hospitality Ventures*, Corpus's only Ninth Circuit authority—an unpublished summary judgment disposition—points to precedent involving "conflicting affidavits" as examples of when a hearing is appropriate. 248 F. App'x 804, 806 n.2 (9th Cir. 2007).

Corpus has submitted no declaration or exhibit contradicting any jurisdictional allegation. Websites and argument in a brief do not create a factual dispute.

3. <u>The Coalition's Membership and Mission Do Not Undermine Its Standing.</u>

Corpus also requests a hearing to "investigate the plaintiff Brandeis Center's bona fides, including its assertion that it shares members with Wilshire Temple." Mot. at 6. There is nothing to investigate. The FAC alleges that the Coalition's members "include Temple members, parents of Wilshire Schools East students, and persons who attended or were obstructed from attending the Symposium." FAC ¶ 15. Coalition Members No. 1 and No. 2 are Jewish residents of Los Angeles who attended the Symposium and were in the room when Corpus threw the vase. *Id.* ¶¶ 16–17, 83. That the Temple and the Coalition

share some members defeats neither plaintiff's standing; Corpus cites no authority suggesting otherwise.

Nor does a statement on the Anti-Defamation League's website about "creat[ing] massive disincentives" for antisemitism, Mot. at 6, 10–11, bear on standing. It is not Plaintiffs' statement, and it is outside the pleadings.

**C. The Amended Complaint States Claims under the FACE Act and the California FACCE Act.**

Section 248(a)(2) of the FACE Act prohibits (1) force, threat of force, or physical obstruction (2) used intentionally to injure, intimidate, or interfere with, or to attempt to do so, (3) a person lawfully exercising or seeking to exercise the First Amendment right of religious freedom (4) at a place of religious worship. 18 U.S.C. § 248(a)(2). Section 248(a)(3) separately prohibits intentionally damaging or destroying the property of a place of religious worship. *Id.* § 248(a)(3). The California FACCE Act contains materially parallel prohibitions and defines "threat of force" and "physical obstruction" in parallel terms. Cal. Penal Code §§ 423.1(c), (e), 423.2(b), (d), (f). The Amended Complaint asserts three claims against Corpus under each statute. FAC ¶¶ 93–134, 165–188.

Corpus contests only the element addressing whether the persons obstructed were exercising religious freedom. Mot. at 2–5, 8–9. He does not challenge the property-damage claims, *see supra* Section IV.A; he concedes that the Symposium was "held in a synagogue," Mot. at 1; and his political-motive argument goes to animus, which neither statute requires, *see infra* Section IV.D.1. Each element is adequately pleaded under both statutes.

1. <u>Corpus May Not Dispute Plaintiffs' Tenets of Jewish Faith and Sincerity of Faith on a Motion to Dismiss.</u>

Corpus asserts a specious challenge to the remaining FACE Act and California FACCE Act claims, arguing that the Symposium was not an exercise of Jewish faith. Corpus does not address Plaintiffs' allegations that the Symposium furthered a core component of the Temple's religious mission, that of *tikkun olam*, and that the Temple's

senior rabbi emphasized that the Symposium was an exercise of Jewish religious practice. FAC ¶¶ 41–45. Instead, he argues the Court should determine, as a matter of law, that the Jewish obligation of *tikkun olam* is not a tenet of Jewish faith, or, alternatively, that Plaintiffs' allegations of Jewish faith are insincere. He asks the Court to do so based on nothing more than his counsel's recollection of his own religious upbringing and a few online sources outside the pleadings. Mot. at 1–3 & n.1.

The Court should reject Corpus's arguments. At most, his assertions raise factual disputes that cannot be resolved on a motion to dismiss. *See Lee*, 250 F.3d at 688. In a closely analogous case, *Helmann v. CodePink Women for Peace*, the court rejected challenges to the religious nature of an event held at a synagogue. 2025 WL 3030582, at *1 n.2 (C.D. Cal. June 13, 2025) ("At the motion to dismiss stage, the Court takes Plaintiffs' allegations regarding the religious nature of the Aliyah Event as true[.]").

Nor may the Court determine the tenets of a religious faith. *Thomas v. Review Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 716 (1981) ("Courts are not arbiters of scriptural interpretation."). Even the *Detwiler* panel—which allowed courts to ask at the pleading stage whether an employee's objection to a job requirement is religious or "purely secular"—recognized that courts may not "adjudge the reasonableness of a belief," and that a plaintiff "need not establish her belief is consistent, widely held, or even rational." *Detwiler v. Mid-Columbia Med. Ctr.*, 156 F.4th 886, 894–95 (9th Cir. 2025). The panel's concern was an employee using "broad, religious tenets" to "convert a secular preference into a religious conviction." *Id.* at 895. That is not this case. A synagogue hosted the Symposium in a space used for worship, as an expression of a principle it teaches is central to Jewish identity, and a rabbi offered a prayer and described the program as Jewish religious practice. FAC ¶¶ 37, 41, 45.

Corpus also argues that the Court may assess the sincerity of Plaintiffs' religious faith on a motion to dismiss. It may not. For this, Corpus quotes a dissent from the denial of rehearing en banc in *Detwiler* without identifying it as a dissent. Mot. at 4 (quoting *Detwiler v. Mid-Columbia Med. Ctr.*, 172 F.4th 1072, 1076 (9th Cir. 2026) (Forrest, J.,

dissenting)). In any event, the dissent's statement that "the proper judicial inquiry is limited to assessing the believer's sincerity" is a *limit* on judicial inquiry, following its explanation that courts may not judge the veracity, reasonableness, or orthodoxy of a belief or define a religion's tenets. *Id.* at 1074–76. And the dissent explained that a belief "can be proven insincere as a matter of evidence"—not on the pleadings. *Id.* at 1081; *see also id.* at 1086 (Tung, J., dissenting) (at the pleading stage, "it is wholly inappropriate for a court to . . . deny the sincerity of a plaintiff's religious beliefs as she has so pleaded them"). The panel disclaimed any direction to courts "to examine the sincerity or the reasonableness of a belief." 156 F.4th at 895.

Corpus's remaining cases address a different question: whether an individual may invoke religious belief to obtain an exemption from a generally applicable rule. *See* Mot. at 2–4 (citing *Africa*, *McDowell*, *Callahan*, *Mason*, and *Harris*). Plaintiffs seek no exemption from anything. They seek to enforce a statute that protects people practicing their faith in a house of worship from force and obstruction.

Corpus's argument also ignores where the Symposium took place. Both statutes protect religious exercise "at a place of religious worship." 18 U.S.C. § 248(a)(2); Cal. Penal Code § 423.2(b), (d). Corpus concedes that the Symposium was "held in a synagogue," Mot. at 1, and the Amended Complaint alleges that the Pavilion is a religious space next to the sanctuary that has hosted Shabbat and High Holy Day services, inside the same campus as the study halls and Jewish day schools. FAC ¶¶ 8, 37–39. Corpus's warning that Plaintiffs' theory would reach an event "in a university auditorium, or anywhere," Mot. at 3–4, ignores this element of both statutes.

While Corpus challenges only the religious mission of the Symposium, he does not contest that the Amended Complaint also alleges that Corpus, through his own actions and those of his coconspirators, interfered with people seeking to exercise religious freedom in ways separate and apart from the Symposium, including parents and their children who were blocked from entering the parking garage for drop-off at the Temple's Jewish day schools. FAC ¶¶ 75, 78, 103; *see Mahmoud v. Taylor,* 606 U.S. 522, 547 (2025) ("For

many people of faith across the country, there are few religious acts more important than the religious education of their children."). Those allegations independently satisfy both statutes, and Corpus has waived any challenge to them.

2. Corpus Has Not Challenged Remaining Elements of Plaintiffs' FACE Act and California FACCE Act Claims.

Corpus has not challenged the sufficiency of the Amended Complaint's allegations of the remaining elements for FACE Act and CA FACCE Act claims based on threats of force and physical obstruction, for which he is liable through his own acts and the acts of coconspirators. Nor does he challenge the allegations that he joined the conspiracy. *See* FAC ¶¶ 5, 60–63, 70, 80, 88. He therefore has waived any such arguments.

A "threat of force" is conduct or a statement that, viewed "in the entire context and under all the circumstances," would be understood as a serious expression of intent to inflict bodily harm. *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1077 (9th Cir. 2002) (en banc). The defendant must at least have consciously disregarded a substantial risk that his conduct would be viewed as threatening violence. *Counterman v. Colorado*, 600 U.S. 66, 69 (2023).[3] Corpus shattered a glass vase in a room full of attendees at a synagogue—one of whom feared an explosion—and then charged the front of the room, screaming, until security intercepted him. FAC ¶ 83. No one who hurls glass and charges a speaker inside a synagogue can be unaware of the risk that his conduct will be seen as threatening violence. The Amended Complaint also alleges that, while Corpus was in the Symposium room, his coconspirators surrounded the cars of Symposium attendees and parents trying to drop off children at school, and screamed slurs and obscenities at them; pounded on the glass walls of the Symposium room

[3] A symbol alone, based on context, may constitute a true threat. *Virginia v. Black*, 538 U.S. 343, 360 (2003) (a burning cross "often" is a true threat given its history as a white-supremacist symbol); *United States v. Hart*, 212 F.3d 1067, 1072 (8th Cir. 2000) (placement of Ryder trucks near reproductive health clinic, recalling the Oklahoma City bombing, constituted a true threat).

and remained there for an extended period of time, preventing egress from the room; and accosted a parent trying to enter the Temple's security gate, threatening to "fuck [him] up." FAC ¶¶ 73–77, 86–87.

Nor does Corpus challenge that the allegations that he and his coconspirators violated both statutes through physical obstruction. 18 U.S.C. § 248(e)(4) ("rendering passage to or from . . . a place of religious worship unreasonably difficult or hazardous"); Cal. Penal Code § 423.1(e) (same). *See United States v. Mahoney*, 247 F.3d 279, 284 (D.C. Cir. 2001) (kneeling before an emergency exit); *United States v. Dugan*, 450 F. App'x 20, 22 (2d Cir. 2011) (blocking a door and refusing to move). The Amended Complaint alleges that Corpus's coconspirators created physical obstructions, by pounding on the glass door, preventing egress from the Symposium room, and blockading the entrances to the Temple's parking garage and front security gate. FAC ¶¶ 72–78, 86–87.

### D. Corpus's Asserted Political Motive Does Not Defeat Any Claim.

Corpus argues that he directed his actions at Israel, not at Jews. Mot. at 6–9. The Amended Complaint alleges no such motive. It alleges that Defendants were "motivated by invidious discrimination against Jews," FAC ¶ 140; that they damaged the Temple's property "because the Temple is a Jewish house of worship," *id.* ¶ 155; and that they assaulted, harassed, and intimidated Coalition members "because Coalition members are Jewish," *id.* ¶ 158. The Amended Complaint describes Corpus screaming "hateful slurs," *id.* ¶¶ 10, 83, and alleges that references to Israel and "Zionists" are commonly used to disguise antisemitism, *id.* ¶¶ 26–27. Corpus's account of his motive comes only from his brief. It is a factual assertion outside the pleadings and cannot be considered on a Rule 12(b)(6) motion. *See Lee*, 250 F.3d at 688; *Epstein*, 83 F.3d at 1140. The Court therefore has no occasion to decide whether anti-Zionism is or can ever be antisemitism, and Plaintiffs do not ask it to. And even if Corpus's account could be considered, it would not defeat any claim he challenges.

1. The FACE Act and California FACCE Act Do Not Require Discriminatory Animus.

Both statutes require force, threat of force, or physical obstruction used to "intentionally" injure, intimidate, or interfere with persons exercising religious freedom at a place of worship. 18 U.S.C. § 248(a)(2); Cal. Penal Code § 423.2(b), (d). Neither contains an animus requirement. Nor must the defendant know that the persons he intimidated or obstructed were exercising religious freedom; it is enough that he intended to intimidate or interfere with persons at a place of religious worship. *United States v. Party for Socialism & Liberation N.J.*, 2026 WL 2938869, at *5 n.2 (D.N.J. Sep. 30, 2026). Whatever motive Corpus now claims, the Amended Complaint alleges that he intentionally threw a glass vase to the floor and charged the front of the room in the middle of a program at a synagogue. FAC ¶ 83. That is all either statute requires.

2. The Ralph Act Expressly Reaches Violence Motivated by Political Affiliation.

The Ralph Act protects the right to be free from violence, or intimidation by threat of violence, "because of political affiliation, or on account of any characteristic listed . . . or because another person perceives them to have one or more of those characteristics." Cal. Civ. Code § 51.7(b)(1). The Amended Complaint alleges that Defendants committed violence and intimidation against Plaintiffs "because of their Jewish faith and shared ancestry, and/or their support for the State of Israel, and/or their perceived support for the State of Israel." FAC ¶ 197. Corpus asks the Court to accept, instead, that he acted only out of opposition to Israel. Mot. at 9. That premise is not alleged and cannot be credited. Even if it could, it would not take his conduct outside a statute that expressly reaches violence because of actual or perceived political affiliation. Nor must the protected characteristic be the only reason: The claim requires that "a motivating reason" for the violence was a prohibited motive. *Rose v. Crunch Fitness-Palmdale*, 2025 U.S. Dist. LEXIS 254992, at *4–5 (C.D. Cal. Dec. 9, 2025) (quoting *Gabrielle A. v. County of Orange*, 10 Cal. App. 5th 1268, 1291 (2017)).

The claim also does not rest on "hate speech," Mot. at 9. It rests on violence. The Amended Complaint alleges that Corpus, "having trespassed on Temple property and immediately after destroying Temple property, charged the Consulate General and placed Symposium attendees in reasonable fear for their safety." FAC ¶ 197(b). Corpus's authorities, by contrast, dismissed complaints that pleaded no facts tying the defendant's conduct to a protected characteristic. *See Scovell v. City of Beverly Hills*, 2026 WL 469239, at *15 (C.D. Cal. Feb. 10, 2026); *Rose*, 2025 U.S. Dist. LEXIS 254992, at *5; *Kobayashi v. McMullin*, 2023 WL 3493991, at *19 (C.D. Cal. Mar. 2, 2023). Here, the Amended Complaint pleads the target, the symbols, the slurs, the timing, and the organizational history.

3. <u>The Amended Complaint Pleads the But-For Causation Required by Section 1981.</u>

A Section 1981 plaintiff "must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 341 (2020). The Amended Complaint does so. It alleges that Jews constitute a race for purposes of Section 1981, FAC ¶ 154; that Defendants damaged the Temple's property "because the Temple is a Jewish house of worship," *id.* ¶ 155; and that Defendants assaulted, harassed, and intimidated Coalition members "because Coalition members are Jewish," *id.* ¶ 158. Defendants chose a synagogue—not a consulate or a government office—as the target. *Id.* ¶ 147. They promoted the action with symbols that are associated with violence against Jews. *Id.* ¶¶ 65–67. They shouted "Zionist pigs" and—echoing the oldest antisemitic blood libel against Jews—"you're a baby killer" at a Jewish woman trying to enter the Temple, *id.* ¶ 77, and the Amended Complaint alleges that "Zionist" is used in this context as a code word for "Jew," *id.* ¶ 27. They forced Jewish day schools into lockdown. *Id.* ¶ 78.

Corpus's only other authority does not help him. In *Domino v. Kentucky Fried Chicken*, the plaintiff's own complaint alleged non-racial reasons for the denial of service—that he had complained about the food and browsed without buying. 2020 U.S.

Dist. LEXIS 182265, at *5–6 (N.D. Cal. Oct. 1, 2020). Nothing in the Amended Complaint supplies a non-racial reason for smashing a synagogue's property. Corpus cannot supply one through his brief. *Epstein*, 83 F.3d at 1140; *Lee*, 250 F.3d at 688.

4. Corpus's Anti-Zionism Authorities Involve Speech, Not Conduct.

Corpus's anti-Zionism cases all involved speech in public places. *StandWithUs Center for Legal Justice v. MIT*, Corpus's lead authority, held that a university was not required under Title VI to suppress protests expressing anti-Zionist views on the Middle East conflict, which the court treated as protected speech on a matter of public concern. 158 F.4th 1, 13–14 (1st Cir. 2025). Corpus did not engage in speech; he destroyed property inside a synagogue and physically charged a speaker. FAC ¶ 83. And he did so in coordination with Defendants who were blockading both entrances to the Temple. *Id.* ¶¶ 5, 72–78, 80, 88. The facts in *StandWithUs* also showed the protesters' purpose: Their own statements identified political goals, and nothing suggested any other aim. *Id.* at 26. The facts here point the other way. Defendants targeted a synagogue and kept Jewish congregants and children from entering it. FAC ¶¶ 72–78, 155, 158. *Gerwaski v. Nevada ex rel. Board of Regents* likewise involved conduct that "appears to take place in public areas and involves speech on the conflict between Israel and Palestine," and the court emphasized that the plaintiff alleged no conduct "directed at him in a private setting." 2025 U.S. Dist. LEXIS 84645, at *21–22 (D. Nev. May 5, 2025). None of these cases involved the destruction of property inside a synagogue, a physical attack, or unlawful entry into a synagogue.

**E. The First Amendment Does Not Protect Destroying Property or Charging a Speaker.**

1. The Claims Against Corpus Rest on Conduct.

Corpus claims the Amended Complaint seeks to punish "the *content* of [Defendants'] speech." Mot. at 10. It does not. The Amended Complaint seeks to hold Corpus liable for obtaining entry to a secured synagogue by misrepresentation, destroying property, and charging the Consul General. FAC ¶¶ 60, 83. "The First Amendment does

not protect violence." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 916 (1982). Corpus's own authority recognizes as much. *See Gerwaski*, 2025 U.S. Dist. LEXIS 84645, at *19–20 (noting that violence is not protected by the First Amendment). To the extent the Amended Complaint describes what Defendants said, it does so as evidence of intent and motive. The First Amendment "does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993).

Corpus's remaining authorities are inapposite. *People Acting Through Community Effort v. Doorley* invalidated an ordinance that "distinguishe[d] between permissible and impermissible conduct on the basis of the content of the demonstrator's message." 468 F.2d 1143, 1145 (1st Cir. 1972). The statutes Plaintiffs invoke reach force, threats, obstruction, and property destruction whatever the actor's viewpoint. Plaintiffs do not dispute the general principle for which Corpus cites *New York Times Co. v. Sullivan*, *Shelley v. Kraemer*, *Yelling*, and *Tappe*—that a court applying state law may not impose liability the First Amendment forbids. Mot. at 11. It does not forbid liability for conduct like Corpus's. And Corpus's suggestion that no "peaceful pro-Palestinian demonstration anywhere in proximity to a synagogue would be First Amendment-protected," Mot. at 10, describes a case Plaintiffs have not brought. The claims against Corpus arise not from a peaceful demonstration, but from a coordinated effort to physically block access to a house of worship and to disrupt, by force, what took place inside.

2. <u>Corpus's Own Speech Rights Are No Defense to the Bane Act Claim.</u>

Corpus argues that the Bane Act claim fails because his actions were "First Amendment-protected speech which by definition could not violate [his] own constitutional rights." Mot. at 8. That misunderstands the claim. The Bane Act asks whether the defendant interfered by threat, intimidation, or coercion with "rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civ. Code § 52.1. The relevant question is whether Corpus

interfered with the Coalition members' rights, not whether he was also exercising rights of his own.

The rights at issue apply to private actors. The California Supreme Court has explained that the Bane Act has "no state action requirement per se," and that it provides a remedy for coercive interference with rights that bind private actors—including the Ralph Act's guarantee of freedom from violence, which "appl[ies] against private actors." *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 333, 338 (1998). The Coalition alleges interference with exactly such rights: those secured by the CA FACCE Act, the FACE Act, and the Ralph Act. FAC ¶¶ 204, 206. Corpus's cases are not to the contrary. Each involved a claim against government defendants that failed because no underlying constitutional violation was established. *See Pryor v. City & County of San Francisco*, 672 F. App'x 751, 752 (9th Cir. 2017); *Ashford v. Hill*, 2023 U.S. Dist. LEXIS 131239, at *17 (C.D. Cal. June 7, 2023).

### F. Purported Consent Obtained by Misrepresenting One's Identity to Defeat a Security Screen Is Not Consent.

Corpus argues that the trespass claim fails because he "registered for the event and was thus granted permission to enter," and that Plaintiffs are relying on his undisclosed "intention to protest the event once inside." Mot. at 9. The FAC alleges more than the material omission Corpus concedes. It alleges affirmative misrepresentations, made to defeat a security screen. The Temple and the Consulate vetted the registration list to exclude security risks, and Corpus "defeated that screening" by registering without his surname and claiming an affiliation he does not have, "for the purpose of evading the Temple's and the Consulate's security vetting." FAC ¶¶ 59–60, 62; *see also id.* ¶ 212.

Corpus's authority, *Theofel v. Farey-Jones*, supports Plaintiffs. It explains that "the busybody who gets permission to come inside by posing as a meter reader is a trespasser." 359 F.3d 1066, 1073 (9th Cir. 2004). Not all deceit vitiates consent, but deceit does when the mistake goes to "the essential character of the act itself" rather than "some collateral matter." *Id.* (quotation omitted). Whether a misrepresentation is essential or collateral depends on "the extent to which the intrusion trenches on 'the specific interests that the

tort of trespass seeks to protect.'" *Id.* (citation omitted). Corpus's deception went to the heart of those interests. A synagogue's control over who enters is not a formality; it is how the synagogue keeps its congregants, students, and guests safe. Because of the security risks facing Jewish institutions, the Temple limited the Symposium to invited, pre-registered guests, and the Temple and the Consulate vetted the registration list. FAC ¶¶ 40, 59. Corpus misrepresented who he was—omitting his surname and claiming an affiliation he does not have—precisely so that he could gain "physical access to a secured house of worship that [he] knew [he] would otherwise be denied." *Id.* ¶¶ 60, 62. That is not deceit about a collateral matter. It is deceit aimed at defeating the very safeguard that protected the people inside. Like the phony meter reader, Corpus gained entry by posing as someone he was not.

Corpus's other authority, *Cohodes v. MiMedx Group, Inc.*, confirms the point. The court dismissed a trespass claim because the complaint "lack[ed] allegations giving rise to the plausible inference that [the defendant] indeed lied about this purpose . . . as part of gaining entry." 2024 WL 4353634, at *6 (N.D. Cal. Sep. 24, 2024). The Amended Complaint contains exactly those allegations. FAC ¶¶ 60, 62, 212.

The trespass claim also survives on an independent ground that Corpus does not address. "A trespass may occur if the party, entering land pursuant to a limited consent, *i.e.*, limited as to purpose or place, proceeds to exceed those limits by divergent conduct on the land of another." *Cohodes*, 2024 WL 4353634, at *6 (quoting *Mangini v. Aerojet-Gen. Corp.*, 230 Cal. App. 3d 1125 (1991)). The *Cohodes* plaintiff failed on this theory because his visitor did nothing "beyond the limits of an ordinary social visit." *Id.* Registration for a public-safety symposium does not extend to smashing the host's property, charging a speaker, kicking over the sound system, and stalking the hallway outside the room. FAC ¶¶ 83, 85, 211. Corpus's conduct "in all events exceeded any permission granted." *Id.* ¶ 212.

**G. The Court Should Retain Supplemental Jurisdiction.**

Corpus argues that the state-law claims must be dismissed because they are "pendent to purported federal questions which fail." Mot. at 8. His own authorities address cases in which no federal claim remained: In *Carnegie-Mellon University v. Cohill*, "all federal-law claims in the action ha[d] been eliminated and only pendent state-law claims remain[ed]." 484 U.S. 343, 345 (1988). Here, the federal claims remain—including two federal counts Corpus does not challenge. *See* Section IV.A, *supra*. The state-law claims arise from the same events and "form part of the same case or controversy." 28 U.S.C. § 1367(a); FAC ¶ 12.

**H. Any Dismissal Should Be With Leave to Amend.**

Corpus asks for dismissal with prejudice, Notice of Mot. at 2, but identifies no reason amendment would be futile. Should the Court grant the motion in any respect, Plaintiffs request leave to amend. *See Weinberg*, 2026 WL 184302, at *14 (granting leave to amend under the Ninth Circuit's "extreme liberality" standard) (citing *Jensen v. Brown*, 131 F.4th 677, 701 (9th Cir. 2025)).

**V. CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Corpus's motion to dismiss in its entirety. Should the Court grant the motion in any respect, however, Plaintiffs respectfully request that dismissal be without prejudice and with leave to amend.

DATED: October 30, 2026

Respectfully submitted,

COVINGTON & BURLING LLP

By: */s/ Daniel N. Shallman*

Daniel N. Shallman (Bar No. 180782)
Paulina Rafizadeh (Bar No. 348706)
Mathew A. Sperling (Bar No. 360266)
1999 Avenue of the Stars
Los Angeles, California 90067-4643
Telephone: + 1 (424) 332-4800
dshallman@cov.com

THE LOUIS D. BRANDEIS CENTER FOR HUMAN RIGHTS UNDER LAW

By: */s/ Marci L. Miller*

Marci L. Miller (Bar No. 162790)
Richard Rosen (*Pro Hac Vice*)
Jeffrey I. Lang (*Pro Hac Vice*)
Mollie Galchus (*Pro Hac Vice*)
1776 I Street, NW
Washington, DC 20006
Telephone: + 1 (714) 299-7157
mmiller@brandeiscenter.com

*Attorneys for Plaintiffs Wilshire Boulevard Temple and The Louis D. Brandeis Center Coalition to Combat Anti-Semitism, Inc.*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs Wilshire Boulevard Temple and The Louis D. Brandeis Center Coalition To Combat Anti-Semitism, Inc., certifies that this brief contains 6,992 words, which complies with the word limit of L.R. 11-6.1.

DATE: October 30, 2026

*/s/ Daniel N. Shallman*
Daniel N. Shallman (Bar No. 180782)