Jonathan D. Wallace (SBN 1733537)
P.O. Box 728
Amagansett, N.Y. 11930
Telephone: (917-359-6234
Email: jonathan.wallace80@gmail.com
*Admitted pro hac vice*

Nikhil A. Ramnaney (SBN 268554) (local counsel)
Harbor Justice Law APC
2485 Atlantic Avenue
Long Beach, CA 90802
Tel: 562-362-4600
nikhil@harborjusticelaw.com

*Attorneys for Ray Wue Corpus*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WILSHIRE BOULEVARD TEMPLE, et al.,<br>Plaintiff(s),<br>vs.<br>TURTLE ISLAND LIBBERATION FRONT LA, et al.,<br>Defendant(s) | **Case No.: 2:26-cv-07560**<br><br>**Defendant's Reply to Opposition to Motion to Dismiss**<br><br>**Judge: Honorable Mark Scarsi**<br>**Date: November 13, 2026** |

**Defendant's Reply to Opposition to Motion to Dismiss**

Defendant Ray Wue Corpus ("Ray") stands by his arguments made in the main brief that the Complaint fail under F.R.C.P. 12(b)(1) and 12(b)(6) under the FACE Act, Section 1981 and the state law claims. Ray also joins in the arguments made by the other similarly-situated Defendants and requests that if any of their motions to dismiss are granted, his be as well, even as to arguments he did not raise.

Ray uses the opportunity to file this Reply mainly to expand on his request in the alternative for an evidentiary hearing.

## PRELIMINARY STATEMENT

In their Opposition, Plaintiffs re-assert many fact issues citing to their brief, including : "The Irmas Pavilion sits next to the sanctuary and is 'an essential religious space' on the campus. It has served as a place of Jewish worship, hosting Shabbat services, High Holy Day services, and bar and bat mitzvah and wedding celebrations ...The Symposium was not the only religious activity on campus that morning". However, the core assertion is: "The Temple agreed to host the Symposium because it furthered *tikkun olam*, which the Temple teaches is 'not . . . an add-on, but a core expression of Jewish identity...At the Symposium itself, the Temple's Senior Rabbi Joel Nickerson offered a prayer, invoked *tikkun olam*, and 'emphasized that the Symposium was an exercise of Jewish religious practice'".(p. 10)

Ray stands by his assertion in the main brief that the Complaint inadequately pleads a religious exercise by *Iqbal/Twombly* standards. In the alternative, Ray maintains that the disputed facts asserted, and the application of law to the resolved facts, should be dealt with via an evidentiary hearing before this Court.

As argued in the main brief, a ruling by the Court that a security seminar led by a notorious arms manufacturer was a practice of Jewish religion would open the Courts to a flood

of litigation against individual defendants and impecunious and endangered organizations engaged in unpopular speech.

Expert testimony at a hearing would also be useful to the Court. Rabbi Jack Abramowicz said: "Let's start with translating the phrase. *"Tikkun olam"* literally means 'repairing the world.' But what does it mean to repair the world? Historically, this has nothing to do with building houses for hurricane victims, bringing clean water to African villages or fighting global climate change. (That's not to say that those aren't worthy endeavors, just that it's not to what '*tikkun olam'* traditionally refers!) Originally, *tikkun olam* had to do with divorce." Rabbi Jack Abramowicz, "You Are Probably Using The Term 'Tikkun Olam' Incorrectly" *A Jew in the City,* https://jewinthecity.com/2017/06/you-are-probably-using-the-term-tikkun-olam-incorrectly/ An article in the Times of Israel maintains that it is tikkun olam to feed your animals before eating your own meal, Mikhail Salita, "Animals and Tikkun Olam", https://blogs.timesofisrael.com/animals-and-tikkun-olam-a-hasidic-kabbalistic-reflection-on-animal-chaplaincy/ "Tikkun could be used to describe straightening a crooked rod, maintaining a roadway, cutting fingernails, setting a table, or devising a parable to explain a difficult idea", Tzvi Freeman, "What is Tikkun Olam?" Chabad.org https://www.chabad.org/library/article_cdo/aid/3700275/jewish/What-Is-Tikkun-Olam.htm Playing a specialized form of bingo is an exercise in tikkun olam because it teaches children about the practice, "Tikkun Olam Bingo", https://withloveima.com/wp-content/uploads/2018/12/Tikkun-Olam-Bingo-Game-with-love-ima.pdf; also inclusive sports: "[T]he Israel Sport Center for the Disabled (ISCD), a longtime tikkun olam partner of Stephen Wise Temple and Schools", *Stephen Wise Temple,* https://wisela.org/wise-school-hosts-athletes-from-iscd-israel-sport-center-for-the-disabled/

"Tikkun olam" has even been used as a justification for violence. "In this hour, and in this moment, tikkun olam means fighting a war". Rabbi Stevn Moskowitz, "What Tikkun Olam Means Today", https://www.rabbimoskowitz.com/blog/what-tikkun-olam-means-today

Columbia or any private university could sue protesters outside university buildings under the FACE Act on the theory that all educational activities are exercises in tikkun olam. Soldiers could sue protesters outside military facilities on the theory that they joined the military to protect their country from "tikkun olam". Demonstrators outside a data center could be sued on the theory that the artificial intelligence processing inside "heals the world". Any of these theories would be as plausible as plaintiffs' assertions about Elbit Systems, by the way.

Since virtually any human activity could in theory be motivated by a desire to "heal the world", Courts should make clear that FACE Act protection does not extend to wholly secular activities just because they have a foundation in religious benevolence. In the alternative, they should triage theses cases via evidentiary hearings before defendants are enmeshed in years of oppressive proceedings and discovery.

## Argument

### AN EVIDENTIARY HEARING ON WHETHER THE FACE ACT PROTECTS SECULAR EXERCISES OF TIKKUN OLAM WOULD PROTECT THE DEFENDANT AGAINST HARDSHIP AND PROMOTE JUDICIAL ECONOMY

This Court may take judicial notice that the lead plaintiff in this case, Brandeis Center ("Brandeis"), is playing a concerted role nationwide at the moment to protect Israeli interests in U.S. courts. Rather than being an *ad hominem* attack or based on inference, this truth is proudly maintained by Brandeis on its web site, which mentions Israel more than 2,000 times. Brandeis' "About Us" includes its mission to combat " anti-Zionism that crosses the line from criticism into demonization of the Jewish State. The Center has helped non-Jews to understand Jewish commitment to the State of Israel, which is frequently mischaracterized as a political preference

instead of what it is–an integral part of Jewish identity." Despite this reference to "crossing the line", in its cases Brandeis routinely characterizes all anti-Zionist or pro-Palestinian expression as antisemitic, Other coverage includes opposition to Israeli boycott resolutions, "ADL, BRANDEIS CENTER URGE SOMERVILLE CITY OFFICIALS TO OPPOSE ISRAEL BOYCOTT ORDINANCE", https://brandeiscenter.com/adl-brandeis-center-urge-somerville-city-officials-to-oppose-israel-boycott-ordinance/; "Brooklyn Co-op Divided Over Push to Boycott Israeli Products", https://brandeiscenter.com/brooklyn-co-op-divided-over-push-to-boycott-israeli-products/ and constant conflations of opposition to Israel with antisemitism, "CALIFORNIA SUED: New Lawsuit Alleges Jewish Students Severely Harassed, Teachers Permitted to Teach Dangerous, Inaccurate Anti-Israel Propaganda", https://brandeiscenter.com/california-sued/ "After excluding Israel for 2 years, Guinness World Records caves to legal pressure**",** https://brandeiscenter.com/after-excluding-israel-for-2-years-guinness-world-records-caves-to-legal-pressure-jewish-herald-voice/ "Beyond the assembly line: Auto workers' labor union emerges as key player in anti-Israel activism (Jewish Insider)" https://brandeiscenter.com/beyond-the-assembly-line-auto-workers-labor-union-emerges-as-key-player-in-anti-israel-activism-jewish-insider/

"Discrimination today against the Jewish people is often disguised as opposition to the State of Israel". Alyza Lewin, "WHY PROHIBITING BOYCOTTS OF ISRAEL DOES NOT VIOLATE FREEDOM OF SPEECH" https://brandeiscenter.com/why-prohibiting-boycotts-of-israel-does-not-violate-freedom-of-speech/

The Brandeis Center therefore barely has concealed its tactic of using "lawfare", strategic litigation, to chill and in fact crush the speech it disfavors. As stated in the main brief, the Anti-Defamation League purports to speak for Brandeis Center also on its website: "Along with

our colleagues at The Louis D. Brandeis Center for Human Rights Under Law (Brandeis Center), ADL has turned to the courts to create *massive disincentives* for those engaging in antisemitism, hate or extremism." https://support.adl.org/event/2025-oc-justice-you-shall-pursue-fighting-antisemitism-through-litigation/ (Emphasis added) Note this does not say "to win cases", or "to change the law", but to "create massive disincentives"-- which can be accomplished merely by crushing small, impecunious defendants under discovery requests and motion practice. This was posted in 2025, and I have cited it to Courts several times by now, and Brandeis Center certainly hasn't repudiated the language or demanded it be taken down.

All this effort continues to be expended despite the powerful and unanimous series of cases decided mainly in the last three years clearly holding (in some decisions, in exact words) that Anti-Zionism is not antisemitism, *StandWithUs Ctr. For Legal Just. V Massachusetts Inst. Of Tech.,* 2025 U.S. App. LEXIS 27390, at *18 (1st Cir Oct. 21, 2025, No. 24-1800) and other cases cited at Point Three of Ray's main brief.

A review of cases litigated by the Brandeis Center confirms that rhetoric about Israel is routinely alleged as antisemitism, despite and since these inarguable precedents: (*Weinberg v Natl. Students for Just. In Pal.*, 2026 US Dist LEXIS 10380, at *23 (CD Cal Jan. 20, 2026, No. 2:25-cv-03714-MCS-JC) ("There, like in the instant case, pro-Palestinian protestors erected an encampment on MIT's campus where they displayed signs with messages, such as 'Zionism is a death cult,' and chanted slogans, like 'Palestine is free, Israel out'"); *Louis D. Brandeis Ctr. For Hum. Rights Under L. v President*, 2024 US Dist LEXIS 200937, at *8 (D Mass Nov. 5, 2024, No. 24-11354-RGS) ("Despite the ongoing congressional investigation, expression of antisemitism and hatred for Israel continued at Harvard through the spring semester. Accounts...[O]n March 28, 2024, the Harvard Law School's student government passed an anti-Israel resolution calling for Harvard to divest from 'institutions that aid the ongoing illegal

occupation of Palestine and the genocide of the Palestinians'"; direct discrimination and retaliation claims dismissed). Brandeis also represented Plaintiffs in one of the best-known, most exhaustive attempts to use the Courts to cripple a non-profit organization, *Bronner v Duggan*, 324 FRD 285, 287-288 (DDC 2018) ("Plaintiffs bring this suit against the American Studies Association and several of its current and former leaders….alleging that they improperly introduced and implemented a resolution calling for the academic boycott of Israel"). Years after its inception, both federal and state cases against ASA were dismissed in full.

Defendant Ray calls the Court's attention to these facts because Brandeis Center is obviously advancing a very unusual use of the FACE Act, extending it in appearance to completely secular actions allegedly motivated by "tikkun olam". He respectfully asks this Court to hold a limited FRCP 12(b)(1) evidentiary hearing for the express purpose of determining whether this is an acceptable use of the FACE Act.

Allowing this case to continue for the later determination of these issues on summary judgment or at trial would be crushingly inequitable to Ray and other individual and small organizational defendants. "The process should not be the punishment", *United States v Palaguachy,* 2014 US Dist LEXIS 162062, at *5 (EDNY Nov. 7, 2014, No. 14-CR-0184). The Ninth Circuit has recognized the "hardship" imposed by "extensive and likely redundant discovery demands", *Morgan Hill Concerned Parents Assn. V California Dept. of Educ.*, 781 F App'x 666, 667 (9th Cir 2019); , *Burnell v Swift Transp. Co.*, 2011 US Dist LEXIS 167169, at *13 (CD Cal Jan. 20, 2011, No. 5:10-cv-00809) ('[H]ardship as to conducting what could be inefficient or pointless discovery").

Holding an evidentiary hearing now also promotes judicial economy, *Hilo Prods., Inc. v Target Corp.*, 2022 US Dist LEXIS 222904, at *23 (D Haw May 6, 2022, No. 22-00069 SOM-WRP)("A limited evidentiary hearing will conserve judicial economy by resolving the venue question as soon as possible"). This Court presides over the Weinberg v. NSJP, so has first

hand knowledge of the Brandeis Center's continual rain of interrogatories, requests for production, and subpoenas on one small, impecunious defendant, National Students for Justice in Palestine, each demanding two to three dozen categories of response. The Brandeis Center in that case recently stated that it plans to petition the Magistrate Judge to increase the deposition limit from ten to twenty as well.

## CONCLUSION

If this Court does not dismiss the Complaint, Ray respectfully requests that an evidentiary hearing be ordered, to avoid hardship for defendants and as a matter of judicial economy.

DATED: November 13, 2026

*/s/ Jonathan Wallace*
JONATHAN WALLACE
Attorney for Plaintiff
Appearance Pro Hac Vice