Jacob Loup (Cal. Bar No. 331695)
jl@louplaw.com
Law Office of Jacob Loup
400 Corporate Pointe Ste 300
Culver City CA 90230
347-391-5009

Akeeb Dami Animashaun
dami@animashaun.me
(Cal Bar. No. 339294)
355 S. Grand Ave., Suite 2450
Los Angeles, California 90071
929-266-3971

*Attorneys for Defendant Jason Reedy*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WILSHIRE BOULEVARD TEMPLE et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TURTLE ISLAND LIBERATION FRONT LA et al.,<br><br>Defendants. | No. 2:26-cv-07560-MCS-AJR<br><br>Hon. Mark C. Scarsi<br><br>**DEFENDANT JASON REEDY'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**<br><br>Hearing date and time:<br>Monday, January 25, 2027, 9:00 a.m.<br><br>ORAL ARGUMENT REQUESTED |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... iii

INTRODUCTION .......... 1

ARGUMENT .......... 2

1. Plaintiffs ignore the controlling precedents dictating that there is no conspiracy liability under FACE and, in any event, they fail to adequately allege a conspiracy. .......... 2

2. Plaintiffs do not show that the Pavilion is devoted *primarily* to religious worship or that symposium-goers were exercising religious freedom. .......... 4

3. Plaintiffs incorrectly claim that FACE lacks a subjective-intent requirement, and they do not plausibly allege that Reedy had the requisite intent. .......... 6

4. Plaintiffs do not adequately allege future harm by Reedy and thus lack standing to seek injunctive relief. .......... 8

CONCLUSION .......... 10

CERTIFICATE OF COMPLIANCE .......... 11

# TABLE OF AUTHORITIES

## Cases

*Bray v. Alexandria Women's Health Clinic*,
506 U.S. 263 (1993)........................................................................................ 4

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
511 U.S. 164 (1994) ........................................................................................ 2

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983).......................................................................................... 8

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ........................................................................................10

*Counterman v. Colorado*,
600 U.S. 66 (2023)...........................................................................................6

*Femhealth USA, Inc. v. Nelson*,
No. 3:22-cv-00565, 2025 WL 479394 (M.D. Tenn. Jan. 13, 2025)....................7, 8

*FemHealth USA, Inc. v. Williams*,
No. 3:22-CV-00565, 2022 WL 4241269 (M.D. Tenn. Sept. 14, 2022) ............... 2

*Flores-Figueroa v. United States*,
556 U.S. 646 (2009)..........................................................................................7

*Frankel v. Regents of Univ. of Cal.*,
744 F.Supp.3d 1015 (C.D. Cal. 2024)................................................................9

*Freeman v. DirecTV, Inc.*,
457 F.3d 1001 (9th Cir. 2006)......................................................................... 2

*Helmann v. Codepink Women for Peace*,
No. 2:24-CV-05704-SVW-PVC, 2025 WL 3030582
(C.D. Cal. June 13, 2025)..........................................................................3, 8

*Index Newspapers LLC v. United States Marshals Serv.*,
977 F.3d 817 (9th Cir. 2020)............................................................................9

*Jingrong v. Chinese Anti-Cult World All. Inc.*,
16 F.4th 47 (2d Cir. 2021) ...........................................................................4, 5

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)....................9

*Lunn v. City of Los Angeles*,
629 F.Supp.3d 1007 (C.D. Cal. 2022)....................10

*Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*,
290 F.3d 1058 (9th Cir. 2002)....................2, 6

*Stand With Us Ctr. for Legal Just. v. MIT*,
158 F.4th 1 (1st Cir. 2025)....................3

*United States v. Party for Socialism and Liberation N.J.*,
No. 25-CV-16049, 2026 WL 2938869 (D.N.J. Sept. 30, 2026)....................6, 7

*Weinberg v. Nat'l Students for Just. in Palestine*,
No. 2:25-CV-03714-MCS-JC, 2026 WL 184302 (C.D. Cal. Jan. 20, 2026)....................3

**Statutes**

18 U.S.C. § 248(a)(1)....................6

18 U.S.C. § 248(a)(2)....................6, 7

42 U.S.C. § 1981....................3

42 U.S.C. § 1985....................3

**Rules**

Fed. R. Civ. P. 11(b)(3)....................5

# INTRODUCTION

To survive Defendant Jason Reedy's Motion to Dismiss, ECF 59 ("MTD"), Plaintiffs need Mr. Reedy to have, fueled by antisemitism, set upon a house of worship to prevent Jewish people from practicing their religion. That is a primary thrust of Plaintiffs' opposition memorandum, ECF 80 ("Opp."). But the concrete allegations in the First Amended Complaint, ECF 51 ("FAC")—not its conclusory assertions, which this Court should disregard—do not support that story. Instead, the FAC depicts concerned citizens who, like many millions of others in recent years, sought to protest the actions of the State of Israel at an event featuring that country's representatives. It is not plausible to argue, after three years of widespread protests against Israel's extraordinary actions in Gaza and elsewhere, that these demonstrators, whose Instagram posts and banners explicitly decried an Israeli weapons manufacturer, were motivated by anti-Jewish animus rather than legitimate political conviction.

Plaintiffs also need to make Reedy responsible for every action of every demonstrator. But he is not. While they try to implicate him as a conspirator, they do not plausibly show that he willfully joined an unlawful plan. They also do not even acknowledge—and thus they give this Court no reason to ignore—the controlling Supreme Court and Ninth Circuit precedents instructing that courts should not read conspiracy liability into a statute that, like FACE, says nothing about such liability.

For the reasons set forth below and in Reedy's Motion to Dismiss, this Court should dismiss the FAC in its entirety, with prejudice.

## ARGUMENT

**1. Plaintiffs ignore the controlling precedents dictating that there is no conspiracy liability under FACE and, in any event, they fail to adequately allege a conspiracy.**

Plaintiffs argue that Reedy is liable, as a conspirator, for everything anyone did on the Glazer Campus. For the FACE claims, this argument fails because "courts should not implicitly read secondary liability into [a] statute" whose text says nothing about secondary liability, like FACE. *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1006 (9th Cir. 2006); *accord Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 182 (1994). Although Reedy discussed *Freeman* and *Central Bank of Denver* in his motion, MTD at 26,[1] Plaintiffs make no effort to overcome these precedents. They just ignore them.

Plaintiffs cite no decision holding that conspiracy liability is proper under FACE. While they invoke *Planned Parenthood of Columbia/Willamette, Inc. v. American Coalition of Life Activists* ("*PPCW*"), they again ignore what Reedy's motion explained: the Ninth Circuit, in ruling on that conspiracy-based claim, "decline[d] to consider" whether FACE actually permits conspiracy liability because that issue was "raised for the first time on appeal." 290 F.3d 1058, 1081 n.16 (9th Cir. 2002) (en banc). The question thus is still open. Plaintiffs' other case, *FemHealth USA, Inc. v. Williams*, No. 3:22-CV-00565, 2022 WL 4241269 (M.D. Tenn. Sept. 14, 2022), never discusses conspiracy liability under FACE.

Plaintiffs also fail to allege facts sufficient to show a conspiracy for any claim. A conspirator must have "willfully participat[ed] in an unlawful plan." *PPCW*, 290 F.3d at 1081. For the FACE claims, where are the non-conclusory allegations that Reedy willfully joined a plan to injure, threaten, or obstruct people on the campus?

---

[1] References to documents filed on ECF refer to the page numbers stamped at the top of the document by the ECF system.

Plaintiffs' principal allegation in support of this theory, PCC's reposting of an Instagram post, *see* FAC ¶ 68, suggests at most that PCC wanted people to show up for a political protest. PCC's call to "shut it down" no more plausibly shows an unlawful plan than the phrase "no justice, no peace" does, and another court recently deemed that slogan "too vague to qualify as a true threat," reasoning that, "[a]t most," it "express[ed] a political message: if there is no justice for Palestinians, there will be no peace—even in religious spaces." *Helmann v. Codepink Women for Peace*, No. 2:24-CV-05704-SVW-PVC, 2025 WL 3030582, at *14 (C.D. Cal. June 13, 2025).

Plaintiffs cite conspiracy allegations deemed adequate in *Weinberg v. National Students for Justice in Palestine*, No. 2:25-cv-03714-MCS-JC, 2026 WL 184302 (C.D. Cal. Jan. 20, 2026), but that case is very different. Those defendants didn't just repost one Instagram post urging attendance at a one-off protest; their "coordinated social media campaign" involved press releases and lists of supplies urging participation in a days-long encampment of considerable "logistical sophistication," including a "well-organized supply system supported by outside actors." *Id.* at *7.

Plaintiffs also have not plausibly alleged, under 42 U.S.C. §§ 1981 and 1985, that Reedy willfully joined a conspiracy motivated by anti-Jewish animus. Just as in *Stand With Us Center for Legal Justice v. Massachusetts Institute of Technology*, Plaintiffs' "conclusory assertions" of antisemitism are "particularly implausible" since the defendant organizations' "joint statements" on Instagram "state plainly" that "the protestors' purported goals" were to protest Israel's actions, not to intimidate or interfere with Jewish people. 158 F.4th 1, 26 (1st Cir. 2025).

Plaintiffs contend that the Court can infer antisemitism from Defendants having "targeted a synagogue, the very center of Jewish communal and religious life" and having "impacted all of the Temple's activities." Opp. at 26 (emphasis omitted). But the protest did not target a synagogue; it targeted an event space. *See*

MTD at 21-22; Section 2, *infra*. Moreover, anyone who has followed the news since October 2023 would understand that a call to protest a "Zionist event featuring weapons manufacturer Elbit Systems," FAC ¶ 67, wherever it is held, is not a call to attack or denigrate "Jewish communal and religious life" but rather a political call to demonstrate against Israel's actions. That is especially true here, where the event was a "symposium" on the non-religious topic of "AI and Public Safety" and co-sponsored by non-religious organizations like the Korean American Federation of Los Angeles. FAC ¶¶ 2-3. To call this an "attack" intended to target Jewish people *as* Jewish people is implausible in the extreme.

To the extent the demonstration "incidentally affected" the campus's non-symposium operations, that is not enough to show an unlawful conspiracy: "A conspiracy is not 'for the purpose' of denying equal protection simply because it has an effect upon a protected right." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 275 (1993) (quoting 42 U.S.C. § 1985(3)).

Plaintiffs want this Court to hold that people can be hauled into court and punished with speech-chilling damages merely for posting a call, using language common to numberless protests in recent decades, to join a demonstration concerning a major political issue of our time. Countenancing such lawsuits will only further embroil the judicial branch in debates that belong in the political sphere. This Court should dismiss Plaintiffs' conspiracy-based claims.

**2. Plaintiffs do not show that the Pavilion is devoted *primarily* to religious worship or that symposium-goers were exercising religious freedom.**

Plaintiffs agree that a "place of religious worship" under FACE is "a space devoted *primarily* to religious worship." Opp. at 18 (emphasis added) (quoting *Jingrong v. Chinese Anti-Cult World All. Inc.*, 16 F.4th 47, 57 (2d Cir. 2021)). They do not show that the Pavilion meets this standard. Plaintiffs do not contest that the Temple's and Pavilion's own websites advertise the Pavilion for rental for secular

uses or that it regularly hosts secular events.[2] They insist such events must be "consistent with the Temple's religious missions and values." Opp. at 19 (quoting FAC¶ 37). But even if that is true, the events still aren't "religious worship." Conspicuously, the FAC never directly alleges that the Pavilion's "primary purpose" is worship, and the above-mentioned websites make clear that Plaintiffs could not make that allegation consistent with Rule 11(b)(3)'s requirement that their factual contentions likely will have "evidentiary support."

Plaintiffs' argument that the entire Glazer Campus is a "place of worship," *see* Opp. at 18, also fails. The campus contains not just a synagogue, but also schools, a food pantry, and the Pavilion itself. FAC ¶¶ 38, 43. Because none these latter places' primary function is worship, it follows that the entire campus is not devoted primarily to worship.

Plaintiffs further fail to plausibly allege that symposium-goers were exercising religious freedom. Plaintiffs allege that the symposium "furthered a core component of the Temple's religious mission" and was opened with a prayer. Opp. at 20. "But that such political and social action may be rooted in religious belief does not transform the public spaces where the action occurs into 'places of religious worship'" or participation into an exercise of religious freedom. *Jingrong*, 16 F.4th at 62.

---

[2] Plaintiffs contend this Court should "disregard" the websites "because they only serve to dispute facts stated in a well-pleaded complaint." Opp. at 15 n.3 (citation omitted). That is incorrect. The FAC nowhere disputes the fact that the Temple rents out the Pavilion for secular, non-worship uses. Plaintiffs dispute only Reedy's ultimate characterization of the Pavilion's function in light of this fact.

**3. Plaintiffs incorrectly claim that FACE lacks a subjective-intent requirement, and they do not plausibly allege that Reedy had the requisite intent.**

Plaintiffs misstate FACE's *mens rea* requirement. The statute applies only to someone who "*intentionally* injures, intimidates or interferes with … any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship." 18 U.S.C. § 248(a)(2) (emphasis added). Interpreting the identical clause in § 248(a)(1), the Ninth Circuit in *PPCW* held that a "subjective intent requirement … is subsumed within the statutory standard of FACE itself." 290 F.3d at 1075-76. That is, "the speaker" must have "actually *intended* to induce fear, intimidation, or terror." *Id.* at 1075 (emphasis in original).

Plaintiffs are thus incorrect when they claim that Reedy need not have "subjectively intend[ed] to communicate an intent to inflict bodily harm" and can be liable under a lesser showing that he "exhibit[ed] a conscious disregard of a substantial risk that [his] statement would be viewed as threatening violence." Opp. at 21. The decision Plaintiffs cite for that argument is inapposite. In *Counterman v. Colorado*, the Supreme Court held that, under the First Amendment true-threat doctrine, a person can be held criminally liable for stalking based on recklessness. 600 U.S. 66, 69-71 (2023). But the constitutional *mens rea* floor for a true threat is immaterial here, because FACE's text itself requires more, as *PPCW* holds.

In fact, courts have held that § 248(a)(2) requires not just intent to intimidate or interfere in the abstract, but rather conduct "intentionally directed at injuring, intimidating, or interfering with [another's] exercise or attempted exercise of religion" at a place of worship. *United States v. Party for Socialism and Liberation N.J.*, No. 25-cv-16049, 2026 WL 2938869, at *7 (D.N.J. Sept. 30, 2026) ("*PSLNJ*"). Plaintiffs' contrary reading of *PSLNJ*, *see* Opp. at 23, is inaccurate. Although the *PSLNJ* court noted that §§ 248(a)(1) and 248(a)(2) differ in that subsection (a)(2) "does not separately require" proof of motive, it explained that

"the statutory language" of subsection (a)(2) nevertheless "make[s] motive inherent." *Id.* at *5 & n.2. As noted above, the court then applied § 248(a)(2) to require a showing of specific intent to intimidate or interfere with people *who are exercising religious freedom at a place of worship*. That reading of § 248(a)(2) is consistent with the Supreme Court's reasoning that, based on "ordinary English grammar" and the way "courts ordinarily read" criminal statutes, a statute's *mens rea* element should be read "as applying to *all the subsequently listed elements* of the crime." *Flores-Figueroa v. United States*, 556 U.S. 646, 650, 652 (2009) (emphasis added).

In the end, whether this Court applies *PSLNJ*'s more demanding intent standard or a narrower intent standard, Plaintiffs satisfy neither. The FAC nowhere suggests that Reedy *intended* to interfere with or intimidate symposium-goers—that is, to restrict their freedom of movement or make people think he would physically harm them. *See* 18 U.S.C. § 248(e)(2), (3). The FAC never describes Reedy's alleged statements at the symposium, but the context indicates that if Reedy was yelling about anything, it was criticism of Israel. That does not suggest an intent to obstruct people or threaten their physical safety or, under the more demanding *PSLNJ* standard, an intent to interfere with the exercise of religious freedom at a place of worship. Moreover, that Reedy was caring for two children during the symposium, Opp. at 13, makes it especially implausible that he intended to physically harm or block others.

Plaintiffs allege that Reedy made it unreasonably difficult to pass through the "only door to the outdoor patio." Opp. at 22. But FACE requires the defendant to have obstructed people from getting into or out of the place of worship at all. *See* 18 U.S.C. § 248(e)(4). There is no allegation that blocking the patio doors obstructed all ingress to or egress from the room; indeed Plaintiffs allege that one person left the symposium early, presumably through other doors. FAC ¶ 91. Plaintiffs' invocation of *Femhealth USA, Inc. v. Nelson*, No. 3:22-cv-00565, 2025 WL 479394

(M.D. Tenn. Jan. 13, 2025), an out-of-circuit report and recommendation issued after briefing by *pro se* defendants, *id.* at *1-2, is in another factual universe. Those defendants made it "physically impossible for anyone to enter or exit the Health Center" and threatened to "take this whole building down" and "terrorize this whole building." *Id.* at *4-5.

**4. Plaintiffs do not adequately allege future harm by Reedy and thus lack standing to seek injunctive relief.**

To have standing for future injury, Plaintiffs must show a certainly impending, or substantial risk of, future injury *to them* at Reedy's hands. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (holding that officers' past chokehold on plaintiff did "nothing to establish a real and immediate threat that *he* would again be stopped ... by an officer or officers who would illegally choke him," and allegation that police "routinely apply chokeholds ... falls far short of the allegations that would be necessary to establish a case or controversy *between these parties*" (emphasis added)).

The "pattern of conduct" by Reedy that Plaintiffs allege, Opp. at 15 (citation omitted), does not make this showing. Plaintiffs do not claim that Reedy ever demonstrated at the Glazer Campus before or after the incident at issue. Instead, the alleged "pattern" consists of (1) Reedy's "history of disruption" at "L.A. City Council and Police Commission" meetings, and (2) PCC having previously organized one demonstration at a museum in relation to a documentary about Israel and one at the Adas Torah synagogue, Opp. at 16, which concerned an event "where a real estate company presented opportunities to purchase homes in Israel," *Helmann*, 2025 WL 3030582, at *1.[3] Allegations that Reedy played some role in two previous demonstrations critical of Israel, only one of which was at a

---

[3] Various parties were sued in relation to the Adas Torah event but not PCC. *See Helmann v. Codepink Women for Peace*, No. 2:24-cv-05704 (C.D. Cal.).

synagogue, and that he often exercises his First Amendment right to petition his city's policymakers, do not show a substantial risk that Reedy will participate in a future unlawful demonstration at the Glazer Campus.

Moreover, the FAC doesn't even allege any "concrete plans" for the Pavilion to hold an event that likely would draw another demonstration. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992). Plaintiffs argue only that the Temple "will continue … hold[ing] Jewish prayer services" and "religious holiday observances." Opp. at 17. But the demonstration didn't target a prayer service or holiday observance.

The consequences of accepting Plaintiff's argument show how untenable it is. It would mean that the mere fact of Reedy's past participation in a variety of political demonstrations confers, on anyone who disagrees with his politics, standing to sue him if they worry that he may one day demonstrate where they are, whether or not they intend to hold an event to which Reedy might object. Standing doctrine is not nearly so capacious.

The cases Plaintiffs cite are inapposite. *Index Newspapers LLC v. U.S. Marshals Service*, 977 F.3d 817 (9th Cir. 2020), involved "dozens of instances," in a single location, of officers using excessive force against journalists covering ongoing protests. *Id.* at 826. It was thus likely that the officers would repeat the same misconduct against the same plaintiffs. Similarly, *Frankel v. Regents of University of California*, 744 F.Supp.3d 1015 (C.D. Cal. 2024), involved UCLA's response to repeated "violat[ions of] UCLA's protest rules" on the plaintiffs' campus, *id.* at 1024; if there was yet another protest, the same plaintiffs would necessarily be affected. Here, Plaintiffs' allegations about Reedy's past conduct are far more vague and not specific to *Plaintiffs'* circumstances.

That Plaintiffs claim to have altered their behavior since the symposium, Opp. at 16-17, also does not establish standing. That parties claim to have "incurred certain costs as a reasonable reaction to a risk of harm is unavailing" if, as here, they

don't first establish that "the harm [they] seek to avoid is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). That is, Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Id.* The Court should dismiss Plaintiffs' claims for injunctive relief.

Additionally, Plaintiff Louis D. Brandeis Center Coalition does not address Reedy's showing that it "can seek only injunctive relief." MTD at 19. "Where a party fails to address arguments against a claim raised in a motion to dismiss, the claims are abandoned and dismissal is appropriate." *Lunn v. City of Los Angeles*, 629 F.Supp.3d 1007, 1014 (C.D. Cal. 2022) (citation omitted). This Court should dismiss the Coalition's claims for monetary relief.

## CONCLUSION

For the reasons set forth above and in Jason Reedy's Motion to Dismiss, this Court should dismiss the FAC in its entirety, with prejudice.

Dated: November 13, 2026

*/s/ Jacob Loup*
Jacob Loup
Law Office of Jacob Loup

Akeeb Dami Animashaun, Esq.

*Attorneys for Defendant Jason Reedy*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Jason Reedy, certifies that this brief contains 2,970 words, which complies with Section 9(d) of the Court's Standing Order for Civil Cases.

Dated: November 13, 2026

*/s/ Jacob Loup*
Jacob Loup