Thomas B. Harvey (SBN 287198)
tbhlegal@proton.me
**LAW OFFICES OF THOMAS B. HARVEY**
365 E. Avenida de Los Arboles, #226
Thousand Oaks, CA 91360
Telephone: (805) 768-4440

Ben Gharagozli (SBN 272302)
ben@lobglaw.com
**LAW OFFICES OF BEN GHARAGOZLI**
7655 Winnetka Avenue, #2010
Winnetka, CA 91306
Telephone: (310) 272-9211
Facsimile: (855) 628-5517

Attorneys for Defendant Quyên Ballagh

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WILSHIRE BOULEVARD TEMPLE, et al.,<br>Plaintiffs,<br><br>v.<br><br>TURTLE ISLAND LIBERATION FRONT LA, et al.,<br><br>Defendants. | Case No. 2:26-cv-07560-MCS-AJR<br>Hon. Mark C. Scarsi<br><br>**DEFENDANT QUYÊN BALLAGH'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**<br><br>Hearing date and time: 1/25/27 at 9:00 AM<br>ORAL ARGUMENT REQUESTED |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on January 25, 2027, at 9:00 a.m. or as soon thereafter as this matter may be heard in Courtroom 7C of the above-entitled Court located at First Street Courthouse, 350 W. 1st Street, 6th Floor, Los Angeles, CA 90012, Defendant Quyên Ballagh will and hereby does move the Court to dismiss Plaintiffs' First Amended Complaint, ECF 51, with prejudice.

This Motion follows the parties' conference via teleconference on October 30, 2026, in accordance with Local Rule. 7-3, during which Plaintiffs' counsel advised that Plaintiffs will oppose this Motion due to disagreement on the legal issues similar to those they would be raising later that day in their opposition to Defendants' Reedy and PCC's Motion to Dismiss and Anti-SLAPP Special Motion to Strike.

This motion is based upon this Notice of Motion, the attached Memorandum of Points & Authorities, the files and records in the case, and any evidence or argument that may be presented at a hearing on this matter.

Respectfully submitted,

Dated: November 23, 2026 LAW OFFICES OF THOMAS B. HARVEY

By: /s/Thomas B. Harvey
Thomas B. Harvey

# TABLE OF CONTENTS


**NOTICE OF MOTION AND MOTION TO DISMISS ........................................ i**

**TABLE OF CONTENTS.....................................................iv**

**TABLE OF AUTHORITIES ...................................................... v**

**MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 1**

- **I. INTRODUCTION AND FACTUAL BACKGROUND .............................. 1**
- **II. STANDARD OF REVIEW ........................................................ 5**
- **III. THE COURT SHOULD DISMISS PLAINTIFFS' FACE AND FACCE ACT CLAIMS ........................................................ 6**
  - A. Plaintiffs Fail to Plausibly Allege Ballagh Used Force, Threats of Force, or Physical Obstruction ................................................ 6
    - 1. Physical Obstruction............................................................. 7
    - 2. Force or Threat of Force....................................................... 7
  - B. The Court is Required to Interpret Specific Intent to Avoid Rendering the FACE Act Unconstitutional ................................................ 11
  - C. Plaintiffs Fail to Plausibly Allege Defendant Intended to Injure, Intimidate, Interfere with, or Attempt to Interfere with Their Freedom of Religion under the FACE Act and the FACCE Act............................... 13
  - D. Irmas Pavillion Is Not Adequately Pled as a Place of Worship, Even If it is Adjacent to a Temple and Within the Glazer Campus ........................ 14
  - E. Ballagh's Alleged Activities Constitute Protected First Amendment Speech and Advocacy ............................................................ 15
  - F. FACE Does Not Impose Conspiracy Liability....................................... 17
    - 1. Defendant Ballagh Joins Defendant Reedy's Argument That the FACE Act Does Not Allow for Conspiracy Liability ..................... 17
    - 2. Should the Court Find That the FACE Act Allows for Conspiracy Liability, Plaintiffs Do Not Plausibly Allege Ballagh Was Involved in a Conspiracy ............................................................ 17
- **IV. THE COURT SHOULD DISMISS PLAINTIFFS' CLAIM ARISING UNDER THE KU KLUX KLAN ACT (42 U.S.C. § 1985(3)).................. 18**
  - A. Defendant Ballagh Joins Defendant PCC's Argument That Plaintiffs Fail to Plead State Action in Support of Their § 1985(3) Conspiracy Claim..18

B. Should the Court Find That Plaintiffs Have Stated a Conspiracy Claim, Plaintiffs Do Not Plausibly Allege Racial Animus With Respect to Ballagh ........ 18

**V. PLAINTIFFS' 42 U.S.C. § 1981 CLAIM FAILS ........ 19**

**VI. PLAINTIFFS' STATE LAW CLAIMS FAIL ........ 19**

A. The Ralph and Bane Act Claims Fail ........ 19

B. The FACCE Act Claims Fail ........ 20

C. The Trespass Claims Fail ........ 20

**VII. BALLAGH RESPECTFULLY JOINS THE MOTIONS FILED BY CO-DEFENDANTS TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT TO THE EXTENT THEY APPLY ........ 20**

**VII. CONCLUSION ........ 20**

**CERTIFICATE OF COMPLIANCE ........ 22**

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 5, 20

*California Housing Finance Agency v. Elliot*, 17 Cal. 3d 575 (1976) .......... 11

*Collins v. Jordan*, 110 F.3d 1363 (9th Cir. 1996) .......... 14

*Counterman v. Colorado*, 600 U.S. 66 (2023) .......... 10

*Cousins v. Lockyer*, 568 F.3d 1063 (9th Cir. 2009) .......... 5

*D.C. v. R.R.*, 182 Cal. App. 4th 1190 (2010) .......... 11

*Dahlia v. Rodriguez*, 735 F.3d 1060 (9th Cir. 2013) .......... 5

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council*, 485 U.S. 568 (1988) .......... 15

*Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009) .......... 16

*Helmann v. CodePink Women for Peace*, No. 2:24-cv-05704-SVW-PVC, 2025 U.S. Dist. LEXIS 219090 (C.D. Cal. June 13, 2025) .......... 9

*Jingrong v. Chinese Anti-Cult World Alliance Inc.*, 16 F.4th 47 (2d Cir. 2021)12, 13, 15

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982) .......... 8, 9

*Nordquist v. McGraw-Hill Broad. Co.*, 32 Cal. App. 4th 555 (1995) .................... 13

*Norton v. Ashcroft*, 298 F.3d 547 (6th Cir. 2002) .................................................. 15

*Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058 (9th Cir. 2002) ........................................................... 8, 9, 10, 17

*United States v. Cassel*, 408 F.3d 622 (9th Cir. 2005) ....................................... 9, 10

*United States v. Dinwiddie*, 76 F.3d 913 (8th Cir. 1996) ....................................... 15

*United States v. Party for Socialism and Liberation N.J.*, No. 25-CV-16049, 2026 WL 2938869 (D.N.J. Sept. 30, 2026) ........................................................ 14

*United States v. Weslin*, 156 F.3d 292 (2d Cir. 1998) ........................................... 16

*Virginia v. Black*, 538 U.S. 343 (2003) ................................................................ 10

## STATUTES

18 U.S.C. § 248(a)(2) ........................................................................ 6, 7, 12, 15, 16

18 U.S.C. § 248(d)(1) ............................................................................................ 14

18 U.S.C. § 248(e)(2) ............................................................................................ 11

18 U.S.C. § 248(e)(3) ............................................................................................ 11

18 U.S.C. § 248(e)(4) .............................................................................................. 7

42 U.S.C. § 1981 .................................................................................................... 19

42 U.S.C. § 1985(3) ............................................................................................... 18

Cal. Penal Code § 423.2 (FACCE Act)................................................6, 11, 13, 20

**RULES**

Fed. R. Civ. Proc. 8(a)........................................................................................5

Fed. R. Civ. Proc. 12(b)(6)...............................................................................11, 20

**LEGISLATIVE HISTORY**

139 Cong. Rec. S15660, 1993 WL 470962 (Nov. 3, 1993).....................................7

H.R. Rep. No. 103-499 (Conf. Rep.) (1994).........................................................12

**OTHER AUTHORITIES**

Bartov, Omar. *I'm a Genocide Scholar; I Know It When I See It*. N.Y. Times (July 15, 2025).......................................................................................................3

Cohen, Gilo. *Israel Sold Advanced Weapons to Myanmar During Anti-Rohingya Ethnic Cleansing Campaign*. Haaretz (October 2017)..................................2

Conley, Julia. *Israeli Finance Minister Denounced for Calling for 'Total Annihilation' of Gaza*. Common Dreams (May 2024)..................................3

Corder, Mike and Quell, Molly. *For the first time, UN's highest court finds a country responsible for genocide: Myanmar*. AP News (November 19, 2026)2

Haynes, Stephen. *Memphis 'kneel-ins' tested churches.* Faith and Leadership (April 2012)...........................................................................................................

Haynes, Stephen. *Kneel-Ins and the Last Segregated Hour*. Huffington Post (December 2012; updated December 2017) ..........

Jones, Owen. *Time for a harsh truth: even with Netanyahu gone, the killing won't stop in Gaza*. The Guardian (November 2026) .......... 3

*Israeli defense minister orders 'complete siege' on Gaza after Hamas surprise attack*, PBS News (October 2023) .......... 3

Orly, Aiden. *Christian Right Cites Violent Biblical Amalek Trope to Justify Israel's Tactics*. TruthOut (October 2023) .......... 3

Prager, Steven. *UN Commission Finds 30 Percent of People Killed in Gaza Genocide Were Children*. Truthout (June 2026) .......... 3

Samudzi, Zoe, *Echolalias of Famine: Gaza after Biafra*. Journal of Genocide Research, Vol. 26, Issue 3 (2026) .......... 3

Segal, Raz, *A Textbook Case of Genocide*. Jewish Currents (October 2023) .......... 3

TOI Staff, *Poll: Nearly four in 10 US Jews say Israel has committed genocide in Gaza*. Times of Israel (October 2025) .......... 3

Wilkins, Brett. *Netanyahu Accused of 'Genocidal Intentions' in Gaza After 'Holy Mission' Speech*, Common Dreams (October 2023) .......... 3

*Divest Elbit Campaign Basics and Useful Links*. stopthewall.org .......... 4

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND FACTUAL BACKGROUND

Quyên Ballagh should not be sued for expressing her opposition to a weapons manufacturer supplying arms to a foreign nation plausibly accused of committing genocide at a symposium for which she registered and passed through security. Yet Plaintiffs seek to do just that, asking this Court to convert her political protest into an antisemitic conspiracy directed at preventing people from practicing their faith and violating their civil rights.

Quyên Ballagh registered for and received a ticket to attend a symposium on AI and Public Safety at a public event space sponsored by the Consulate General of Israel and the Korean American Federation of Los Angeles. ECF 51, First Amended Complaint ("FAC"), ¶¶ 5, 60, 212. On the day of the symposium, she went through security at the Audrey Irmas Pavilion public event space next to the Wilshire Boulevard Temple. The Symposium featured the Israeli weapons manufacturer Elbit Systems, described in the FAC as a "tech company specializing in defense [and] homeland security". FAC ¶ 2-3. The FAC leaves no doubt as to what motivated Ballagh, and other protesters, to attend this event—protesting Elbit Systems, a weapons manufacturer known for its role in the mass killing of Palestinians and for providing weapons to Myanmar during its genocide against the Rohingya.[1] FAC ¶¶ 64, 67.

The symposium was open to the general public, not restricted to members of the Wilshire Boulevard Temple, so long as they registered and went through screening. FAC ¶¶ 8, 59. That a Rabbi opened the symposium with a prayer, tied it to

---

[1] Cohen, Gilo. *Israel Sold Advanced Weapons to Myanmar During Anti-Rohingya Ethnic Cleansing Campaign*. Haaretz (October 2017). https://www.haaretz.com/israel-news/2017-10-24/ty-article/israel-sold-arms-to-myanmar-during-ethnic-cleansing-campaign/0000017f-db6c-d856-a37f-ffece3470000; Mike Corder and Molly Quell. *For the first time, UN's highest court finds a country responsible for genocide: Myanmar*. AP News (November 19, 2026) https://apnews.com/article/rohingya-myanmar-genocide-court-icj-30df77b12bf3f911f1100e77ebe3973a

*tikkun olam*, or claimed it "furthered a core component of the Temple's religious mission" does not turn a public safety symposium into religious exercise any more than the prayers at a presidential inauguration, the daily chaplain's prayer to open Congressional sessions, or a pregame prayer on a football field would convert any of these secular or political events into religious exercise—even if the Irmas Pavilion is adjacent to, and shares security and a parking lot with, the Wilshire Boulevard Temple on the Erika J. Glazer Family Campus. FAC ¶¶ 8, 41, 45.

Moreover, the FAC's scant individual allegations against Ballagh—the few that are not conclusory and should therefore be disregarded—do not state a claim for any cause of action. When the guesses, conclusory language, and innuendo are stripped away, what remains of Plaintiffs' allegations against Quyên Ballagh that are grounded in specific facts is this: (1) Ballagh registered for a symposium on public safety under her first name and went through security to enter the Irmas Pavilion; (2) when another attendee voiced his opposition to Elbit Systems and people forcibly removed him, Ballagh voluntarily left the room within the Irmas Pavilion hosting the symposium to film his removal; (3) Ballagh reentered the room and expressed her opinions about Elbit systems and Israel's actions in Palestine; (4) she was arrested by LAPD for allegedly spitting on a security guard; (5) some other protesters, but not Ballagh, were outside the building and allegedly blocked access to the Temple, none of whom are directly connected to Ballagh. FAC ¶¶ 10, 21, 60, 84. These are not facts sufficient to make a cognizable legal theory plausible.

The FAC fails to state a claim under the FACE Act because the attendees were not exercising religious freedom at the weapons manufacturer symposium, the Irmas Pavilion is not primarily a place of religious worship, and Ballagh did not use force or the threat of force to disrupt religious exercise. Furthermore, Ballagh did not obstruct ingress or egress to a place of worship. Her protest of a weapons manufacturer that

supplies weapons to a country plausibly alleged to have committed war crimes is a political act, not an attempt to injure or intimidate those engaged in religious worship.

Nor do these facts support a conspiracy claim under the Ku Klux Klan Act. Ballagh's mere presence at a protest that other people also protested does not establish coordination, let alone conspiracy. Yelling "baby killers" and "genocide" at representatives of the weapons manufacturer Elbit Systems is not racial animus; it is constitutionally protected political speech, whether it was uttered about Elbit Systems, Lockheed Martin, Boeing, or any other weapons manufacturer during a current period of mass killing supported by the US government, or during the Vietnam or Iraq wars.

Moreover, Israel's mass killing in Palestine has been described as genocide and war crimes by international bodies, genocide scholars, and international law practitioners, many of whom simply rely on direct quotes from Israel's political leaders to show genocidal intent.[2] According to one scholar, a nation's genocidal and "annihilatory intent has rarely been more explicit than the repeated comments made by Israeli leadership."[3] Israeli Minister of Defense Yoav Gallant is a prime example: "We are imposing a complete siege on Gaza. No electricity, no food, no water, no fuel. Everything is closed. We are fighting human animals, and we will act accordingly."[4] Minister Bezalel Smotrich also makes Israel's intent clear, calling for "no half measures" leading to the "total annihilation" of Gaza.[5] Smotrich and Prime Minister Benjamin Netanyahu also evoked the biblical story of Amalek, calling on

---

[2] Bartov, Omar. *I'm a Genocide Scholar; I Know It When I See It*, New York Times (July 15, 2025) https://www.nytimes.com/2025/07/15/opinion/israel-gaza-holocaust-genocide-palestinians.html

[3] Samudzi, Zoe. *Echolalias of Famine: Gaza after Biafra* Journal of Genocide Research Vol. 26: Issue 3 (2026) https://www.tandfonline.com/doi/full/10.1080/14623528.2025.2556569

[4] *Israeli defense minister orders 'complete siege' on Gaza after Hamas surprise attack*. PBS News (October 2023) https://www.pbs.org/newshour/world/israeli-defense-minister-orders-complete-siege-on-gaza-after-hamas-surprise-attack

[5] Conley, Julia. *Israeli Finance Minister Denounced for Calling for 'Total Annihilation' of Gaza*. Common Dreams (May 2024) https://www.commondreams.org/news/smotrich-gaza-annihilation

Israel to "blot out the remembrance of Amalek from under heaven."[6] The passage is often interpreted as a call to eradicate a perceived enemy, as its text includes a command to murder children and babies: "The Bible commands to wipe out Amalek, including women, babies, children, and animals."[7]

The public threats to kill children and babies are not limited to Smotrich. Nissim Vaturi, deputy speaker of the Knesset stated "Gaza is full of terrorists and every child born there is already a terrorist, from the moment of his birth."[8] Two years earlier, the Likud party leader urged Israelis to "Erase Gaza… Do not leave a child there. Expel all the remaining ones at the end"[9] while Knesset Member Amit Halevi stated that the babies killed during Israel's bombing of the Al-Shifa hospital were "all born terrorists."[10]. As one scholar put it, Israel's intent is "quite explicit, open, and unashamed."[11] Moreover, polling shows that somewhere between 35-40% of Jewish Americans agree Israel is committing genocide.[12]

Whether next door to a Temple or on the steps of Capitol Hill, Ballagh's words expressing widely held opinions were political protest, not indicative of racial animus. They cannot plausibly be interpreted as the basis for a claim under any of Plaintiffs' causes of action. Nor can her attendance at a political speech, for which she registered and passed through heightened security using her name, expressed her

---

[6] *Id.*
[7] Wilkins, Brett. *Netanyahu Accused of 'Genocidal Intentions' in Gaza After 'Holy Mission' Speech* Common Dreams (October 2023)https://www.commondreams.org/news/netanyahu-genocide. Reference to the Amalekites is common among nations committing genocide. Orly, Aiden. *Christian Right Cites Violent Biblical Amalek Trope to Justify Israel's Tactics* TruthOut (October 2023) https://truthout.org/articles/christian-right-cites-violent-biblical-amalek-trope-to-justify-israels-tactics/
[8] Jones, Owen. *Time for a harsh truth: even with Netanyahu gone, the killing won't stop in Gaza*, The Guardian (November 2026). https://www.theguardian.com/commentisfree/2026/nov/12/gaza-benjamin-netanyahu-israel-opposition-palestinians
[9] Prager, Steven. *UN Commission Finds 30 Percent of People Killed in Gaza Genocide Were Children*, Truthout (June 2026). https://truthout.org/articles/un-commission-finds-30-percent-of-those-killed-in-gaza-genocide-were-children/
[10] Prager, Steven. *UN Commission Finds 30 Percent of People Killed in Gaza Genocide Were Children*, Truthout (June 2026) https://truthout.org/articles/un-commission-finds-30-percent-of-those-killed-in-gaza-genocide-were-children/
[11] Segal, Raz. *A Textbook Case of Genocide*. Jewish Currents (October 2023) https://jewishcurrents.org/a-textbook-case-of-genocide
[12] TOI Staff. *Poll: Nearly four in 10 US Jews say Israel has committed genocide in Gaza*. Times of Israel (October 2025) https://www.timesofisrael.com/poll-nearly-four-in-10-us-jews-say-israel-has-committed-genocide-in-gaza/

opposition to the political speakers, and left when asked, be used to support a trespass claim.

Finally, the Plaintiffs seek an interpretation of the FACE Act that eviscerates the First Amendment's free-speech protections. If a demonstrator can violate the FACE Act by incidentally interrupting religious (or religiously motivated) activities adjacent to the protest, that were not the target of the protest, for which no nonclusory allegations can be marshalled in support of such a claim, the First Amendment's free-speech clause is invalidated as to protest on political issues at or near churches, synagogues, and the like.

For these reasons and others discussed below, Plaintiffs' First Amended Complaint should be dismissed with prejudice.

## II. STANDARD OF REVIEW

A district court must dismiss a claim if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. Proc. 12(b)(6). Rule 8(a) of the Federal Rules of Civil Procedure requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although "a complaint need not contain detailed factual allegations . . . it must plead enough facts to state a claim to relief that is plausible on its face." *Cousins v. Lockyer*, 568 F.3d 1063, 1067-68 (9th Cir. 2009) (internal quotation marks and citations omitted). A claim is facially plausible only when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (internal quotation marks omitted). "[C]onclusory allegations of law and unwarranted inferences are insufficient to avoid . . . dismissal" under this standard. *Cousins*, 568 F.3d at 1067 (internal quotation marks omitted). A court may reject as implausible allegations that are too speculative to warrant further factual development. *Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013). The allegations must be enough to raise a right to relief above the

speculative level. *Twombly* at 548. The court need not accept allegations that are merely conclusory, are unwarranted deductions, or unreasonable inferences.

## III. THE COURT SHOULD DISMISS PLAINTIFFS' FACE AND FACCE ACT CLAIM

The Freedom of Access to Clinic Entrances Act (FACE Act) was passed in 1994, when women's health clinics were being bombed and doctors who worked there were being murdered. A far less-known provision in the bill protects places of worship. The law's "religious freedom" cause of action has been seldom litigated and caselaw interpreting the civil suit provision in 18 U.S.C. § 248(a)(2) is scarce.

18 U.S.C. § 248(a)(2) is violated when someone: (1) by force or threat of force or by physical obstruction; (2) intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with; (3) any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom; (4) at a place of religious worship.

California Penal Code § 423.2, or "FACCE," is essentially identical to the federal FACE statute but requires "force, threat of force, or physical obstruction" to also be "a crime of violence." Cal. Penal Code § 423.2(b).

Plaintiffs fail to allege facts that can plausibly show a violation of the state or federal statutes.

### A. Plaintiffs Fail to Plausibly Allege Ballagh Used Force, Threats of Force, or Physical Obstruction

Plaintiffs do not plausibly allege that Ballagh used force, threats of force, or physical obstruction as required by 18 U.S.C. § 248(a)(2). In its legislative history, 18 USC § 248(a)(2)'s sponsor stated the proposal would "do no more than give religious liberty the same protection that [the FACE Act] would give abortion," and would address recent violence, including the murder of abortion doctors, and a series of arson attacks against churches. 139 Cong. Rec. S15660 (Nov. 3, 1993).

The small demonstration against a weapons manufacturer at a public event space adjacent to a place of religious worship the FAC describes bears little resemblance to the violent acts contemplated by the statute. Plaintiffs have not pled any fact that could plausibly show that defendant Ballagh individually used physical force against a worshiper, only that she yelled political slogans at attendees and was arrested for spitting at a security guard.

**1. Physical Obstruction**

Plaintiffs fail to plausibly allege that Ballagh engaged in physical obstruction. To plead a violation based on physical obstruction, Plaintiffs must specifically show that the alleged obstruction rendered ingress and egress to the facility impossible or unreasonably difficult or hazardous. 18 U.S.C. § 248(e)(4).

Here, Plaintiffs plead no facts alleging that Ballagh engaged in any individual conduct supporting physical obstruction: she registered for and entered the symposium; filmed Corpus's removal; reentered the room and expressed her objections to a weapons manufacturer; and was arrested for allegedly spitting on a security guard. She did not block a door, parking lot, or any means of ingress or egress. These facts are insufficient to meet the statutory definition of physical obstruction under the FACE and FACCE Acts.

**2. Force or Threat of Force**

Plaintiffs have also failed to plausibly allege that Defendants used a threat of force against them. Ballagh is alleged to have shouted "baby killer" and "genocide" at the AI and Public Safety Symposium. That is the full scope of her threats of force against a symposium attendee. The allegations that Ms. Ballagh was arrested and charged with battery by spiting (FAC ¶¶ 10, 84) do not change the equation because there is no allegation that the security guard was engaged in worship. Rather, the security guard appears to have been removing Ms. Ballagh. What is more, the FAC

does not appear to allege that Ms. Ballagh in fact did spit on a security guard. Rather, it alleges that Ms. Ballagh was arrested and charged with doing so. *Id*.

Nor can these claims about her conduct be saved by the FAC's conclusory statements about a "conspiracy." The FAC does not plausibly allege Ballagh agreed to any plan to engage in unlawful conduct and mere presence at a demonstration is not enough to show conspiracy. ("mere association with either group -- absent a specific intent to further an unlawful aim embraced by that group -- is an insufficient predicate for liability.") *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 925-26, (1982)

Her words are categorically different from what the Supreme Court defined as a true threat and thus remain protected by the First Amendment. "[O]ffensive and coercive speech," including "the use of speeches, marches, and threats of social ostracism" are all protected under *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1070 (9th Cir. 2002), as amended (July 10, 2002) (citing *NAACP v. Clairborne Hardware Co*., 458 U.S. 886, 933 (1982)). Where Plaintiffs rely on a "threat of force" to plead a violation of the FACE Act, they must show that the threat was a "true threat." 290 F.3d 1070 (providing that "FACE on its face requires that 'threat of force' be defined and applied consistent with the First Amendment").

Under the Supreme Court's true threat doctrine, Ballagh's speech was not a "threat," as speech only qualifies as a "true threat" where "in the entire context and under all the circumstances, a reasonable person would foresee [it] would be interpreted by those to whom the statement is communicated as a serious expression of intent to inflict bodily harm upon that person." *Id*. at 1077.

*Planned Parenthood* interpreted the FACE Act's "threat of force" as a "true threat" in order to not violate the First Amendment. *Helmann v. CodePink Women for Peace*, No. 2:24-cv-05704-SVW-PVC, 2025 U.S. Dist. LEXIS 219090, at *27 n.8

(C.D. Cal. June 13, 2025). As Judge Wilson pointed out, *United States v. Cassel* notes that courts had interpreted this as an objective standard requiring "no subjective intent to threaten" 408 F.3d 622, 630 (9th Cir. 2005), while pointing them to the complexity of its decision in *Planned Parenthood:*

> Yet our opinion in *Planned Parenthood* also noted that the statute in question contained an *explicit* requirement of intent to threaten (or "intent to intimidate"), and we cited *Gilbert* for the proposition that "the requirement of intent to intimidate serves to insulate the statute from unconstitutional application to protected speech." *Id.* at 1076 (quoting *Gilbert*, 813 F.2d at 1529). Moreover, we observed that "the requirement of intent to intimidate cures whatever risk there might be of overbreadth." *Id.* at 1079. And we wrote that the reasonable-person definition of a true threat, "*coupled with the statute's requirement of intent to intimidate*, comports with the First Amendment." *Id.* at 1088 (emphasis added). In these passages we seemed to hold--or at least keep open the possibility--that subjective intent to threaten *is* necessary. *Id.*

The objective definition of "true threat" was called further into question by the Supreme Court's decision in *Virginia v. Black*. 538 U.S. 343, 359 (2003): "[t]rue threats encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to particular individual or group of individuals." *Id.*

The Supreme Court subsequently recognized a recklessness scienter requirement for culpable true threats, such that the Defendant must have "consciously disregarded a substantial risk that his communications would be viewed as threatening violence." *Counterman v. Colorado*, 600 U.S. 66, 69 (2023). *Counterman* explained that its recklessness standard "fits with the analysis in our defamation decisions," in which the Court "adopted a recklessness rule, applicable in

both civil and criminal contexts." *Id*. at 80.No Ninth Circuit case has since defined "threat of force" under the FACE Act.

In this case, Plaintiffs do not plausibly allege that Ballagh's statements are true threats under any standard, whether objective or subjective. Plaintiffs do not allege, and no reasonable person could interpret them this way, that Ballagh's statements could be interpreted as a serious expression of intent to inflict bodily harm upon them. "Baby killer" and "genocide" expressed at a symposium featuring a weapons manufacturer are terms showing political and moral condemnation. Ballagh, nor any other reasonable person, could be aware that these words in this context could pose a substantial risk of being viewed as a threat of violence—and Plaintiffs do not allege such awareness or disregard. As such, Plaintiffs fail to plausibly allege that Ballagh used a threat of force against them.

Courts have not interpreted California's FACCE Act's prohibition on intimidation by "threat of force," Cal. Pen. Code § 423.2(b), but state statutes must comply with the First Amendment, and therefore any state criminalization of "threats" is limited by the "true threat" doctrine. *See California Housing Finance Agency v. Elliot*, 17 Cal. 3d 575, 594 (1976) ("Thus, wherever possible, [courts] will interpret a statute as consistent with applicable constitutional provisions, seeking to harmonize Constitution and statute."). Therefore, California courts have applied the "true threat" standard in interpreting the Bane Act and Ralph Act, *See D.C. v. R.R.*, 182 Cal. App. 4th 1190, 1212 (2010), and likely would interpret the FACCE Act similarly.

Plaintiffs have therefore failed to allege any facts that can plausibly show Ballagh used force, threats of force, or physical obstruction to interfere with their freedom of religion under the FACE Act or the FACCE Act, their claim fails at the first element, and must be dismissed under Rule 12(b)(6).

**B. The Court is Required to Interpret Specific Intent to Avoid Rendering the FACE Act Unconstitutional.**

The doctrine of constitutional avoidance requires the Court to adopt a reasonable interpretation of the FACE Act to save it from unconstitutionality. "[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council,* 485 U.S. 568 (1988). Applied to the specific intent element of the FACE Act's religious worship prong, liability can only attach where impairing religious worship was the dominant purpose of the defendants' conduct, not merely the incidental result of a political protest.

18 U.S.C. § 248(a)(2) prohibits the use of force, threats of force, or physical obstruction to intentionally injure, intimidate or interfere with someone lawfully exercising religious freedom at a place of worship. The FACE Act is expressly a specific intent statute, 18 U.S.C. § 248(a)(2) (requiring an "intentional[]" violation), and courts have consistently held as much, see *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002) ("[T]he [FACE] Act is a specific intent statute.")

Plaintiffs' overreaching interpretation of the statute claims that the FACE Act is violated if Ballagh's conduct disrupted worship activity, regardless of intent. Here, the FAC cites the protest of a military defense contractor as the motivation behind Ballagh's actions (FAC ¶¶ 64,67) while the individual conduct alleged against her is limited to speech, yelling "baby killers" and "genocide." (FAC ¶ 84).

In spite of these limitations, they allege her conduct violated the FACE Act. This cannot be. To do so would convert the FACE Act into a general prohibition on political speech near or in a place of religious worship, a reading that is squarely at odds with the doctrine of constitutional avoidance, and the First Amendment.

Two FACE Act cases similarly narrow the statute to avoid First Amendment concerns. *United States v. Dinwiddie*, 76 F.3d 913 (8th Cir. 1996) and *Jingrong v. Chinese Anti-Cult World Alliance*, 16 F.4th 47 (2d Cir. 2021).

In *Dinwiddie*, the Eighth Circuit construed FACE's "threat of force" element to require a First Amendment "true threat," rather than the broader reading the government urged, precisely to avoid penalizing speech the Constitution protects. *Id.* at 925. The court refused to allow FACE's reach to extend to forceful but protected speech, applying the identical reasoning the avoidance canon demands.

In *Jingrong*, the Second Circuit interpreted § 248(a)(2)'s "place of religious worship" to be "anywhere that religious adherents collectively recognize or religious leadership designates *as a space primarily to gather for or hold religious worship activities*." 16 F.4th at 49. (*emphasis added*)

The same logic compels a narrowing construction here. Just as "threat of force" must mean true threat and not merely forceful rhetoric, and place of worship is qualified with primary, "intentionally ... interfere with" religious worship must mean conduct aimed at interfering with that religious exercise. A construction under which the defendant's incidental awareness of disruption suffices would, like overbroad threat liability and place of religious worship, chill constitutionally protected speech and assembly. Plaintiffs' interpretation threatens to eviscerate the First Amendment's free speech clause in favor of a dangerously expansive version of free exercise where every political event is religious and protected against free speech so long as there's even the thinnest connection to religious beliefs.

"Because" is a term of art requiring "but for causation." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) That overlaps with intent in the sense that the object must be "the 'reason' that the [Defendant] decided to act." *Id.* Adding "because" to the interpretation of § 248(a)(2) saves it from unconstitutionality. It would require some allegation or proof that Defendants protested because the

Symposium was adjacent to the Temple, because worshipers were seeking to exercise their faith at the Symposium, or a finding that they were seeking to interfere with freedom of religion by protesting genocide. Plaintiffs resist this interpretation because it would end the inquiry at the start.

### C. <u>**Plaintiffs Fail to Plausibly Allege Defendant Intended to Injure, Intimidate, Interfere with, or Attempt to Interfere with Their Freedom of Religion under the FACE Act and the FACCE Act**</u>

Under the FACE Act, the term "intimidate" means to place a person in reasonable apprehension of bodily harm to him- or herself or to another. 18 U.S.C. §248(e)(3). The term "interfere with" means to restrict a person's freedom of movement. 18 U.S.C. § 248(e)(2).

The shotgun nature of the FAC, especially the conclusory allegations in paragraphs 88-92, renders it impossible to determine what specific conduct Ballagh is alleged to have engaged in that meets the FACE Act's standards. FAC ¶¶ 88-92.

There are also no facts pled that could plausibly show Defendant intended to injure, restrict the bodily movement of, or threaten violence against anyone exercising their religious freedom. The Symposium's topic was AI and Public Safety. Even PCC's social media statements, conclusorily alleged to have been seen by and motivated Ballagh, make no mention whatsoever of religion, Judaism, prayer, or worship. The FAC's only allegation supporting a claim that Ballagh interfered with free exercise in the room where the symposium took place is that a Rabbi opened the event with a prayer and a reference to *tikkun olam*. FAC ¶ 45. That "political and social action may be rooted in religious belief does not transform the public spaces where the action occurs into 'places of religious worship'" or participation into an "exercise of religious freedom." *Jingrong*, 16 F.4th at 62.

These facts are insufficient to plausibly allege that Ballagh intended to injure, intimidate, or interfere with the free exercise of religion under the FACE and FACCE Acts.

D. **Irmas Pavilion Is Not Adequately Pled as a Place of Worship, Even if it is Adjacent to the Temple and Within the Glazer Campus**

Because Plaintiffs cannot satisfy FACE Act elements for the reasons stated above, the Court need not reach the question of whether the Irmas Pavilion event space qualifies as a "place of religious worship" under the FACE Act. Defendants nonetheless preserve that argument as an independent alternative ground for dismissal.

The relevant portions of both the federal FACE Act and California FACCE Act protect only those who are "exercising or seeking to" exercise their "right of religious freedom at a place of religious worship." 18 U.S.C. § 248(a)(2); Cal. Penal Code § 423.2(b).

The FACE Act applies only to interference with religious exercise at "a place of religious worship." 18 U.S.C. § 248(a)(2). While the statute does not define a place of religious worship, *Jingrong v. Chinese Anti-Cult World Alliance Inc*., 16 F.4th 47 (2021) defines a place of religious worship as "anywhere that religious adherents collectively recognize or religious leadership designates as *a space primarily to gather for or hold religious worship activities*." (emphasis added) The Court cited the Joint Conference Report as "the most persuasive evidence" of congressional intent. *Id*. at 59. That report, which was prepared in conjunction with the FACE Act's passage, asserts that the law only protects against conduct "occurring at or in the immediate vicinity of a place of religious worship, such as a church, synagogue, mosque, religious shrine, or other structure used primarily as a place of worship." (*Id.*) (Citing H.R. Rep. No. 103-499, at 9(Conf. Rep.)(1994))

The Symposium took place in the Audrey Irmas Pavilion. The Irmas Pavilion is not primarily a place of religious worship. Rather, the Pavilion is "the Temple's event space" FAC ¶ 8. It is an entirely separate building that occasionally "served as a place of Jewish worship." *Id.* The FAC never alleges that Irmas Pavilion's primary purpose is religious worship. In fact, the FAC admits the Pavilion is primarily a public event space that the Temple rents out to third parties. *Id.* ¶¶ 8, 37. Moreover, the FAC does not allege religious worship took place in the Irmas Pavilion on December 3, 2025, let alone in the room hosting a symposium on AI and Public Safety where Ballagh raised her voice in opposition to mass killing in Palestine.

The Glazer Campus fares no better. The campus contains schools, a food pantry, a synagogue, and the Pavilion itself. FAC ¶¶ 38, 43. That the same private security guard walks a parking lot shared by a public event space, school, food pantry, and synagogue does not magically transform all of them into a religious space.

California's FACCE Act uses identical language to the FACE Act such that "a place of religious worship" should be interpreted consistent with federal precedent. *See Nordquist v. McGraw-Hill Broad. Co*., 32 Cal. App. 4th 555, 562 (1995) (noting that, "[b]ecause the California wage and hour laws are modeled to some extent on federal laws, federal cases may provide persuasive guidance.").

As a result, Plaintiffs' FACE and FACCE Act claims should be dismissed with prejudice.

**E. <u>Ballagh's Alleged Activities Constitute Protected First Amendment Speech and Advocacy</u>**

Demonstrations, marches, and picketing are undeniably protected First Amendment activities. *Collins v. Jordan* 110 F.3d 1363, 1371 (9th Cir. 1996). The FACE Act explicitly forbids construing its language to capture "expressive conduct

(including peaceful picketing or other peaceful demonstration) protected from legal prohibition by the First Amendment to the Constitution[.]" 18 U.S.C. § 248(d)(1).

The event's featured speakers remove all ambiguity: A representative of Israeli weapons manufacturer Elbit Systems, along with police from Israel and Los Angeles. FAC ¶ 3. While presented as "A Symposium on AI and Public Safety," it featured the weapons manufacturer that provides Israel the arms for its mass killing in Palestine. In short, this was an event implicating questions of international law, geopolitics, the military-industrial-complex, and genocide, questions that are actively debated in legislatures, courts, universities, and the streets of cities around the world. Protest activity on those subjects is protected expressive conduct under the First Amendment.

Ballagh registered for the event under her name, entered the event after going through heightened security, followed Corpus and the people removing him into the hall to film, reentered the symposium briefly, yelled "baby killers" and "genocide", and was arrested by LAPD for allegedly spitting on a security guard. FAC ¶¶ 84, 212. Her speech, while potentially offensive to some of the attendees, is on a matter of public controversy, at an event anyone could register for and attend with a ticket, during a symposium featuring a weapons manufacturer providing bombs to a country found to have committed genocide.[13] "The FACE Act does not impose liability for disruptive, offensive, or hostile advocacy as such." *United States v. Party for Socialism and Liberation N.J.*, No. 25-CV-16049, 2026 WL 2938869, at *1 (D.N.J. Sept. 30, 2026) (dismissing FACE claims arising from pro-Palestine protest of event

---

[13] United Nations Human Rights Office of the High Commissioner. *Israel has committed war crimes and crimes against humanity in the Occupied Palestinian Territory amid continuing genocide in Gaza, UN Commission of Inquiry finds* (October 2026); *Israel has committed genocide in the Gaza Strip, UN Commission finds*

https://www.ohchr.org/en/press-releases/2026/10/israel-has-committed-war-crimes-and-crimes-against-humanity-occupied

at synagogue). Nothing in the FAC alleges that Ballagh's words intimidated or otherwise threatened any participant, as outlined above.

As a result, Plaintiffs have not and cannot plausibly allege a FACE or FACCE Act violation based on Defendants' protected speech.

**F. FACE Does Not Impose Conspiracy Liability**

**1. Defendant Ballagh joins Defendant Reedy's argument in section 2.5 of his Motion to Dismiss "FACE does not impose conspiracy liability, and, in any event, Plaintiffs do not plausibly allege Reedy's involvement in a conspiracy" (ECF 59, pages 26-27).**

**2. Should the Court find that the FACE Act allows for conspiracy liability, Plaintiffs do not plausibly allege Ballagh was involved in a conspiracy.**

A conspirator must have "willfully participat[ed] in an unlawful plan." *Planned Parenthood Columbia/Willamette*, 290 F.3d at 1081. For the FACE claims, there are no non-conclusory allegations that Ballagh willfully joined a plan to injure, threaten, or obstruct people on the campus. That Ballagh was present at a demonstration while others were also present is not sufficient to allege involvement in a conspiracy. She is not alleged to have posted anything to social media, participated in the outside protest, or damaged any property. Nor is she alleged to have participated in any long-term effort to protest at the Temple, Irmas Pavilion, or any other protest in Los Angeles. In short, Plaintiffs have not plausibly alleged that Ballagh was involved in any conspiracy.

**IV. THE COURT SHOULD DISMISS PLAINTIFFS' CLAIM ARISING UNDER THE KU KLUX KLAN ACT (42 U.S.C. § 1985(3))**

**A. Defendant Ballagh Joins Defendant PCC's Argument That "Plaintiffs Fail to Plead State Action in Support of Their § 1985(3) Conspiracy Claim". (ECF 65, Section IV, pps. 24-25.)**

B. **Should the Court Find that Plaintiffs have Stated a Conspiracy Claim, Plaintiffs Do Not Plausibly Allege Racial Animus With Respect to Ballagh.**

Plaintiffs allege that Ballagh yelled "baby killers" and "genocide" at attendees (FAC ¶ 84). These pled facts cannot plausibly show a racial animus.

Shouting "baby killers" and "genocide" during a public symposium featuring Elbit systems, which even the FAC acknowledges is "an Israeli tech company specializing in defense [and] homeland security" is not evidence of racial animus. (FAC ¶ 3) The FAC includes references to protesters' political motivations. Paragraph 64 quotes Defendants as calling Elbit Systems "BLOODY WAR CRIMINALS" and asking people to "JOIN US IN PROTEST AGAINST THESE GENOCIDAL MONSTERS." Similarly, ¶ 67 quotes defendants describing the event being protested as "FEATURING WEAPONS MANUFACTURER ELBIT SYSTEMS." "The communications employed substantially similar language, including ***materially identical statements concerning Elbit Systems***." FAC ¶ 63.

Protest against Elbit Systems, not Jewish congregants practicing their faith, is a vastly more plausible explanation for what happened on December 3, 2025 according even to the FAC. Plaintiffs do not even attempt to claim there was protest at the synagogue. Instead, the FAC notes that there was protest of a weapons manufacturer, which is in keeping with one of the most prominent themes of anti-genocide protest in the region: a call for the end to the funding of the military-industrial-complex, whether university or government investment. More specifically, there has been a campaign to stop Elbit Systems since 2007, highlighting its role in the apartheid-like conditions Israel created in Palestine long before the use of its weapons during the mass killing there now.[14] Plaintiffs have not set forth—and cannot point to a single statement or action by Ballagh or anyone else that establishes—a plausible factual

[14] https://stopthewall.org/resources/divest-elbit-campaign-basics-and-useful-links/

basis for finding a racial or class-based animus, and in fact have provided the court with specific reasons to find such a motivation implausible.

Where, as here, the pleadings include citation to clear, consistent statements by the Defendants regarding their motivation, the Court cannot ignore these facts and should treat them as true under Rule 12(b)(6).

**V. PLAINTIFFS' 42 U.S.C. §1981 CLAIM FAILS**

Ballagh joins Defendant Reedy's argument in support of dismissing Plaintiffs' §1981 Claim. ECF 59, Argument section 4, "The Court should dismiss Plaintiffs' claim under 42 U.S.C. § 1981. pages 30-31.

**VI. PLAINTIFFS' STATE LAW CLAIMS FAIL**

Plaintiffs state law claims fail. See further, Ballagh's argument in the Anti-SLAPP Special Motion to Strike filed concurrently for comprehensive argument on the state law claims. Ms. Ballagh incorporates the arguments under the second prong in the anti-SLAPP Special Motion to Strike.

**A. The Ralph and Bane Act Claims Fail**

Ballagh also joins Reedy's arguments with respect to the Ralph and Bane Acts in his motion to dismiss, ECF 59, Argument Section 5.3 pages 32-33. "Plaintiffs failed to state claims under the Ralph and Bane Acts." Plaintiffs have failed to allege that Ballagh committed violence or made any statements that exceed the protections of the First Amendment. As shown above, Ballagh's statements are not "true threats" and therefore violate neither the Ralph nor Bane Act. See *Supra*, section III. A.

**B. The FACCE Act Claims Fail**

See Section III above.

**C. The Trespass Claims Fail**

Plaintiffs state law claims fail. See further, Ballagh's argument in the Anti-SLAPP Special Motion to Strike filed concurrently. The facts alleged in the FAC cannot support a trespass claim under California law.

## VII. BALLAGH RESPECTFULLY JOINS THE MOTIONS FILED BY CO-DEFENDANTS TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Ballagh notes that other defendants filed motions to dismiss the First Amended Complaint raising other arguments common to all defendants, including, without limitation, those relating to Plaintiffs' lack of standing and the constitutionality of the FACE Act under the Commerce Clause. Ballagh respectfully joins those arguments.

## VIII. CONCLUSION

The nonconclusory allegations made here are few and far between, but they do not meet even the most basic standards of *Iqbal* and *Twombly*. A few groups called for a demonstration against a weapons manufacturer at a public event space, not a place of worship. People protested outside and some protested inside. Those inside voiced their opposition to the genocide in Palestine, a hotly contested political issue. Those outside marched in front of an event space. Yet, in this hyperbolic atmosphere a constitutionally protected protest has been recast as an antisemitic conspiratorial campaign of terror.

The law requires more than hyperbole. There must be at least a nod to the reality-based community—a latticework of facts and inferences that are plausible. The plaintiffs have utterly failed at even this most basic requirement. There are no facts showing Ballagh interfered with religious services, let alone that her purpose in protesting was to threaten or intimidate people exercising their religion under the FACE Act or the FACCE Act. There are no facts showing she participated in a conspiracy or had the required racial animus for a 42 U.S.C. §1985 (3) or a 42 U.S.C. §1981 claim.

Plaintiffs have already amended their Complaint once, and have still failed to identify a single nonconclusory fact making their claims against Ballagh plausible. Because the Plaintiffs have twice failed to plausibly plead their invoked causes of action, and because further amendment would be a futile waste of the Court's resources, this complaint should be dismissed with prejudice.

Respectfully submitted,

Dated: November 23, 2026 LAW OFFICES OF THOMAS B. HARVEY

By: /s/ Thomas B. Harvey
Thomas B. Harvey

Attorney for Defendant
QUYÊN BALLAGH

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant Quyên Ballagh, certifies that this brief contains 5924 words, which complies with the word limit of Local Rule 11-6.1.

Dated: November 23, 2026

LAW OFFICES OF THOMAS B. HARVEY

By: /s/ Thomas B. Harvey
Thomas B. Harvey

Attorney for Defendant
QUYÊN BALLAGH