Thomas B. Harvey (SBN 287198)
Email: tbhlegal@proton.me
**Law Offices of Thomas B. Harvey**
365 E. Avenida de Los Arboles, #226
Thousand Oaks, CA 91360
Telephone: (805)768-4440

Ben Gharagozli (SBN 272302)
Email: ben@lobglaw.com
**Law Offices of Ben Gharagozli**
7655 Winnetka Avenue, #2010
Winnetka, CA 91306
Telephone: (310) 272-9211
Facsimile: (855) 628-5517

Attorneys for Defendant, Quyên Ballagh

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Wilshire Boulevard Temple, et al.,<br>*Plaintiffs,*<br>v.<br>Turtle Island Liberation Front LA, et al.,<br>*Defendants.* | Case No. 2:26-cv-07560-MCS-AJR<br><br>**DEFENDANT, QUYÊN BALLAGH'S NOTICE OF SPECIAL MOTION AND SPECIAL MOTION TO STRIKE PER CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF BEN GHARAGOZLI IN SUPPORT**<br><br>Judge: Hon. Mark C. Scarsi<br><br>Date: January 25, 2027<br>Time: 9:00 am<br>Location: Felicitas and Gonzalo Mendez United States Courthouse, 350 W 1st Street, Los Angeles, CA 90012<br>Courtroom: 7C |

## NOTICE OF SPECIAL MOTION TO STRIKE

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on January 25, 2027 at 9:00 am or as soon thereafter as the matter may be heard in Courtroom 7C of the above entitled court located at Felicitas and Gonzalo Mendez United States Courthouse at 350 W 1st Street Los Angeles, CA 90012, Defendant Quyên Ballagh ("Ms. Ballagh") will and hereby does, pursuant to California Code of Civil Procedure ("CCP") § 425.16 move to strike the California state-law claims asserted against her in the First Amended Complaint ("FAC") filed by Plaintiffs Wilshire Boulevard Temple and the Louis D. Brandeis Center Coalition to Combat Anti-Semitism, Inc. (collectively "Plaintiffs") on September 25, 2026 (ECF No. 51)-specifically Count VI [California Penal Code § 423.2(b)], Count VII [California Penal Code § 423.2(d)], Count IX (Ralph Civil Rights Act per California Civil Code § 51.7), Count X (Tom Bane Civil Rights Act, California Civil Code § 52.1) and Count XI (trespass) (collectively "California Claims"). In the alternative, Ms. Ballagh requests that the Court strike those portions of the California Claims that are based on Ms. Ballagh's protected activity (specifically FAC ¶ 84's speech basis for Counts VI, VII, IX, X and XI, FAC ¶ 212's misrepresentation basis for Count XI, and all Counts asserted by the Coalition).

The motion is made on the following grounds:

1) <u>Prong 1</u>: Each of the California Claims arises from Ms. Ballagh engaging in protected activity per CCP § 425.16(b)(1), (e)(3) and/or (e)(4).

Specifically, Ms. Ballagh attended a symposium sponsored by the Consulate General of Israel. The event featured an Israeli defense company that was going to give a presentation about public safety artificial intelligence tools. At the symposium, Ms. Ballagh expressed political protest in direct relation to the Israel-Palestine controversy. Ms. Ballagh protested in favor of Palestinian rights at a pro-Israel event.

2) <u>Prong 2</u>: Plaintiffs are unable to establish a probability of prevailing on the California Claims as a matter of law. Each of the California Claims fails as a matter of law for the reasons set forth in this motion.

This Motion will be based upon this notice, this motion, CCP § 425.16, the accompanying memorandum of points and authorities, the court's file, the declaration of Ben Gharagozli regarding Local Rule 7-3 compliance and the separate declaration of Ben Gharagozli regarding the use of generative artificial intelligence, Ms. Ballagh's concurrently filed motion to dismiss, the pleadings and records in the Court's file, and any further argument presented at or before the hearing of this Motion.

**This Motion is a legal challenge only** as it challenges the legal sufficiency of the claims pursuant to Rule 12(b)(6)'s standard. Ms. Ballagh does not concede any allegation of the FAC and expressly reserves the right to bring a factual challenge pursuant to the Rule 56 standard by way of a further special motion to strike after discovery is conducted as per *Planned Parenthood Federation of America, Inc. v.*

*Center for Medical Progress*, 890 F.3d 828, 834 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018) and *Gunn v. Drage*, 65 F.4th 1109, 1120 (9th Cir. 2023).

This Motion is made following a Local Rule 7-3 conference, which took place via tele-video conference (Microsoft Teams) on October 30, 2026 beginning at approximately 9:30 am.

Ms. Ballagh expressly reserves the right to request an award of attorneys' fees and costs pursuant to CCP § 425.16(c)(1).

Pursuant to the Court's November 5, 2026 order, Plaintiffs must file any opposition to this motion on or before December 28, 2026 and Ms. Ballagh shall file any reply on or before January 4, 2027. (ECF No. 86, Numbers 3-4)

DATED: November 23, 2026

RESPECTFULLY SUBMITTED,
LAW OFFICES OF BEN GHARAGOZLI
BY: /s/Ben Gharagozli
Ben Gharagozli
Attorneys for Defendant, Quyên Ballagh

## TABLE OF CONTENTS


**Page**

**NOTICE OF SPECIAL MOTION TO STRIKE** .......... 2

**MEMORANDUM OF POINTS AND AUTHORITIES** .......... 10

**I. INTRODUCTION** .......... 10

**II. STATEMENT OF RELEVANT FACTS** .......... 11

**A. The Symposium Featured an Israeli Weapons Manufacturer** .......... 11

**B. Prerequisites for Guests and the Temple's Verification Measures** .......... 12

**C. The FAC's Allegations Against Ms. Ballagh as to the California Claims.** .......... 13

**III. LEGAL STANDARD** .......... 14

**IV. ARGUMENT** .......... 15

**A. Ms. Ballagh Engaged in Protected Activity** .......... 15

**B. Plaintiffs Are Not Likely to Prevail on Any California Claims Asserted Against Ms. Ballagh.** .......... 27

1. Counts VI and VII [Penal Code § 423.2(b) & (d)] .......... 27

a. *The Coalition's Claims* .......... 27

b. *The Temple's Claims* .......... 29

2. Count IX (Ralph Act-California Civil Code § 51.7, et seq.) .......... 30

3. Count X (Bane Act-California Civil Code § 52.1) .......... 31

4. Count XI (Trespass) ........ 33

**V. CONCLUSION** ........ 36

**DECLARATION OF BEN GHARAGOZLI REGARDING LOCAL RULE 7-3 COMPLIANCE** ........ 38

**CERTIFICATE OF COMPLIANCE** ........ 40

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Gunn v. Drage*, 65 F.4th 1109 (9th Cir. 2023) .......... 4, 15

*Herring Networks, Inc. v. Maddow*, 8 F.4th 1148 (9th Cir. 2021) .......... 15

*Hilton v. Hallmark Cards*, 599 F.3d 894 (9th Cir. 2010) .......... 25

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333 (1977) .......... 33

*Langer v. Kiser*, 57 F.4th 1085 (9th Cir. 2023) .......... 26

*NAACP v. Claiborne Hardware*, 458 U.S. 886 (U.S. 1982) .......... 24

*Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*, 890 F.3d 828 (9th Cir.), amended, 897 F.3d 1224 (9th Cir. 2018) .......... 4

*Theofel v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2004) .......... 34, 36

**California Cases**

*Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court*, 46 Cal.4th 993 (Cal. 2009) .......... 28, 32

*Baral v. Schnitt*, 1 Cal.5th 376 (Cal. 2016) .......... 17, 18, 24, 26

*Bay Area Rapid Transit Dist. v. Superior Court*, 38 Cal.App.4th 141 (Cal. 1995) .......... 32

*Bonni v. St. Joseph Health System*, 11 Cal.5th 995 (Cal. 2021) .......... 17, 18, 23

*Cohen v. Superior Court*, 102 Cal.App.5th 706 (Cal. 2024) .......... 19

*FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal.5th 133 (Cal. 2019) .......... 21

*Flatley v. Mauro*, 39 Cal.4th 299 (Cal. 2006) ........................................................ 27

*Geiser v. Kuhns*, 13 Cal.5th 1238 (Cal. 2022) ........................................................ 19

*Hailstone v. Martinez*, 169 Cal.App.4th 728 (Cal. 2008)........................................... 16

*Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal.App.4th 1228 (Cal. 2005) ........................................................ 18, 19

*Hylton v. Frank E. Rogozienski, Inc.*, 177 Cal.App.4th 1264 (Cal. 2009) ................. 15

*Jones v. Kmart Corp.*, 17 Cal.4th 329 (Cal. 1998) .................................................... 33

*Lam v. Ngo*, 91 Cal.App.4th 832 (Cal. 2001)...................................................... 19, 24

*Midpeninsula Citizens for Fair Housing v. Westwood Investors*, 221 Cal.App.3d 1377 (Cal. 1990) ........................................................ 30

*Park v. Board of Trustees of California State University*, 2 Cal.5th 1057 (Cal. 2017) ........................................................ 17, 23

*Ramona Unified School Dist. v. Tsiknas*, 135 Cal.App.4th 510 (Cal. 2005) ............. 17

*RGC Gaslamp, LLC v. Ehmcke Sheet Metal Co., Inc.*, 56 Cal.App.5th 413 (Cal. 2020) ........................................................ 25

*Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO*, 105 Cal.App.4th 913 (Cal. 2003)........................................................ 16

*Thomas v. Quintero*, 126 Cal.App.4th 635 (Cal. 2005) ................................. 16, 17, 18

*Weinberg v. Feisel*, 110 Cal.App.4th 1122 (Cal. 2003) ....................................... 16, 21

*Wilson v. Cable News Network, Inc.*, 7 Cal.5th 871 (Cal. 2019) ............................... 18

**California Trial Court Orders**

*Milagro Jones v. Regents of the University of California*,
L.A. Super. Ct. Case No. 24SMCV02574 (Nov. 6, 2026 Order) ........ 20

*Jay Sures v. Dylan Kupsh*,
L.A. Super. Ct. Case No. 25STRO01776 (May 30, 2026 Order) ........ 19

**Statutes**

Cal. Civ. Proc. Code § 425.16 ........ 2, 3, 4, 16, 19, 20, 21, 25

Cal. Civ. Code § 51.7 ........ 2, 23, 30

Cal. Civ. Code § 52 ........ 30

Cal. Civ. Code § 52.1 ........ 2, 23, 31, 32

Cal. Penal Code § 423.2 ........ 2, 27, 28, 29, 30

Cal. Penal Code § 423.4 ........ 28, 29

Los Angeles Municipal Code § 56.45 ........ 19

**Rules**

Fed. R. Civ. P. 12(b)(6) ........ 3

Fed. R. Civ. P. 56 ........ 4, 15

C.D. Cal. L.R. 7-3 ........ 3, 4, 38

C.D. Cal. L.R. 11-6.1 ........ 40

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiffs should not be permitted to suppress political speech with which they disagree. The California Claims asserted against Ms. Ballagh are precisely what the anti-SLAPP statute discourages.

The FAC concedes that Ms. Ballagh registered for a symposium sponsored by the Consulate General of Israel, which featured a presentation by Elbit Systems, an Israeli defense and security company. (FAC ¶ 3) The FAC goes on to allege that Ms. Ballagh shouted "genocide" and "baby killers." (FAC ¶ 84) The complaint against Ms. Ballagh is her speech, which apparently was not well received.

Israel's military activities in Gaza after October 7, 2023 and the role of Israeli defense companies in that war, are hotly contested political questions. Ms. Ballagh contributed to that debate. That Plaintiffs found her contribution to be offensive or that they disagreed with it does not change the equation.

All five of the FAC's California-law claims against Ms. Ballagh should be stricken because they arise from protected activity and the FAC's own allegations foreclose a showing by Plaintiffs that they have a probability of prevailing.

Plaintiffs' trespass cause of action is based on a deceptive entry (i.e. that she registered without disclosing her surname). (FAC ¶ 60) However, the FAC concedes that the Temple and the Israeli Consulate vetted the registration list and individuals identified as potential security risks were removed from the list. (FAC ¶ 59)

Plaintiffs fail to identify the connection between Ms. Ballagh not providing her surname and deception when faced with what appears to have been a stringent review process. Ms. Ballagh's first name, Quyên, is hardly a common name. If she were on a blacklist, her first name would have sufficed for the Temple and Israeli Consulate to have removed her from the list if they so wanted to do so. They decided to not do so. Similarly, if providing a last name was a material issue, the vetting process would have removed her from the list. There is no specific factual allegation in the FAC that Ms. Ballagh used a false name, claimed a false affiliation, climbed a fence, sneaked into the event or surreptitiously entered the event. Indeed, the only fact alleged in support of Plaintiffs' theory that Ms. Ballagh misrepresented her identity or affiliation is that she omitted her surname when she registered. (FAC ¶ 60) Paragraph 212's allegation regarding misrepresentation of affiliations is conclusory.

Counts VI, VII', IX and X depend on an anti-Jewish animus that the FAC fails to plead with facts and speech that is not outlawed.

## II. STATEMENT OF RELEVANT FACTS

### A. The Symposium Featured an Israeli Weapons Manufacturer

On December 3, 2025, the Temple hosted a symposium entitled "Innovating Safety, Empowering Communities: A Symposium on AI and Public Safety" for the local Jewish and Korean-American communities. (FAC ¶ 2) The Symposium was scheduled to start in the morning at the Audrey Irmas Pavilion, which the FAC describes as "an essential religious space situated next to the Temple's sanctuary"

(FAC ¶ 8) that the Temple "rents…for events and affairs that are consistent with the Temple's religious mission and values." (FAC ¶ 37) The Irmas Pavilion and the Temple are separate buildings separated by a "small courtyard between them." (FAC ¶ 39)

The symposium was sponsored by the Consulate General of Israel "in partnership with the Jewish Federation Community Security Initiative, Faith and Community Empowerment and the Korean American Federation of Los Angeles." (FAC ¶ 3) The program was scheduled to include statements by a Jewish Federation official representative, an expert on artificial intelligence, a panel discussion with a Los Angeles police officer, an Israeli police officer and a USC professor of public policy. Further, an Israeli defense company (Elbit Systems) was to give a presentation about AI tools. (FAC ¶ 3)

The day before the symposium, Defendant TILF posted on social media about the event, which included calling Elbit Systems "BLOODY WAR CRIMINALS". (FAC ¶ 64)

**B. Prerequisites for Guests and the Temple's Verification Measures**

"Each guest was required to register in advance and was advised that security officers would check identification at the door to confirm advance registration." (FAC ¶ 40) "In the days before the Symposium, the Temple and the Israeli Consulate vetted the registration list, and the Consulate removed from the list individuals it identified as potential security risks." (FAC ¶ 59)

**C. The FAC's Allegations Against Ms. Ballagh as to the California Claims.**

Plaintiffs' 58-page complaint mentions Ms. Ballagh rather infrequently:

1. Ms. Ballagh "registered using only a partial name, omitting her surname". (FAC ¶ 60) The FAC alleges that Ms. Ballagh did this to evade "the Temple's and the Consulate's security vetting, concealing Defendants' identities and affiliations from the people responsible for protecting the Temple's congregants and guests, and obtaining physical access to a secured house of worship that Defendants knew they would otherwise be denied." (FAC ¶ 62) The FAC further claims that Ms. Ballagh "entered the Irmas Pavilion by misrepresenting [her identity] and affiliations to defeat a security screen [she] knew had been established to exclude [her]". (FAC ¶ 212)
2. When security was removing Defendant Corpus, Ms. Ballagh started "shouting and recording the security guards removing Corpus from the room. Seconds later, Ballagh burst back into the room, and shouted, among other things, 'genocide' and 'baby killers.' Security guards removed Ballagh from the room. Authorities later arrested Ballagh and charged her with battery of a security guard." (FAC ¶ 84) The battery appears to be allegedly spitting on Temple security personnel. (FAC ¶ 10)

3. She is one of the "members, followers and supporters" of "Defendant Organizations" that "Defendant Organizations"[1] called upon to "violently protest, disrupt and shut down the Symposium." (FAC ¶ 4)

4. Conclusory allegations that Ms. Ballagh is alleged to have been part of the "third phase" of Defendants' "premeditated and carefully coordinated plan to 'shut down' the Symposium." The FAC alleges that multiple defendants "joined PCC in executing its playbook for disrupting events". (FAC ¶ 80)

5. Conclusory allegations that Ms. Ballagh was among the defendants who engaged in "violent and threatening actions" that "were intended to, and caused, intimidation, fear and anxiety among Symposium attendees, Temple members and other guests, and Temple employees and vendors." (FAC ¶ 88)

**6.** Conclusory allegations that Ms. Ballagh was among the defendants who engaged in "coordinated actions and threats" that "sharply curtailed the freedom of movement of the Symposium attendees, Temple members and other guests, and Temple employees and vendors." (FAC ¶ 89)

## III. LEGAL STANDARD

To reduce duplication, Ms. Ballagh hereby incorporates by reference section 1

[1] The FAC collectively refers to Turtle Island Liberation Front LA, Koreatown 4 Palestine and People's City Council—Los Angeles as "Defendant Organizations". (FAC p. 3:2-4) It is unclear which of those organizations the FAC claims Ms. Ballagh is a member, follower and supporter.

of the Argument portion of Defendant Reedy's anti-SLAPP Motion (ECF No. 61, pp. 11-12) and Legal Standard section of Defendant PCC's Anti-SLAPP Motion (ECF No. 66, pp. 11-12) respectively.

## IV. ARGUMENT

This motion challenges only the legal sufficiency of Plaintiffs' California Claims. It relies on no declaration or other evidence on the merits. The only declarations supporting this motion concern the meet and confer conference and use of generative AI per the applicable local rule and the Court's Standing Order. Since the challenge is a legal one and not a factual one, Plaintiffs may not respond with evidence outside of the pleading. *Gunn v. Drage*, 65 F.4th 1109, 1120 (9th Cir. 2023) [quoting *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1156 (9th Cir. 2021)]

Ms. Ballagh does not concede any allegation of the FAC and expressly reserves her right to bring a factual challenge pursuant to the Rule 56 standard by way of a further special motion to strike

### A. Ms. Ballagh Engaged in Protected Activity

The first step is to determine whether the acts that plaintiff challenges "were taken in furtherance of his or her constitutional rights of petition or free speech in connection with a public issue." *Hylton v. Frank E. Rogozienski, Inc.*, 177 Cal.App.4th 1264, 1271 (Cal. 2009). More technically, the anti-SLAPP statute specifically protects four categories of activity that constitute an "act in furtherance of

a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" CCP § 425.16(e).

As applicable here, protected activity includes: "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest", and "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." CCP § 425.16(e)(3) & (4)

It is well settled that "a matter of public interest should be something of concern to a substantial number of people." *Thomas v. Quintero*, 126 Cal.App.4th 635, 658 (Cal. 2005).

A public issue exists where the statements concern "a person or entity in the public eye, conduct that could directly affect a large number of people beyond the direct participants or a topic of widespread, public interest." *Hailstone v. Martinez,* 169 Cal.App.4th 728, 737-738 (Cal. 2008) [quoting *Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO,* 105 Cal.App.4th 913, 924 (Cal. 2003)] (internal citation brackets omitted).

On the other hand, there is no public interest where there is merely a dispute that is essentially a private matter. See e.g. *Weinberg v. Feisel*, 110 Cal.App.4th 1122, 1135 (Cal. 2003) (first prong not satisfied in a private dispute between two aficionados of token collecting).

Also importantly, the statute "shall be construed broadly." CCP § 425.16(a)

To the extent that there is a mix of personal and broader community interests at stake, the first prong is met. *Quintero,* 126 Cal.App.4th at 661; *Ramona Unified School Dist. v. Tsiknas*, 135 Cal.App.4th 510, 519-520 (Cal. 2005):

> "[A] plaintiff cannot avoid operation of the anti-SLAPP statute by attempting, through artifices of pleading, to characterize an action as a *garden variety* tort claim when in fact the liability claim is predicated on protected speech or conduct. Thus, a plaintiff cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one cause of action.") (internal citations and quotation marks omitted, emphasis in original)

Plaintiffs may argue that the rule in *Quintero* and *Tsiknas* regarding mixed claims is no longer valid pursuant to the California Supreme Court's decision in *Bonni v. St. Joseph Health System,* 11 Cal.5th 995, 1004 (Cal. 2021). Such an argument would be invalid as *Bonni* expressly indicated that it was not finding that every court that labeled its analysis as "a gravamen test even after *Baral* has erred." *Id*. at 1012.

Out of an abundance of caution, Ms. Ballagh will also analyze the issue per *Bonni*. *Bonni* observed that in the first prong, courts "consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." *Bonni*, 11 Cal.5th at 1009 [quoting *Park v. Board of Trustees of California State University*, 2 Cal.5th 1057, 1063 (Cal. 2017)]

Specifically, courts "analyze each claim for relief—each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action—to determine whether the acts are protected." *Bonni*, 11 Cal.5th at 1010.

> "When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage. If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached."
>
> *Baral v. Schnitt*, 1 Cal.5th 376, 396 (Cal. 2016).

Indeed, an anti-SLAPP motion "may be used to attack parts of a count as pleaded." *Id*. at 393.

No California cause of action is categorically exempt from anti-SLAPP protections. The statute "contains no exception for discrimination or retaliation claims" and a plaintiff's "allegations about the defendant's invidious motives will not shield the claim from the same preliminary screening for minimal merit" that applies to other claims. *Wilson v. Cable News Network, Inc.*, 7 Cal.5th 871, 881 (Cal. 2019).

It is no surprise that claims related to political protest are not exempt from the anti-SLAPP statute's protections either. Indeed, protest activity *even at a plaintiff's church* has been held to be protected activity. *Quintero*, 126 Cal.App.4th at 658, 661.

This case is similar to other protest cases meeting the first prong. In *Huntingdon*, all of the plaintiffs' causes of action included the allegation that defendants vandalized a plaintiff's home and her husband's car. Although

*Huntingdon* was quick to caution that vandalism is not a legitimate exercise of free speech rights, each cause of action in the case also alleged protected activity such as one of the defendants' "encouragement of demonstrations against animal testing and support of those who choose to operate outside the confines of the legal system." *Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc., et al.*, 129 Cal.App.4th 1228, 1245 (Cal. 2005) [disapproved on other grounds in *Cohen v. Superior Court,* 102 Cal.App.5th 706, fn. 11 (Cal. 2024)] In another case, protesters "physically accosted prospective patrons and shouted epithets at them…slashed the tires and pounded on the cars of prospective patrons" among other illegal activity. However, since the protests concerned an issue of public significance ("whether a local video store should be displaying the flag of the North Vietnamese communists"), the first prong was satisfied. *Lam v. Ngo,* 91 Cal.App.4th 832, 838, 845 (Cal. 2001)

Finding that the first prong has been met in political protest-related cases appears to be the default rule rather than the exception. Indeed, the California Supreme Court reversed the California Court of Appeal's holding and determined that a sidewalk picket outside of a plaintiff's home was protected activity per subdivision (e)(4). *Geiser v. Kuhns*, 13 Cal.5th 1238, 1243 (Cal. 2022)

One California jurist determined that the first prong was met in a political protest-related case despite also finding that the defendant in that case violated Los Angeles Municipal Code § 56.45. *Jay Sures v. Dylan Kupsh*, Los Angeles Superior

Court Case Number 25STRO01776, May 30, 2026 Order (Judge K. Repecka).[2] Another California jurist found that the first prong was met in a protest-related case where defendants allegedly pushed a perceived Israeli agitator out of the Spring 2024 UCLA encampment. On the second prong, Judge Epstein struck the Ralph Act claim, struck in part the conspiracy and intentional infliction of emotional distress claims and declined to strike the assault, battery, false imprisonment and Bane Act claims. *Milagro Jones v. Regents of the University of California* ("UCLA"), Los Angeles Superior Court Case Number 24SMCV02574, November 6, 2026 Order (Judge M. Epstein).[3]

Here, either CCP § 425.16(e)(3) applies, CCP § 425.16 (e)(4) applies, or both do. Subdivision (e)(4) is broader than (e)(3) as the former covers "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech" and need not happen "in a place open to the public or a public forum."

The FAC supplies the allegations that form Ms. Ballagh's argument regarding the first prong. Ms. Ballagh protested in favor of Palestinian rights at an event that was sponsored by the Israeli Consulate where "an Israeli tech company specializing in defense, homeland security, and commercial applications, was to give a presentation on public safety AI tools." (FAC ¶ 3). The link between Ms. Ballagh's alleged comments of "genocide" and "baby killers" (FAC ¶ 84) is directly related to

[2] Ms. Ballagh cites to this case as persuasive authority.
[3] Ms. Ballagh cites to this case as persuasive authority.

Israel's military operations in Gaza. Indeed, multiple international organizations and experts have denounced Israel's military operations in Gaza as a genocide and accused the Israeli military of murdering children and babies.[4] Ms. Ballagh's alleged comments were made at an event that included an arm of the Israeli Government and an Israeli defense company accused of committing war crimes and genocide. All of this compels a finding that the first prong has been met and nothing suggests that this is the type of private dispute like in *Feisel*.

"[T]he context of a defendant's statement is relevant, though not dispositive, in analyzing whether the statement was made" per subdivision (e)(4). *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal.5th 133, 140 (Cal. 2019). The FAC provides that very context in support of Ms. Ballagh's argument regarding the first prong. The calls to protest the symposium (which Ms. Ballagh is not alleged to have shared or authored) describe Elbit Systems as "BLOODY WAR CRIMINALS" and "GENOCIDAL MONSTERS" and the event as one "FEATURING WEAPONS MANUFACTURER ELBIT SYSTEMS" among other things (FAC ¶¶ 64, 67) These allegations show that the protest concerned war crimes committed by Elbit Systems.

*FilmOn* also examines:

> "what functional relationship exists between the speech and the public conversation about some matter of public interest. It is at the latter stage that context proves useful." *FilmOn*, 7 Cal.5th at 149-150.

[4] Ms. Ballagh acknowledges that whether Israel's military activities in the Gaza strip constitute a genocide is not before this Court.

Here, Ms. Ballagh made comments at the event about the subject that made the event controversial per the context of the calls to protest. Remarks of "genocide" and "baby killers" have a relationship with a weapons manufacturer described in the public realm as being a genocidal monster that has committed war crimes.

That the symposium concerned policing, artificial intelligence and homeland security (FAC, ¶ 3) supports Ms. Ballagh's first prong argument. It is not subject to reasonable debate that the Israel-Palestine controversy (specifically the role of the Israeli military and Israeli defense companies in the war in Gaza), artificial intelligence and homeland security are issues of public interest.

The FAC's specific allegations against Ms. Ballagh are rather sparse. Putting the adjectives aside for a moment, the FAC alleges that Ms. Ballagh:

1) Registered for the symposium using only her first name and not her last name (FAC ¶ 60),
2) Recorded security guards removing Defendant Corpus and then burst back into the room shouting "genocide" and "baby killers" (FAC ¶ 84),
3) Was arrested and charged "with battery for spitting on Temple security personnel." (FAC ¶ 10, see also ¶¶ 21, 84)

The remaining allegations against Ms. Ballagh are conclusory (see e.g. FAC ¶¶ 80, 88, 89) or attempt to impute upon her the acts of others without the requisite factual support. (FAC ¶¶ 174, 181, 199, 206, 214)

The first prong is also met per a *Bonni* analysis by examining the elements of each claim and which acts supply them.

<u>Counts VI and VII (CA FACE Act)</u>. The only act alleged against Ms. Ballagh that could even arguably qualify as a threat of force or intimidation is her shouting "genocide" and "baby killers". (FAC ¶ 84) As such, Ms. Ballagh's "speech or petitioning activity *itself* is the wrong complained of." *Bonni*, 11 Cal.5th at 1014 (emphasis in original) [quoting *Park v. Board of Trustees of California State University*, 2 Cal.5th 1057, 1060]. Ms. Ballagh's speech is not merely "evidence of liability or a step leading to some different act for which liability is asserted". *Id.*

<u>Count IX (Ralph Act)</u>. Civil Code § 51.7(e) provides for narrow instances in which speech may support liability per the Ralph Act. The only speech by Ms. Ballagh is her shouting "genocide" and "baby killers". (FAC ¶ 84) The same analysis per *Bonni* applies to the Ralph Act as the CA FACE Act claims.

<u>Count X (Bane Act)</u>. Similarly, the FAC alleges no facts against Ms. Ballagh that would qualify as a Bane Act violation besides her shouting "genocide" and "baby killers", which Plaintiffs may argue could qualify per California Civil Code § 52.1(k). The same analysis per *Bonni* applies to the Bane Act as the prior three counts.

Plaintiffs may argue that the battery charge disqualifies Ms. Ballagh from establishing the first prong. Such an argument would lack merit for the following reasons: (1) the FAC does not allege that Ms. Ballagh actually spat on or at a security guard. Rather, the FAC alleges that Ms. Ballagh was arrested and charged for doing

so. Being arrested and charged for an act is different from actually having committed an act (that is the very function of criminal proceedings). (2) even if the FAC did allege that Ms. Ballagh spat at or on a security guard, the analysis would not change because there are no allegations that the security guard is a Coalition member, was targeted for a protected characteristic, or was exercising religious freedom or another constitutional right. Rather, the security guard is alleged to have been doing their job.

To the extent the spitting allegation is deemed a separate and unprotected basis for any of the California Claims, it must be "disregarded at this stage." *Baral*, 1 Cal.5th at 396. And because the allegations of Ms. Ballagh's speech are protected activity, the first prong is met.

Plaintiffs are also unable to persuasively rely on the conduct of parties besides Ms. Ballagh because no allegations against Ms. Ballagh form the basis of organizer liability either per the *Lam* test. *Lam*, 91 Cal.App.4th at 837 [citing *NAACP v. Claiborne Hardware,* 458 U.S. 886, 927 (U.S. 1982)] ("[a]n organizer of a political protest cannot be held personally liable for acts committed by other protesters unless he or she authorized, directed or ratified specific tortious activity, incited lawless action, or gave specific instructions to carry out violent acts or threats." )

<u>Count XI (Trespass)</u>. Ms. Ballagh is charged with two trespass theories: (1) entry by misrepresentation (FAC ¶¶ 62, 212); (2) "in excess of the permission granted." (FAC ¶ 211, see also ¶ 209)

The second unavoidably depends on protected activity. Indeed, the FAC does not allege that Ms. Ballagh violated any rule that was a condition of entry or was asked to leave. Instead, the FAC alleges that she recorded security personnel and spoke the words “genocide” and “baby killers” among other unidentified things. (FAC ¶ 84) The speech is inextricably linked to the trespass claim for prong 1 purposes. If she had not said baby killers and/or genocide, Plaintiffs would not have brought a trespass claim.

The first theory of entry by misrepresentation is also protected activity. Subdivision (e)(4)’s catchall provision protects noncommunicative acts if they advance free speech rights. See *Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010) (Subdivision (e)(4) “includes not merely actual exercises of free speech rights but also conduct that furthers such rights.”) Registration is a noncommunicative act that in this case, advanced Ms. Ballagh’s ability to speak as she chose on a matter of public concern. Indeed, a review of the FAC indicates that registration was the means by which Ms. Ballagh was able to gain access to the event where she spoke to the particular audience she spoke to about the subject she wanted to talk about (i.e. that Elbit Systems was complicit in genocide and murdering children). Whether Ms. Ballagh’s conduct was ultimately lawful is a question for the second prong and not the first. Indeed, “a defendant does **not** have to establish that its conduct was ultimately lawful or constitutionally protected at prong one.” *RGC Gaslamp, LLC v. Ehmcke Sheet Metal Co., Inc.*, 56 Cal.App.5th 413, 426 (Cal.

2020) (internal citations omitted) (emphasis in original). For the first prong, however, since the registration advanced Ms. Ballagh's ability to speak to a particular audience about an issue of public concern, the first prong is met.

Trespass claims are not immune from the anti-SLAPP statute's protections. *Langer v. Kiser*, 57 F.4th 1085, 1104-05 (9th Cir. 2023). In *Langer*, the Ninth Circuit held that the moving party had met the first prong (but ultimately denied the motion because the cross-complainants satisfied their burden on the second prong). The defendants owned real estate property that was rented to both residential and commercial tenants. The lease between the property owners and one of the tenants assigned to the tenant "a space in the parking lot for his personal use." The plaintiff attempted to visit two businesses on the property and was unable to do so because the "parking lot…did not have a van-accessible parking space". *Id*. at 1090-1091.

The plaintiff filed an ADA claim and the defendant filed a counterclaim for trespassing on their property. *Id*. at 1104. As applicable here, the *Langer* Court reasoned that approaching the "property to assess ADA compliance was an act in furtherance of Langer's right to petition under the First Amendment." *Id*.

Here, Ms. Ballagh registered for the event and entered the event to exercise her First Amendment right to express her views regarding a matter of public concern.

If the Court determines that either of the two trespass theories is protected, the first prong is met and the analysis must proceed to the second prong. *Baral*, 1 Cal.5th at 396.

Under either analysis, it follows then that Ms. Ballagh's registration for and attendance of the political symposium, and recording of a portion of it were acts in furtherance of the political speech that she intended to deliver (i.e. protest against the Israeli Government's military activities in Gaza and an Israeli defense company's corresponding role in those activities).

Ms. Ballagh also incorporates by reference co-defendants' analysis regarding the first prong issue, specifically ECF No. 61, pp. 12-13 (Section 2)

Ms. Ballagh also hereby incorporates by reference sections 2 and 3 of the Argument portion of Defendant Reedy's anti-SLAPP Motion (ECF No. 61, pp. 12-15) and Section 1.B of Defendant PCC's Anti-SLAPP Motion (ECF No. 66, pp. 15-16) respectively.

Furthermore, Ms. Ballagh expressly concedes nothing and disputes that her actions were illegal. Accordingly, Plaintiffs are unable to invoke the illegality exception per *Flatley v. Mauro,* 39 Cal.4th 299, 316 (Cal. 2006) ("In such a narrow circumstance, where either the defendant concedes the illegality of its conduct or the illegality is conclusively shown by the evidence, the motion must be denied.")

**B. Plaintiffs Are Not Likely to Prevail on Any California Claims Asserted Against Ms. Ballagh.**

1. Counts VI and VII [Penal Code § 423.2(b) & (d)]

*a. The Coalition's Claims*

The Coalition is ineligible to bring these causes of action because of the

limitations set forth in Penal Code § 423.4(a). Specifically, "***only*** a person lawfully exercising or seeking to exercise the First Amendment right of religious freedom in a place of religious worship, or the entity that owns or operates a place of religious worship, may bring an action under subdivision (b), (d), or (f) of Section 423.2." (emphasis added).[5]

The FAC alleges an associational standing theory for the Coalition. (FAC ¶ 15) This does not exempt them from Article III standing requirements. Indeed, associational standing "was developed in the federal courts under the 'case or controversy' requirement of article III of the United States Constitution." *Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court*, 46 Cal.4th 993, 1003 (Cal. 2009) Where a statute enumerates a standing requirement such as "injury in fact" or "aggrieved employee", an association suing under such a law is "not exempt from these express statutory standing requirements." *Id.* at 1005.

Here, Penal Code § 423.4(a)'s standing requirement indicates that a right of civil action is conferred to "[a] person aggrieved," and then notes that "only" a person exercising religious freedom in a place of religious worship, or the entity that owns or operates it, may sue pursuant to subdivisions (b) and (d) of Penal Code § 423.2. The Coalition satisfies neither of those standing prerequisites.

To make matters worse, even if the members' claims could be made through the Coalition, they would still be defective. The FAC alleges no interaction between

---

[5] Plaintiffs' quotation in paragraph 171 of the FAC omits this important limitation.

Ms. Ballagh and either Coalition member beyond perhaps some conclusory allegations that make no practical difference. (FAC ¶¶ 16-17, 79, 83, 85, 90-91) Although the FAC alleges that Coalition Members 1 and 2 are Jewish, there is no allegation that either of them is a Temple member or was engaged in worship per Penal Code § 423.4(a).

Additionally, the Coalition seeks only injunctive relief. (FAC ¶¶ 175, 182) The FAC alleges one event on one day, with no allegations that Ms. Ballagh will encounter any Coalition member in the future or that she even knows who they are. Accordingly, neither of the Coalition members has standing to seek prospective relief against Ms. Ballagh. Relatedly, Ms. Ballagh joins in Section 1 of the Argument section of Defendant Reedy's motion to dismiss (ECF No. 59, pp. 19-20)

The Coalition's claims per Penal Code § 423.2(b) & (d) must fail.

*b. The Temple's Claims*

Penal Code § 423.2(b) provides:

Every person who…commits any of the following acts shall be subject to the punishment specified in Section 423.3:

…

(b) By force, threat of force, or physical obstruction that is a crime of violence, intentionally injures, intimidates, interferes with, or attempts to injure, intimidate, or interfere with a person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship.

The FAC states no facts indicating that Ms. Ballagh engaged in such misconduct. Although the FAC alleges that she was arrested for battery for spitting on Temple security personnel, there is no allegation that the security guard was exercising religious freedom at a place of worship. Rather, the security guard was at work removing someone.

The Temple's claim per subdivision (d) fails because there are no facts alleged that Ms. Ballagh engaged in "nonviolent physical obstruction" that intentionally injured, intimidated or interfered with anyone's right to exercise religious freedom. The Temple's claims per Penal Code § 423.2(b) & (d) must fail.

2. <u>Count IX (Ralph Act-California Civil Code § 51.7, et seq.)</u>

It is entirely unclear what facts Plaintiffs allege to qualify for a Ralph Act violation against Ms. Ballagh. There are no facts in the FAC alleging that Ms. Ballagh used "violence, or intimidation by threat of violence" against person or property because of an enumerated protected characteristic per Civil Code § 51.7(b)(1). Civil Code § 51.7(e) explicitly immunizes speech alone unless the plaintiff establishes all of the elements in subdivision (e)(1)(A)-(D).

What is more, neither the Temple nor the Coalition is a "person" per California Civil Code § 52(a) and are therefore not eligible to assert a Ralph Act violation. The reasoning in *Midpeninsula Citizens for Fair Housing v. Westwood Investors*, 221 Cal.App.3d 1377, 1383 (Cal. 1990) is applicable by way of analogy:

"The Unruh Act is found in part 2 of the Civil Code, entitled "Personal Rights." Its language strongly suggests that it was intended to provide recourse for those individuals actually denied full and equal treatment by a business establishment. The courts have acknowledged that a cause of action under the Unruh Act is of an "individual nature" ( *Koire v. Metro Car Wash* (1985) 40 Cal.3d 24, 34 [219 Cal.Rptr. 133, 707 P.2d 195]), and that "the rights protected by the act are enjoyed by all persons, as individuals." ( *Martin v. International Olympic Committee* (9th Cir. 1984) 740 F.2d 670, 677.)"

The Ralph Act, like the Unruh Act, sits in part 2 of the Civil Code. As such, the same logic should apply. Ms. Ballagh joins the Ralph Act arguments in ECF No. 61 at p. 15 (Second paragraph of Section 4).

Still further, the FAC does not allege that Ms. Ballagh committed any act of violence or threats against the Coalition, the Coalition's property, the Temple or the Temple's property. The Ralph Act claim must fail.

3. <u>Count X (Bane Act-California Civil Code § 52.1)</u>

This count is asserted only by the Coalition and only for the purposes of injunctive relief. (FAC ¶ 207) This count is unsupported by any facts that Ms. Ballagh interfered with or tried to interfere with the Coalition's constitutional rights by way of "threat, intimidation, or coercion". The conclusory allegations in paragraphs 202 through 207 do not change the equation. Instead, it appears as though

the Coalition is asserting the count against Ms. Ballagh for her speech, which is expressly disallowed per California Civil Code § 52.1(k) unless the Coalition can meet the enumerated exception in subdivision (k), which the Coalition has not done.

Further, the Coalition has (another) standing problem. The Bane Act's express language only permits an individual the right to sue for a violation. California Civil Code § 52.1(c) The Coalition is not an individual but rather a 501(c)(3) membership organization. The same subdivision provides that such an individual may assert a Bane Act violation "in their own name and on their own behalf". The Coalition does not qualify as the FAC alleges harm to the "Coalition members' rights" rather than a particular individual's rights. (FAC ¶¶ 204, 206) California Civil Code § 52.1(b)'s exception does not apply because this case has not been brought by "the Attorney General, or any district attorney or city attorney".

The Bane Act "clearly provides for a *personal* cause of action for the victim of a hate crime." *Bay Area Rapid Transit Dist. v. Superior Court*, 38 Cal.App.4th 141, 144 (Cal. 1995) ("*BART*") (emphasis in original) The Act "is limited to plaintiffs who themselves have been the subject of violence or threats." *Id.* *BART* expressly declined to "recognize derivative Bane Act liability". *Id.* at 145.

The Coalition cannot evade California Civil Code § 52.1(c)'s requirements through associational standing. Similar to the analysis for Counts VI and VII, associational standing cannot erase a statute's standing requirements. *Amalgamated Transit Union*, 46 Cal.4th at 1005. Still further, since the Coalition exclusively

demands injunctive relief in its Bane Act claim (FAC ¶ 207), it would need a member that "would otherwise have standing to sue in their own right" against Ms. Ballagh. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977), superseded by statute on other grounds. However, the FAC does not make that showing because there are no allegations that Ms. Ballagh did anything wrong towards a Coalition member. Indeed, the FAC identifies a single event on December 3, 2025. No allegations support a claim that Ms. Ballagh will interfere with a member of the Coalition's rights in the future. Relatedly, Ms. Ballagh joins in Section 1 of the Argument section of Defendant Reedy's motion to dismiss (ECF No. 59, pp. 19-20)

The Coalition's Bane Act count is also defective because the Bane Act does not provide a cause of action where a private actor violates rights that only apply against the state or the state's agents. *Jones v. Kmart Corp.,* 17 Cal.4th 329, 337 (Cal. 1998). But paragraph 204 of the FAC does that because it references rights 'to assemble and to speak" that restrain the government, not private individuals. In any event, the FAC fails to plead that Ms. Ballagh engaged in coercive interference.

4. <u>Count XI (Trespass)</u>

Ms. Ballagh incorporates by reference the legal authorities in ECF No. 61, p. 17:7-19 (Section 4).

Plaintiffs' trespass theory against Ms. Ballagh appears to be that although she registered for the event, her entry was invalid because she "registered using only a partial name, omitting her surname." (FAC ¶ 60). However, Plaintiffs also allege

that there was an added layer of review where the Temple and Israeli Consulate "vetted the registration list, and the Consulate removed from the list individuals it identified as potential security risks." (FAC ¶ 59). The FAC does not explain how Ms. Ballagh (who does not have a common first name) avoided detection from the vetting process simply because her last name was not provided. Nor does the FAC allege that Ms. Ballagh was on a blacklist that would have removed her and somehow only providing her first name was enough to deceive both the Israeli Consulate and the Temple.

Even presuming that Ms. Ballagh not providing her surname upon registration constitutes deceit, the trespass claim still fails pursuant to the test in *Theofel v. Farey-Jones*, 359 F.3d 1066, 1073 (9th Cir. 2004):

> Not all deceit vitiates consent. "The mistake must extend to the essential character of the act itself, which is to say that which makes it harmful or offensive, rather than to some collateral matter which merely operates as an inducement." *Prosser & Keeton* § 18, at 120 (footnote omitted). In other words, it must be a "substantial mistake[] . . . concerning the nature of the invasion or the extent of the harm." *Restatement (Second) of Torts* § 892B(2) cmt. g. Unlike the phony meter reader, the restaurant critic who poses as an ordinary customer is not liable for trespass, *Desnick*, 44 F.3d at 1351; nor, unlike the wired cop, is the invitee who conceals only an intent to repeat what he hears, *cf. Dietemann v. Time, Inc.*, 449 F.2d 245, 249 (9th Cir. 1971)

(invasion of privacy claim). These results hold even if admission would have been refused had all the facts been known.

These are fine and sometimes incoherent distinctions. See *Med. Lab. Mgmt. Consultants v. ABC*, 30 F. Supp. 2d 1182, 1201-04 (D. Ariz. 1998), aff'd, 306 F.3d 806 (9th Cir. 2002). But the theory is that some invited mistakes go to the essential nature of the invasion while others are merely collateral.

Classification depends on the extent to which the intrusion trenches on "the specific interests that the tort of trespass seeks to protect." *Desnick*, 44 F.3d at 1352; see also *Lewis v. United States*, 385 U.S. 206, 211, 17 L. Ed. 2d 312, 87 S. Ct. 424 (1966); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 517-18 (4th Cir. 1999).

Here, the FAC does not allege that Ms. Ballagh gave a false name, that the registration form required a surname, or that Ms. Ballagh said anything that was false or misleading.  Indeed, if the registration form did require a surname, how could both the Temple and the Israeli Consulate not have noticed in their vetting process and simply removed Ms. Ballagh from the list for failure to provide a surname? Still further, if security officers were checking “identification at the door to confirm advance registration” as paragraph 40 suggests, then the Temple would have known her full name when they let her into the event.

In any event, an omitted surname is, at best for Plaintiffs, a "collateral matter" per *Theofel*. The FAC does not allege how an omitted surname misled the Temple regarding "the nature of the invasion".

Plaintiffs' "in excess of the permission granted" (FAC ¶ 211) theory lacks merit as well. Although not entirely clear what facts would support such a theory, it appears as though paragraph 84 may be a contender. However, it falls short. Ms. Ballagh shouting and recording security guards removing another defendant from a room and then bursting back into the room (which she had been permitted entry through a multi-step vetting process) and shouting again does not establish an in excess of permission trespass. Although the paragraph indicates that security guards removed Ms. Ballagh from the room, there is no allegation that Ms. Ballagh was asked to leave and refused. There is no allegation that there were signs or disclosures to registered guests that they would be considered trespassers if they said "genocide" or "baby killers" or recorded someone else being removed from the room by security.

Ms. Ballagh does not argue at this time that the symposium was a public forum pursuant to the California Constitution. However, Ms. Ballagh reserves that argument for a factual challenge.

## V. CONCLUSION

Accordingly, Ms. Ballagh respectfully requests that the Court grant this anti-SLAPP motion or alternatively, strike the speech basis and misrepresentation basis (FAC ¶¶ 84, 212).

DATED: November 23, 2026

RESPECTFULLY SUBMITTED,

LAW OFFICES OF BEN GHARAGOZLI

BY: /s/Ben Gharagozli______________

Ben Gharagozli

Attorney for Defendant, Quyên Ballagh

**DECLARATION OF BEN GHARAGOZLI REGARDING LOCAL RULE 7-3 COMPLIANCE**

I, Ben Gharagozli, declare:

1. My name is Ben Gharagozli, and my business address is 7655 Winnetka Avenue, #2010 Winnetka, CA 91306. I am not a party to this lawsuit.

2. I have personal knowledge of the facts stated herein, and if called as a witness, I could and would competently testify thereto.

3. I represent Defendant Quyên Ballagh in this action.

4. On October 30, 2026 beginning at approximately 9:30 am, my co-counsel, Mr. Thomas B. Harvey, and I met and conferred by way of tele-video conference (Microsoft Teams) with Plaintiffs' counsel regarding the substance of Ms. Ballagh's anti-SLAPP motion pursuant to Local Rule 7-3. I confirm that the conference included a thorough discussion of the contemplated motions (motion to dismiss and anti-SLAPP motion) and potential resolution. This declaration is based on my notes, memory and consultation with Mr. Harvey regarding his notes and his memory.

5. Based on my notes and recollection, we discussed the arguments in support of the anti-SLAPP motion and motion to dismiss. During the conference, I reviewed with Plaintiffs' counsel an outline of the anticipated anti-SLAPP arguments to the First Amended Complaint's California Claims. I also requested that Plaintiffs stipulate to the first prong since the argument was about politics. Plaintiffs' counsel

did not agree. I also addressed the FACE Act issues by explaining that there was no notice that there would be religious worship at the event at issue in this case, reasoning that it cannot be that every political event at a place of religious worship is protected by the FACE Act. Plaintiffs' counsel did not agree with my reasoning. Plaintiffs' counsel indicated that they felt comfortable with their positions as stated in the operative complaint

6. Based on my notes and recollection, we were unable to resolve any of the substantive items for the motion to dismiss or anti-SLAPP motion. Plaintiffs' counsel confirmed that they would not be amending their First Amended Complaint.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 23rd day of November 2026.

/s/Ben Gharagozli

Ben Gharagozli

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Defendant Quyên Ballagh certifies that this brief contains 6,636 words, which complies with the word limit of L.R. 11-6.1.

DATED: November 23, 2026

RESPECTFULLY SUBMITTED,

LAW OFFICES OF BEN GHARAGOZLI

BY: /s/Ben Gharagozli________________

Ben Gharagozli

Attorney for Defendant, Quyên Ballagh